**McDERMOTT WILL & EMERY LLP**
Abbe David Lowell (Admitted *Pro Hac Vice*)
adlowell@mwe.com
Roy L. Austin, Jr. (State Bar No. 211491)
raustin@mwe.com
Hoyt Y. Sze (State Bar No. 180716)
hsze@mwe.com
Christopher D. Man
cman@mwe.com
600 Thirteenth Street, N.W.
Washington, DC  20005-3096
Telephone:   202.756.8000
Facsimile:   202.756.8087

Attorneys for Defendant
ROYA RAHMANI

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
Peter J. Eliasberg (State Bar No. 189110)
peliasberg@aclu-sc.org
Ahilan T. Arulanantham (State Bar No. 237841)
aarulanantham@aclu-sc.org
1313 West Eighth Street
Los Angeles, CA  90017
Telephone:  213.977-9500 x211
Facsimile:  213.977.5297

Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | CASE NO.  CR-01-209(A)-RMT |
|---|---|
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS A FOREIGN TERRORIST ORGANIZATION OR TO DISMISS COUNTS 59-117 (MOTION TO DISMISS NO. 3)** |
| v. | |
| ROYA RAHMANI, ALIREZA MOHAMMADMORADI, MOUSTAFA AHMADY, HOSSEIN KALANI AFSHARI, HASSAN REZAIE, NAVID TAJ, MOHAMMAD HOSSEIN OMIDVAR, et. al., | |
| Defendants. | Hearing Date:     None Scheduled Time: Dept:          Courtroom 22 |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendants Roya Rahmani, Alireza Mohammadmoradi, Moustafa Ahmady, Hossein Kalani Afshari, Hassan Rezaie, Navid Taj and Mohammad Hossein Omidvar ("the defendants") hereby move this Court to allow Defendants to challenge the Mujahedin-e Khalq's designation as a foreign terrorist organization.  This Motion is based on this Notice of Motion, supported by the attached Memorandum of Points and Authorities, and by all of the pleadings, records and files in this action, and such other documents and argument as may be presented to the Court.

Dated:  July 15, 2008

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

/s/
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**JAY L. LICHTMAN LAW OFFICES**

/s/
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**MICHAEL S. MEZA LAW OFFICES**

/s/
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SAINT MARTIN & FAN**

/s/
Amy Fan
Attorney for Defendant
NAVID TAJ

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

/s/
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

/s/
Peter J. Eliasberg
Ahilan T. Arulanantham

**THOMAS NISHI LAW OFFICES**

/s/
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

**NASATIR HIRSCH PODBERESKY & GENEGO**

/s/
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

PROCEDURAL BACKGROUND .......................................................................5

SUMMARY OF ARGUMENT ............................................................................8

ARGUMENT .......................................................................................................9

I.  SECTION 1189(A)(8) SHOULD BE CONSTRUED TO
    AUTHORIZE REVIEW OF THE VALIDITY OF THE
    DESIGNATION ........................................................................................9

    A.  Statutes Must Be Construed To Avoid Resolving Substantial
        Constitutional Questions .................................................................9

    B.  The Court Should Construe Section 1189(a)(8) To Preserve
        Review Of The Validity Of The Designation In This Case ...............11

II. SECTION 1189(A)(8) WOULD BE UNCONSTITUTIONAL IF IT
    PRECLUDED JUDICIAL REVIEW OF CONSTITUTIONAL
    CLAIMS ..................................................................................................12

    A.  Article III Requires An Independent Examination Of The
        Designation Upon This Court's Own Record ...................................12

    B.  The First And Sixth Amendments Require That The Issue Of
        The Validity Of The Designation Be Submitted To The Jury............18

    C.  Section 1189(a)(8) Violates Due Process .........................................23

CONCLUSION ..................................................................................................28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MOTION TO ALLOW
DEFENDANTS TO CHALLENGE THE
MEK'S DESIGNATION AS AN FTO

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)......................................................9

*Adamo Wrecking v. United States*, 434 U.S. 275 (1978) ......................................25

*Agosto v. INS*, 436 U.S. 748 (1978) .....................................................................14

*Am. Coalition for Competitive Trade v. Clinton*, 128 F.3d 761 (D.C. Cir. 1997)..............................................................................................25

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516 (2002) ..............................................23

*Bose Corp. v. Consumers Union*, 104 S. Ct. 1949 (1984)....................................14

*Boumediene v. Bush*, No. 06-1195 (U.S. June 12, 2008) ......................................12

*Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986) .............................................................................................................10, 11

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)..........................................................20

*Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) ..................11

*Chrysler Corp. v. EPA*, 600 F.2d 904 (D.C. Cir. 1979) .......................................25

*Clark v. Martinez*, 543 U.S. 371 (2005) .................................................................9

*Crowell v. Benson*, 285 U.S. 22 (1932) ....................................................3, 8, 9, 14

*Dunlop v. Bachowski*, 421 U.S. 560 (1975)............................................................9

*Edwards v. South Carolina*, 372 U.S. 229 (1963) ................................................14

*Estep v. United States*, 327 U.S. 114 (1946)..........................................................24

*Freedman v. Maryland*, 380 U.S. 51 (1965)..........................................................22

*Gonzales v. Carhart*, 127 S. Ct. 1610 (2007) ............................................3, 14, 15

*Granfinancera, S.A. v. Nordberg*, 492 U.S. 33 (1989)..........................................18

*Guiterrez de Martinez v. Lamagno*, 515 U.S. 417 (1995).....................................16

*Hamling v. United States*, 418 U.S. 87 (1974).......................................................18

*Harrison v. PPG Indus.*, 446 U.S. 578 (1980)........................................................25

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-ii-

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

**TABLE OF AUTHORITIES**
(continued)

Page

*Helvering v. Mitchell*, 303 U.S. 391 (1938)..................................................2

*Hess v. Indiana*, 414 U.S. 105 (1973) ......................................................14

*Hooper v. California*, 155 U.S. 648 (1895) .................................................9

*Humanitarian Law Project*, 205 F.3d..........................................................20

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*,
    515 U.S. 557 (1995).....................................................................22

*INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984) ...........................................2

*INS v. St. Cyr*, 533 U.S. 289 (2001) .........................................................9

*Lane v. Wilson*, 307 U.S. 268 (1939)..........................................................25

*Lemprecht v. FCC*, 958 F.2d 382 (D.C. Cir. 1992)...................................15

*Martin v. Wilks*, 490 U.S. 755 (1989).........................................................24

*McElroy v. United States*, 361 U.S. 281 (1960)..........................................14

*McKinney v. Alabama*, 424 U.S. 669 (1976) .........................................passim

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991)...............9, 10, 11

*Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*,
    418 U.S. 241 (1974)...................................................................22

*Miller v. California*, 413 U.S. 15 (1973) .................................................18

*NCRI v. State Dep't*, 251 F.3d 192 (D.C. Cir. 2001) ..................................6

*Ng Fung Ho v. White*, 259 U.S. 276 (1922)................................................14

*Ostereich v. Selective Serv. Sys.*, 393 U.S. 233 (1968) ...........................24

*Pennekamp v. Florida*, 328 U.S. 331 (1946) ..............................................15

*Perez-Martin v. Ashcroft*, 394 F.3d 752 (9th Cir. 1995)...........................9

*PMOI v. DOJ*, 289 F.3d 17 (D.C. Cir. 1999)..........................................6, 24

*Ring v. Arizona*, 536 U.S. 584 (2002) ...................................................18, 20

*St. Joseph Stockyards Co. v. United States*, 298 U.S. 38 (1932)...............16

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-iii-

DEFENDANTS' MOTION TO ALLOW
DEFENDANTS TO CHALLENGE THE
MEK'S DESIGNATION AS AN FTO

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Street v. New York*, 394 U.S. 576 (1969) .................................................................... 14

*Taylor v. Sturgell*, No. 07-371 (U.S. June 12, 2008) ..................................................... 7

*United States v. Afshari,* 426 F.2d 1150 (9th Cir. 2005) .......................... 3, 7, 21, 23

*United States v. Afshari*, 446 F.3d 915 (9th Cir. 2006) ............................................. 13

*United States v. Alexander*, 938 F.2d 942 (9th Cir. 1991) ....................................... 25

*United States v. Hammoud*, 381 F.3d 316 (4th Cir. 2004) ...................................... 18

*United States v. Klein*, 80 U.S. 128 (1871) ................................................................ 16

*United States v. Morrison*, 529 U.S. 598 (2000) ....................................................... 15

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) .................................................................................................................. 22

*United States v. Rahmani*, 209 F. Supp. 2d 1045 (C.D. Cal. 2001) .......................... 6

*United States v. Saade*, 652 F.2d 1126 (1st Cir. 1981) ............................................ 25

*Whitney v. California*, 274 U.S. 357 (1927) .............................................................. 15

*Yakus v. United States*, 321 U.S. 414 (1944) ...................................................... passim

## STATUTES

Article III to the United States Constitution .......................................... 3, 4, 18, 23

8 U.S.C. § 1182(a)(3)(B) ........................................................................................ 2, 5

8 U.S.C. § 1189 ................................................................................................... passim

8 U.S.C. § 1227(a)(4)(B) ............................................................................................ 2

18 U.S.C. § 2339A ...................................................................................................... 5

18 U.S.C. § 2339B .................................................................................. 2, 5, 18, 25

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-iv-

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

Federal Practice and Procedure (2d ed. Supp. 1999) .............................................25

Henry P. Monaghan, *Marbury and the Administrative State,* 83 Colum.
L. Rev. 1 (1983)...............................................................................17

*PMOI Off U.K. Terror List; EU Now Told: Do The Same*, Middle East
Times (June 24, 2008)..........................................................................7

Stephen Townley, *The Hydraulics Of Fighting Terrorism*, 29 Hamline
L. Rev. 65 (2006)...............................................................................22

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO ALLOW
DEFENDANTS TO CHALLENGE THE
MEK'S DESIGNATION AS AN FTO

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The designation of an organization as a Foreign Terrorist Organization ("FTO") pursuant to 8 U.S.C. § 1189 must be subject to judicial examination by an Article III court in any criminal prosecution for material support. The Constitution requires this protection because the freedom to associate with and support political organizations that are *not* terrorists is protected by the First Amendment. While the Constitution permits the government to prohibit some forms of material support to organizations that are correctly designated as terrorist, it does not permit the government to prohibit material support to organizations that are *not* properly designated. Because the designation decision conclusively resolves whether such support is constitutionally protected or instead criminally prohibited, that decision cannot be left in the hands of administrative officials. For this reason, the separation of powers principles embodied in Article III require that defendants be given the opportunity to contest the validity of the designation in this case. Independently, in circumstances like these, where defendants' First Amendment rights are implicated, the First and Sixth Amendments require that the jury determine whether the designation was correctly entered.

In addition, it would violate the Due Process Clause of the Fifth Amendment to punish a person based on the finding of an administrative decisionmaker without affording that person any opportunity – either before an enforcement action is brought or at trial itself – to challenge the administrative determination. Because the defendants are denied the opportunity to bring a pre-enforcement challenge to the designation, the Due Process Clause requires that they be afforded the opportunity to challenge the validity of that administrative determination in any criminal action brought against them. Moreover, in circumstances like these, where defendants' First Amendment interests are implicated, the Sixth Amendment

DEFENDANTS' MOTION TO ALLOW
DEFENDANTS TO CHALLENGE THE
MEK'S DESIGNATION AS AN FTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

requires that the jury determine whether the administrative designation can be used to extinguish the defendants' First Amendment rights.

Defendants believe that Section 1189 can be read to authorize the judicial examination required by the Constitution. But if it cannot be read to authorize such inquiry, Section 1189 is unconstitutional under the separation of powers principles embodied in Article III, the First and Sixth Amendments, and the Due Process Clause of the Fifth Amendment.

While the Constitution may preclude challenges to the designation in certain civil or administrative contexts, in the criminal context the designation cannot be given effect without a judicial determination that it is valid. In the non-criminal context, the Secretary of State's FTO designation creates severe immigration consequences for non-citizens associated with the organization, and also gives the Treasure Department the authority to freeze the organization's assets. *See* 8 U.S.C. §§ 1182(a)(3)(B); 1227(a)(4)(B) (immigration consequences); 1189(a)(2)(C) (asset blocking). Whatever constitutional questions Section 1189 raises in these contexts, they pale in comparison to the problems arising in the criminal context. Because removal from the United States and the freezing of an entity's assets both involve civil, rather than criminal, proceedings, Congress faces fewer constitutional constraints in those areas. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038-1039 (1984) (deportation is a civil penalty, not criminal punishment); *Helvering v. Mitchell*, 303 U.S. 391, 400 (1938) (noting that forfeiture provisions generally have been considered civil rather than criminal).

Section 1189 raises fatal constitutional problems in the criminal context, however, because 18 U.S.C. § 2339B allows persons to be punished criminally for providing "material support" to an FTO, while 8 U.S.C. § 1189(a)(8) purports to prevent criminal defendants from raising "any question as to the validity of the issuance of such designation" as a defense. 8 U.S.C. § 1189(a)(8). By its terms, the statute permits the designated FTO, but not other individuals or entities, to

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-2-

challenge the designation through the administrative process, subject to limited judicial review in the District of Columbia. 8 U.S.C. § 1189(a)(4)(B); 1189(c). If Section 1189(a)(8) were construed to prevent individuals who never had the opportunity to challenge the designation pre-enforcement from challenging the designation in their criminal proceedings as well, then criminal defendants *never* would be afforded the opportunity to challenge the designation. Such a construction of Section 1189 would render it unconstitutional for three reasons. First, a long line of cases establishes that separation of powers principles, embodied in Article III to the United States Constitution, do not permit administrative decisionmakers to hold authority over factual determinations in judicial proceedings where constitutional rights are at stake. *See Gonzales v. Carhart*, 127 S. Ct. 1610, 1637 (2007) ("In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function.") (quoting *Crowell v. Benson*, 285 U.S. 22, 60 (1932)).

Second, because the constitutional rights at stake here arise under the First Amendment, that amendment itself independently requires that a judicial decisionmaker review the validity of the designation. *See McKinney v. Alabama*, 424 U.S. 669, 673-74 (1976) (First Amendment requires criminal defendants be afforded an opportunity to challenge a designation placing their activities outside the scope of the First Amendment).[1]

Finally, the defendants maintain that Section 1189(a)(8) would be invalid on its face under the Due Process Clause when applied to persons subject to criminal prosecution based upon an administrative designation they had no right to challenge. Although they acknowledge that the Ninth Circuit purported to decide

---

[1]   In *Afshari*, the defendants on appeal advanced a related but distinct argument under *McKinney*, against the Original Indictment in this case. As explained *infra* at Part II.B, *Afshari* did not address the argument at issue here, and nothing in the opinion requires rejection of it now.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

this third argument in Afshari, the Ninth Circuit's decision failed to consider a long line of authority that definitively refutes its position.  For that reason, if the Court cannot resolve this motion on other grounds, it should strike down the statute under the Due Process Clause. *See, e.g.*, *Yakus v. United States*, 321 U.S. 414, 447 (1944) ("Even though the statute should be deemed to require it, any ruling at the criminal trial which would preclude the accused from showing he had . . . no opportunity to establish the invalidity of the regulation by resort to the statutory procedure, would be reviewable on appeal on constitutional grounds.")

In the context of this case, however, the Court can construe Section 1189(a)(8) narrowly enough to avoid holding the statute unconstitutional.  The statute does not expressly foreclose judicial determination of the correctness of the designation itself, or of claims that the support provided in this case was protected by the First Amendment.  Under well-established Supreme Court precedent, Congress' failure to explicitly exclude judicial review of such claims, particularly constitutionally-based claims, means that they remain subject to review.  Because there is no question that the defendants' alleged financial contributions to the relevant FTO, the Mujahedin-e Khalq's ("MEK"), would be protected by the First Amendment but for the designation, this Court need only hold the door to judicial examination of the designation open wide enough to allow the defendants to argue that the designation was wrong.  If the Court were to conclude that the statute could not be construed to permit such a judicial determination, then the statute as a whole must be invalidated under Article III, the First, Fifth and Sixth Amendments, and the defendants should be afforded either the opportunity to challenge the substantive merit of the designation decision or all of the Counts that depend upon the designation should be dismissed.

## **PROCEDURAL BACKGROUND**

Unlike Section 2339A, which prohibits people from knowingly providing material support to assist terrorists with terrorist acts, Section 2339B makes it a crime for anyone to knowingly give material support to an organization designated an FTO by the Secretary of State, regardless of whether the person either had knowledge or intended that the support would be used to further terrorism. *Compare* 18 U.S.C. § 2339A *with* 18 U.S.C. § 2339B.  The Secretary of State can designate an organization an FTO even if it never engaged in terrorism or only did so in the distant past, as long as the Secretary of State finds that such an organization "retains the capability and intent to engage in terrorist activity or terrorism."  8 U.S.C. § 1189(a).

Although the designation takes immediate effect, which in turn bars non-citizen members of the organization from entering the country, allows the organization's assets to be frozen and makes it a crime for persons to thereafter provide material support to such a designated FTO,[2] the statute provides only a very limited avenue for judicial review of the Secretary's designation decision. *See, e.g.*, 8 U.S.C. §§ 1182(a)(3)(B) (non-citizen inadmissible), 1189(a)(2)(C) (asset freeze); 18 U.S.C. § 2339B (criminal liability).  Pursuant to Section 1189(c), the *only* entity that has standing to challenge the designation is the designated FTO itself, which must do so within thirty days of the decision's publication.  8 U.S.C. § 1189(c)(1). Even then, review is "based solely on the administrative record," and that record may include classified information not shared with the FTO.  8 U.S.C. § 1189(c)(2). In addition, because most organizations designated as FTOs are foreign and have no presence in the United States, the only court with jurisdiction to hear the FTO's claims has held that such organizations cannot challenge the constitutionality of the

---

[2]  In this case, however, the government actually seeks to impose *ex post facto* criminal liability based on a designation that was made retroactive.  This violates the *Ex Post Facto* Clause.  (Mot. to Dismiss Counts 59-117 for Violating the *Ex Post Facto* Clause and as a Bill of Attainder at 13-16 (Motion to Dismiss No. 1).)

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

designation, as they typically have no cognizable constitutional rights. *PMOI v. DOJ*, 289 F.3d 17, 22 (D.C. Cir. 1999).

In addition to explicitly barring individuals, like the defendants, from challenging the legality or even the constitutionality of the FTO designation directly, Congress also foreclosed these individuals from "raising any question concerning the validity of the issuance of such designation as a defense or objection" either by "a defendant in a criminal action or an alien in a removal proceeding." 8 U.S.C. § 1189(a)(8). Thus, if Section 1189's limitation on judicial review is broadly construed, as the government may advocate, then most designations will be completely immune from all challenge, because no individual could ever challenge the designation, and, as a practical matter, most organizations also cannot challenge the designation, even if they contend that it is unconstitutional.

Using this extremely restrictive regime, the government charged the defendants in the March 2001 Original Indictment with providing material support to the MEK based upon the Secretary's 1997 and 1999 designations of the MEK. The D.C. Circuit subsequently found that the process by which those designations were promulgated was unconstitutional, but declined to vacate them. *NCRI v. State Dep't*, 251 F.3d 192 (D.C. Cir. 2001) (finding the MEK's right to procedural due process was violated). Based on that ruling, the defendants sought dismissal of the indictment here, asking this Court to give effect to the *NCRI* ruling that the designation violated procedural due process by barring the government from using it as a basis for criminal prosecution.

This Court granted defendants' motion. Because this procedural due process claim was constitutional in nature, the Court held that it would violate the Due Process Clause to allow Section 1189(a)(8)'s limitation upon judicial review to prevent defendants' constitutional challenge to the designation from being heard. *United States v. Rahmani*, 209 F. Supp. 2d 1045, 1054-56 (C.D. Cal. 2001)

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

-6-

(Takasugi, J.). The Court then dismissed the Original Indictment based upon the fact that the designation had been made in an unconstitutional manner, and went further to hold that the statute's failure to afford procedural due process rendered the designation provisions of Section 1189 facially unconstitutional. *Id.* at 1059.

On appeal, the Ninth Circuit *agreed* that Section 1189(a)(8) could not bar a constitutional claim to the designation but, after repeatedly revisiting the issue, found the violation of the MEK's procedural due process rights harmless and reinstated the indictment. *United States v. Afshari*, 426 F.2d 1150 (9th Cir. 2005).[3] Still relevant from that opinion is the Ninth Circuit's recognition that Section 1189 is no bar to a constitutional challenge to the designation: "A defendant prosecuted in district court for donating to such an organization may bring a due process challenge to his or her prosecution in the district court. The district court properly ruled that it had jurisdiction to review this challenge." *Id.* at 1155. Most important, the Ninth Circuit did not address any argument concerning the separation of powers under Article III, did not address the particular First Amendment claim advanced here, which arises under the Second Superseding Indictment, and did not even cite, let alone discuss, the Supreme Court's decision in *Yakus v. United States*, 321 U.S. 414, 447 (1944), which substantially limits the government's authority to use administrative determinations to obtain convictions in subsequent criminal proceedings.[4]

---

[3] The fact that the MEK was not successful in challenging its designation on the limited record does not prevent the defendants from litigating these issues for itself. As the Supreme Court recently held: "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. . . . [There is a] 'deep – rooted historic tradition that everyone should have his own day in court.'" *Taylor v. Sturgell*, No. 07-371, slip op. at 10 (U.S. June 12, 2008) (rejecting the doctrine of "virtual representation"). Moreover, the defendants case for delisting the MEK has grown stronger because the U.K. recently sorted through all of the allegations of terrorism against the MEK and concluded that it is not a terrorist organization. *See, e.g.*, *PMOI Off U.K. Terror List; EU Now Told: Do The Same*, Middle East Times (June 24, 2008) (explaining that parliament voted to lift the MEK's terror designation and that the E.U. and U.S. are being urged to do the same). As explained below, the defendants are constitutionally entitled to assemble their own record before this Court to prove their claim that the MEK is not a terrorist organization. (*Infra* Part II.A.)

[4] Although the defendants would like to renew their initial Motion to dismiss the Original

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

## SUMMARY OF ARGUMENT

Defendants now raise distinct constitutional challenges to the designation that are not based upon the violation of the MEK's procedural due process rights. First, because it is the designation that determines whether the financial support for an organization is constitutionally protected or criminally prohibited, Article III of the Constitution requires that this Court be afforded the opportunity to independently assess the merits of the designation "upon its own record and the facts elicited before it." *Crowell v. Benson*, 285 U.S. 22, 64 (1932). Second, because the Constitutional rights at stake are First Amendment rights, that amendment independently requires a judicial determination concerning the validity of the designation in the Defendants' own criminal case. *See McKinney*, 424 U.S. at 673-74. Finally, defendants maintain that *their* right to due process is violated by a statutory scheme that never affords them the opportunity to *personally* argue that the designation was unlawful – a due process challenge that was not raised in *Afshari*. *See, e.g.*, *Yakus*, 321 U.S. at 447.

Because these arguments all raise, at a minimum, substantial constitutional questions, this Court must construe Section 1189 to permit them to challenge the validity of the designation in this criminal case. If the Court cannot so construe Section 1189, it must strike it down as unconstitutional as applied here.

---

Indictment because the designation violated the MEK's due process rights, we will not address that argument at length because we acknowledge it is foreclosed by *Afshari*. The defendants ask that the Court issue an opinion, however brief, denying this aspect of the motion so that the defendants can pursue a rehearing of the issue *en banc* before the Ninth Circuit and before the Supreme Court, if need be.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO ALLOW
DEFENDANTS TO CHALLENGE THE
MEK'S DESIGNATION AS AN FTO

# ARGUMENT

## I. SECTION 1189(a)(8) SHOULD BE CONSTRUED TO AUTHORIZE REVIEW OF THE VALIDITY OF THE DESIGNATION

### A. Statutes Must Be Construed To Avoid Resolving Substantial Constitutional Questions

The Supreme Court has long held that "the elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *INS v. St. Cyr*, 533 U.S. 289, 300 n.12 (2001) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). This guiding principle of statutory construction is so strong that the Supreme Court requires courts to adopt constructions of statutes that avoid even the need for the constitutional issue to be decided. *See, e.g.*, *Crowell*, 285 U.S. at 62 ("When the validity of an act of Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

The principle of constitutional avoidance holds particular force with respect to jurisdiction-stripping statutes, because there is a heavy presumption in favor of judicial review. The Ninth Circuit has explained: "Following the Supreme Court, we 'presume that Congress legislates with knowledge of our basic rules of statutory construction,' including 'our well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action.'" *Perez-Martin v. Ashcroft*, 394 F.3d 752, 757 (9th Cir. 1995) (quoting *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496 (1991)). Indeed, the Supreme Court has long held: "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Dunlop v. Bachowski*,

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

421 U.S. 560, 567 (1975) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)).[5]

When a general jurisdiction-stripping statute forecloses judicial review of a set of claims, courts have read the statute narrowly to allow review of constitutional claims unless the intent to foreclose judicial review of constitutional claims is explicit in the language of the statute itself.  In doing so, courts have avoided deciding whether Congress ever could foreclose judicial review of constitutional claims.  For example, in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), the Supreme Court construed a provision that seemed to bar all judicial review of certain kinds of Medicare claims to preserve review, *inter alia*, of constitutional claims.  Although the statute provided that "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency," *id.* at 679, the Court read this language to preserve review of certain statutory and all constitutional claims, and thereby avoided the "otherwise 'serious constitutional question' that would arise if we construed [that section] to deny a judicial forum for constitutional claims."  *Id.* at 681 n.12; *see also McNary*, 498 U.S. at 492, 498 (same, for statute that provided that "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section").

The rationale behind *Bowen* and *McNary* applies strongly in this case.  The Government has argued that Section 1189 should be read to bar review of constitutional claims.  Such a reading raises serious constitutional doubts about Section 1189 itself.

---

[5]  Although Section 1189(a)(8) applies in the civil immigration context in addition to the criminal context, the statute is to receive one construction for all contexts.  "'[T]he rule of lenity applies' to the Court's interpretation of the statute even in immigration cases '[b]ecause we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context.'"  *Clark v. Martinez*, 543 U.S. 371, 380 (2005) (internal citation omitted).  "If one [construction] would raise a multitude of constitutional problems, the other should prevail – whether or not those constitutional problems pertain to the particular litigant before the Court."  *Id.* at 380-81.

### B.      The Court Should Construe Section 1189(a)(8) To Preserve Review Of The Validity Of The Designation In This Case

This Court should construe Section 1189(a)(8) to preserve judicial authority to examine the validity of the designation in this case.  Section 1189(a)(8) does not expressly foreclose constitutional challenges to a designation.  Section 1189(a)(8) merely provides:  "a defendant in a criminal action or an alien in a removal proceeding shall not be permitted to raise any question concerning the validity of *the issuance of* such designation as a defense or an objection at any trial or hearing."  8 U.S.C. § 1189(a)(8) (emphasis added).  This language should be read to preserve challenges to the validity of the designation in this case, for two reasons.

First, by its plain terms Section 1189(a)(8) does not foreclose any sort of challenge to the substantive basis for the designation decision, but merely forecloses procedural challenges to how the designation was issued.  The statute focuses not on the validity of the designation as a whole, but instead only on the validity of "*the issuance*" the designation.  Defendants do not argue here that, as a procedural matter, the issuance of the designation was valid.  That issue is left exclusively in the hands of the D.C. Circuit under the statute's scheme as interpreted by *Afshari*.  Here, defendants challenge the correctness of the designation itself, because they contend that the MEK does not meet the criteria for designation as a terrorist organization.  This is not a challenge to whether or not the designation was validly *issued*, but rather a challenge to whether the designation was *substantively* correct.  Because the defendants now are seeking to challenge the substance of the MEK's designation – as opposed to the procedural deficiencies with the promulgation addressed in *NCRI* and in the prior proceedings in this case – Section 1189(a)(8) does not bar judicial review.  *Cf. Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc) (narrowly interpreting provision barring challenges to "the operation" of a different section of the immigration code so as to preserve review of general statutory challenge).

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

Second, Section 1189 does not specifically state that it precludes review of constitutional claims, and in that respect is not meaningfully different from the provision the Supreme Court construed in *McNary* and *Bowen*, where the Court found no sufficiently explicit statement barring judicial review of constitutional claims. *McNary*, 498 U.S. at 492, 498; *Bowen*, 476 U.S. at 671. Congress is aware that it must speak clearly to foreclose constitutional claims. Where it has not done so, this Court should read the statute to preserve its review, and allow Congress to amend the statute to make its intentions clear if necessary. *Boumediene v. Bush*, No. 06-1195, slip op. at 28 (U.S. June 12, 2008) ("If the Court invokes a clear statement rule to advise that certain statutory interpretations are favored in order to avoid constitutional difficulties, Congress can make an informed legislative choice either to amend the statute or to retain its existing text.").

## II.    SECTION 1189(a)(8) WOULD BE UNCONSTITUTIONAL IF IT PRECLUDED JUDICIAL REVIEW OF CONSTITUTIONAL CLAIMS

If the Court finds, contrary to the arguments presented *supra*, that it cannot read Section 1189(a)(8) to allow the Court to examine the validity of the MEK's designation, it must address whether Section 1189 is unconstitutional as applied in this case. It should then hold that Section 1189 violates Article III, and the First, Fifth and Sixth Amendments, as applied in this case.

### A.    Article III Requires An Independent Examination Of The Designation Upon This Court's Own Record

The *Afshari* court did *not* consider the implications of Section 1189(a)(8) under Article III, and the related need to maintain the separation of powers. The defendants obviously do not quarrel with the proposition that the primary responsibility for protecting national security falls to the political branches. Nor do the defendants question whether Congress can allow the Executive Branch to make

FTO designations and attach any number of consequences to such a designation that would be subject to relatively little judicial oversight.  But Congress chose to involve the Judicial Branch by making the fact of designation an element of a criminal offense.  The political branches cannot invoke the Judicial Branch to dispense criminal justice on its terms without also invoking the constitutional protections that are inherent in every criminal trial.  *See, e.g.*, *Boumediene*, slip op. at 35 (The "political branches" do not "have the power to switch the Constitution on or off at will. . . .").

Here, there are profound constitutional consequences that attach to the Executive Branch's designation of an organization as an FTO because that designation effectively shuts off the First Amendment rights of persons to provide financial support to political organizations.  (*See* Defs' Mot. to Dismiss Counts 59-117 Pursuant to the First and Sixth Amendments.)  As Judge Kozinski noted in his dissent to rehearing *en banc* in *Afshari*, whether the defendants' alleged conduct in making financial contributions to the MEK is protected by the First Amendment or can be made a crime depends entirely upon the correctness of the designation. *United States v. Afshari*, 446 F.3d 915, 917 (9th Cir. 2006) (Kozinski, J., dissenting from denial of *reh'g en banc*) ("But if the organization is *not* a designated terrorist organization, then monetary contributions to it *are* protected by the First Amendment. . . .").  The majority, of course, never questioned that conclusion. *Afshari*, 426 F.3d at 1160 (acknowledging "contributions of money given to fund speech receive some First Amendment protection").  Instead, the Ninth Circuit rejected the notion that the defendant's conduct was First Amendment-protected because "*the Executive Branch has determined* . . . that materially supporting the organization is materially supporting actual violence," which places the conduct outside the protection of the First Amendment.  *Id.* (emphasis added).  Whatever the merits of this conclusion with respect to the Due Process Clause, under Article III it is abundantly clear that the Executive Branch (who is declaring the allegedly

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

illegal conduct and prosecuting it as well) cannot conclusively determine a criminal defendants' constitutional rights.

Article III vests the "judicial power" of the United States in the Judicial Branch, which at a minimum requires that courts be afforded the power to independently make their own determination of all questions of law or fact upon which questions of constitutional rights are contingent, and that they do so upon their own record. As the Supreme Court recently explained: "In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function." *Gonzales v. Carhart*, 127 S. Ct. 1610, 1637 (2007) (quoting *Crowell v. Benson*, 285 U.S. 22, 60 (1932)). Moreover, the Supreme Court has long held: "We think that the essential independence of the exercise of the judicial power of the United States in the enforcement of constitutional rights requires that the Federal Court should determine such issues upon its own record and the facts elicited before it." *Crowell*, 285 U.S. at 64.

Consequently, it is not uncommon for the Supreme Court to hold that the Constitution requires *de novo* judicial review of Executive Branch determinations that implicate an individual's constitutional rights. *See, e.g.*, *Agosto v. INS*, 436 U.S. 748, 753 (1978) (requiring *de novo* judicial determination of claims of American citizenship in deportation proceedings); *Ng Fung Ho v. White*, 259 U.S. 276 (1922) (same, on constitutional grounds); *McElroy v. United States*, 361 U.S. 281, 283-84 (1960) (independent judicial review of military status required of those subject to counts martial). Indeed, the Supreme Court has been particularly vigilant about examining any factual determination offered as a justification for restricting First Amendment rights. *See, e.g.*, *Bose Corp. v. Consumers Union*, 104 S. Ct. 1949, 1962 (1984) ("We have exercised independent judgment on the question whether particular remarks 'were so inherently inflammatory as to come within that

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

-14-

small class of 'fighting words' which are 'likely to provoke the average person to retaliation, and thereby cause a breach of the peace,'" *Street v. New York*, 394 U.S. 576, 592 (1969), and on the analogous question whether advocacy is directed to inciting or producing  imminent lawless action, *Hess v. Indiana*, 414 U.S. 105, 108-109 (1973) (per curiam); *compare id.*, at 111 (Rehnquist, J., dissenting) ('The simple explanation for the result in this case is that the majority has interpreted the evidence differently from the courts below'); *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963) (recognizing duty 'to make an independent examination of the whole record'); *Pennekamp v. Florida*, 328 U.S. 331, 335 (1946) ('[We] are compelled to examine for ourselves the statements in issue . . . to see whether or not they do carry a threat of clear and present danger . . . or whether they are of a character which the principles of the First Amendment . . . protect').").

The Supreme Court also has used its independent "judicial power" to reject findings made by Congress used to sustain the constitutionality of its legislation. *See, e.g.*, *Carhart*, 127 S. Ct. at 1638 (rejecting Congress' findings); *United States v. Morrison*, 529 U.S. 598, 614-15 (2000) (striking down Violence Against Women Act because "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation"); *see also Whitney v. California*, 274 U.S. 357, 374 (1927) (Brandeis, J., concurring) ("[W]here a statute is valid only in case certain conditions exist, the enactment cannot alone establish the facts which are essential to its validity."). Indeed, Justice Thomas wrote:

> We know of no support . . . for the proposition that if the constitutionality of a statute depends in part on the existence of certain facts, a court may not review a legislature's judgment that the facts exist. If a legislature could make a statute constitutional simply by 'finding' that black is white or freedom, slavery, judicial review would be an elaborate farce. At least since *Marbury v. Madison*, that has not been the law.

*Lemprecht v. FCC*, 958 F.2d 382, 392 (D.C. Cir. 1992) (Thomas, Circuit Justice).

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

Likewise, the government would be misguided in believing that the Secretary of State's factual findings are more capable of being insulated from judicial review than Congress' own factual findings.  As Chief Justice Hughes explained:

> [T]o say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously impair the security inherent in our judicial safeguards.

*St. Joseph Stockyards Co. v. United States*, 298 U.S. 38, 52 (1932).  He added: "Under our system there is no warrant to the view that the judicial power can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority." *Id.*; *see also id.* at 87 (Brandeis, J., concurring) ("The supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied; and whether the proceeding in which facts were adjudicated was conducted regularly.  To that extent, the person asserting a right, whatever its source, should be entitled to the independent judgment of a court on the ultimate question of constitutionality.").

A construction of Section 1189(a)(8) that would require an Article III court to enforce a violation of an Executive Branch order without considering whether that order is unconstitutional also violates the separation of powers principles enunciated in *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871), because it is tantamount to directing the judiciary to reach a particular result.  In *Klein*, Congress passed a law directing that a presidential pardon be treated as proof that a claimant had provided material support to the South during the Civil War and, therefore, could not recover property confiscated by the government.  The Supreme Court held that this factual determination – made there by Congress itself, rather than an administrative agency – could not be used to defeat a claimant's right to recover his

-16-

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

or her property.  The statute "passed the limit which separates the legislative from the judicial power" by prescribing the "rule of decision."  *Id.* at 146-47; *Cf. Guiterrez de Martinez v. Lamagno*, 515 U.S. 417, 430 (1995) ("Congress may be free to establish a compensation scheme that operates without court participation. . . .  But that is a matter quite different from instructing a court automatically to enter a judgment pursuant to a decision the court has no authority to evaluate."); *cf. Yakus*, 321 U.S. at 468 (Rutledge, J., dissenting) ("It is one thing for Congress to withhold jurisdiction.  It is entirely another to confer it and direct that it be exercised in a manner inconsistent with constitutional requirements. . . . [W]henever the judicial power is called into play, it is responsible directly to the fundamental law and no other authority can intervene to force or authorize the judicial body to disregard it."); Henry P. Monaghan, *Marbury and the Administrative State,* 83 Colum. L. Rev. 1, 11 (1983) ("There is no half-way position in constitutional cases; so long as it is directed to decide the case, an Article III court cannot be 'jurisdictionally' shut off from full consideration of the substantive constitutional issues. . . .").

Consequently, neither the findings by Congress about the nature of FTOs[6] nor the findings of the Secretary of State that certain organizations are FTOs are controlling.[7]  Because designation acts as the decisive factor in whether the same

[6]     The Congressional findings about the nature of FTOs are particularly questionable because Congress did not know which, if any, organizations the Secretary of State would designate.  Congress' speculation about the nature of such unknown groups is hardly entitled to much weight.

[7]     It also is far from clear that any independent review of the Secretary of State's designations would lead to a conclusion that the statute has been applied faithfully.  Based upon the Secretary of State's selective designations under the statute, Americans, oddly enough, have the First Amendment right to donate money in support of the Irish Republican Army or Palestinian Liberation Organization (which are not designated as FTOs despite the State Department's determination that both have a long history of engaging in terrorism) or even contribute to the genocidal Khmer Rouge (delisted in 1999), but cannot give money to the MEK (despite being delisted in the U.K. because it is not a terrorist organization).  Indeed, until a few days ago, Americans could not have invited Nobel Peace Prize winner Nelson Mandela to their homes for dinner because of his involvement with a FTO, the African National Congress.

McDermott Will & Emery LLP
Attorneys At Law
Washington

-17-

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

act is either an exercise of a constitutionally protected right or a crime, Article III requires that the Judicial Branch be able to make an independent assessment of such a fact on its own record. Section 1189(a)(8) should be construed to avoid conflict with this principle, but if it cannot be so construed, Section 1189(a)(8) must be held unconstitutional.

### B. The First And Sixth Amendments Require That The Issue Of The Validity Of The Designation Be Submitted To The Jury

Independent of the requirements created by Article III, the First and Sixth Amendments also require that defendants be allowed to challenge the validity of the MEK's designation in this case. The Ninth Circuit may be right that, in most instances, the validity of an FTO designation will not be an issue for the jury in Section 2339B cases because: "The *fact* of an organization's designation as an [FTO] is an element of § 2339B, but the *validity* of the designation is not." *Afshari*, 426 F.3d at 1158 (quoting *United States v. Hammoud*, 381 F.3d 316, 331 (4th Cir. 2004) (*en banc*)). But that is not the case when the issue for the jury is whether the defendants' conduct is protected by the First Amendment but for the designation. In such situations, where an administrative process has proscribed conduct that would otherwise be protected by the First Amendment, a criminal defendant is entitled to a judicial determination as to whether the conduct is First Amendment-protected. *See McKinney v. Alabama*, 424 U.S. 669, 673-74 (1976). Moreover, the determination as to whether such conduct can be placed outside the First Amendment must be decided by the jury. *See, e.g.*, *Ring v. Arizona*, 536 U.S. 584, 606-07 (2002) (question whether speech was protected advocacy or prohibited incitement to imminent lawless action must be decided by the jury); *Hamling v. United States*, 418 U.S. 87, 106 (1974) (obscenity must be decided by the jury); *Miller v. California*, 413 U.S. 15, 33-4 (1973) (same); *cf. Granfinancera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989) (holding that Congress cannot assign civil actions that must be heard in Article III courts to non-Article III bodies because it

McDermott Will & Emery LLP
Attorneys At Law
Washington

-18-

would violate the parties' Seventh Amendment right to have all facts determined by the jury in a civil case).

The Supreme Court held in *McKinney v. Alabama*, 424 U.S. 669 (1976), that when an administrative process has proscribed conduct that might otherwise be protected by the First Amendment, a criminal defendant is entitled to argue at her criminal trial that the conduct is First Amendment-protected. In *McKinney*, the State of Alabama established civil proceedings to conclusively determine whether certain materials could be deemed obscene, placing them outside the First Amendment's presumptive protections, and made such proceedings binding in all subsequent criminal proceedings charging persons with the sale of such obscene goods. *Id.* at 671-73. The government then convicted a man for selling a magazine that had been declared "obscene" in that prior civil proceeding. *McKinney*, 424 U.S. at 672.

The Supreme Court unanimously reversed the conviction because the defendant had not been provided the opportunity to challenge the determination that the magazine was "obscene" at his trial. As the Court explained,

> [p]etitioner, however, was convicted and sentenced in a criminal proceeding wherein the issue of obscenity vel non was held to be concluded against him by the decree in a civil proceeding to which he was not a party and of which he had no notice. . . . [T]his procedure fails to meet the standards required *where First Amendment interests are at stake*.

*Id.* at 676 (emphasis added). Although there was a contested hearing before a judicial officer as to the obscenity of the magazine at issue, the Court held that criminal defendants "must be given the opportunity to make these assessments themselves, as well as the chance to litigate the issues if they so choose." *Id.* Because the conduct in question would have been protected by the First Amendment if the magazine were not obscene, the defendant was entitled to litigate that issue in his own criminal trial.

McDermott Will & Emery LLP
Attorneys At Law
Washington

-19-

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

Just as the defendant's right to distribute First Amendment-protected materials in *McKinney* could not be turned off through a finding of "obscenity" that the defendant could not challenge in his own criminal trial, the defendants here cannot have their right to make political contributions supporting the production and dissemination of the MEK's television broadcast, newspaper and press releases turned off through a "FTO designation" that they cannot challenge at trial.

In addition, *McKinney* requires that the factual determination concerning a designation that terminates First Amendment rights be submitted to the jury, even though it is not an explicit element of the offense. In fact, the statute in *McKinney* also did not make "obscenity" itself an element of the crime. It was sufficient for conviction under the statute that the defendant distributed a magazine knowing that it had been "judicially determined" obscene, and the proof in the case made clear that the defendant in *McKinney* did in fact know that the magazines had been declared obscene in a judicial proceeding. *See* 424 U.S. at 672 n.2. Thus, *McKinney*'s holding did not turn on how the statute defines the elements of the crime, but rather on the fact that distribution of the magazine would have been protected by the First Amendment if the magazine were not obscene. Because the defendant's First Amendment rights hinged on that critical underlying issue, the Court held that it had to be submitted to the jury. *See id.* at 677 (vacating conviction "so that [defendant] may be afforded the opportunity to litigate in some forum the issue of the obscenity of [the magazine he sold] before he may be convicted of selling obscene material."); *cf. Ring v. Arizona*, 536 U.S. 584, 606-07 (2002) (listing the First Amendment rule announced in *Brandenburg v. Ohio*, 395 U.S. 444 (1969), as an example where the Court "has interpreted the Constitution to require the addition of an element or elements to the definition of a criminal offense in order to narrow its scope" and adding that "surely the Sixth Amendment guarantee would apply to that element"). Similarly, here, the fact that the statute defines the offense by reference to the groups' designation is irrelevant. Because

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-20-

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

the First Amendment protects support to groups where that support does not further terrorist activity, *see HLP*, 205 F.3d at 1134, the defendants are entitled to present to the jury the question whether the designation is proper and whether their conduct is protected by the First Amendment.

Nor can defendants' argument be dismissed on the ground that the Ninth Circuit already resolved it.  In *Afshari*, defendants on appeal advanced a related but distinct argument under *McKinney,* against the First Superseding Indictment in this case.  They did not argue that the fact that the MEK engaged in some speech activities entitled them to a hearing to challenge the group's designation under *McKinney*, which is the argument here.  Instead, they argued that the material support statute was facially unconstitutional because *any* defendant in a material support case must always be entitled to challenge the validity of a terrorist group's designation, regardless of the nature of the support at issue.  The Ninth Circuit ultimately rejected that argument, but did so on the assumption that the Defendants' alleged support for the MEK was not protected by the First Amendment because it was used to support violence.  *Afshari*, 426 F.3d at 1161.  The court made its assumption clear in a number of passages in the opinion.  *See, e.g.*, *id.* ("Defendants are entitled under the First Amendment to publish articles arguing that the MEK is not really a terrorist organization, but they are not entitled to furnish bombs to the MEK, nor to furnish money to buy bombs and ammunition."); *id.* ("Sometimes money serves as a proxy for speech, and sometimes it buys goods and services that are not speech. . . . There is no First Amendment right to facilitate terrorism by giving terrorists the weapons and explosives with which to carry out their grisly missions.") (internal citation omitted).

While that assumption may have been valid based on the text of the Original Indictment, the Second Superseding Indictment makes clear that the government seeks to punish defendants for having supported activity that would come within the ambit of the First Amendment were the MEK not designated.  The Indictment

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

alleges that the MEK produced television programs, magazines, and engaged in related activities that are clearly protected under the First Amendment. (2d Supp. Indict. ¶¶ 4-5.) Thus, the Second Superseding Indictment makes clear what the first did not, which is that the MEK engages in at least some activity that unquestionably is protected by the First Amendment.[8]

Support for the MEK's television programs, magazine, and other political speech obviously lies at the core of the free speech activities protected by the First Amendment. Thus, *Afshari* cannot be read to hold that defendants have no right to challenge the MEK's designation even if the MEK engages in a substantial portion of First Amendment activity, such as the production and distribution of magazines and television programs; such a reading would render the decision hopelessly inconsistent with a large body of First Amendment case law. The government cannot plausibly argue that the determination as to whether a particular form of support constitutes speech can be left to administrative decisionmakers. *See, e.g.*, *Freedman v. Maryland*, 380 U.S. 51, 58 (1965) (striking down statute that gave administrative decision-maker initial authority to censor a film, and holding that "because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint."). Nor could the government seriously contend that the publication of newspapers or production of television programs does not implicate the First Amendment. *See, e.g.*, *United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 811 (2000) (striking down limits on adult television programming because "[t]o prohibit this much speech is a significant restriction of communication between speakers and willing adult listeners, communication which enjoys First Amendment protection"); *Hurley v.*

[8] Indeed, it is striking that although the Second Superseding Indictment describes the political speech of the MEK in detail, it does not identify a single act of terrorism committed by the MEK after the defendants allegedly raised money on the MEK's behalf, much less demonstrate that any money raised by the defendants was used to support any such terrorist acts.

*Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557, 570 (1995) ("newspapers' opinion pages . . . fall squarely within the core of First Amendment security"); *Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 258 (1974) (holding that "governmental regulation of" newspaper content cannot "be exercised consistent with First Amendment guarantees of a free press"); *see also* Stephen Townley, *The Hydraulics Of Fighting Terrorism*, 29 Hamline L. Rev. 65, 97 (2006) (criticizing *Afshari* because the court's "argument holds little water in the ordinary criminal context, and it holds none when the government criminalizes what are at least possibly First Amendment activities"). Likewise, the government could not maintain that the MEK's efforts to petition Congress and the courts to lift the designation are not protected by the First Amendment. *See, e.g.*, *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532 (2002) (even unsuccessful lawsuits are protected by the First Amendment's Petition Clause). Therefore, *Afshari* cannot be read to bar the argument advanced by defendants here, as against the Second Superseding Indictment.

The First Amendment provides every criminal defendant charged with engaging in any form of prohibited speech activity the opportunity to argue that their conduct falls within the scope of the First Amendment. Because defendants' activity would be protected by the First Amendment were the MEK not designated, defendants have the right to challenge the validity of the designation.

**C.      Section 1189(A)(8) Violates Due Process**

The Court can decide this Motion based on the arguments advanced under Article III and the First and Sixth Amendments. But should it conclude that it cannot resolve this Motion on those arguments, it should hold that Section 1189's bar to judicial examination of the designation violates the Due Process Clause.

In *Afshari*, the Ninth Circuit overturned this Court's finding that Section 1189(a)(8) was unconstitutional on its face because "it does not matter whether the designation is correct or not." *Afshari*, 426 F.3d at 1155. Liability requires only a

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

showing of the fact that an organization is designated, regardless of whether that designation is valid. *Id.* at 1158. The Ninth Circuit did not address the fact that Section 1189(a)(8) would violate the Due Process Clause as applied to persons who are not afforded an opportunity to challenge the designation, regardless of whether the validity of the designation is an element of the offense or not.[9]

The right to due process is personal and, however Congress may choose to break up judicial review of a regulation, it cannot allow anyone to be prosecuted for violating a regulation that person had no opportunity to challenge. The Supreme Court made that principle clear in *Yakus v. United States*, 321 U.S. 414, 447 (1944): "Even though the statute should be deemed to require it, any ruling at the criminal trial which would preclude the accused from showing *he had . . .* no opportunity to establish the invalidity of the regulation by resort to the statutory procedure, would be reviewable on appeal on constitutional grounds." *Id.* at 447 (emphasis added); *see also Estep v. United States*, 327 U.S. 114, 125 (1946) (To "be criminally prosecuted without ever being afforded the opportunity to prove the prosecution is based upon an invalid administrative order . . . violates the most elementary and fundamental concepts of due process of law.") (Murphy, J., concurring). Indeed, Justice Harlan found the very prospect of imposing criminal liability before offering a chance to challenge the administrative determination shocking because it "is tantamount to permitting the imposition of summary punishment, followed by loss

---

[9] The Ninth Circuit did state that "[i]t bears noting that we are not addressing the constitutionality of a statute lacking in judicial review," *id.* at 1156 n.32, but, as explained above, that opportunity of judicial review only applies to the FTO itself, not to anyone who could be charged with providing "material support" to the FTO. Nor could the defendants be forced to rely upon the FTO to assert their right to challenge the designation, particularly given that most FTOs have no standing to bring constitutional challenges and, due to their foreign presence, may have no interest in even asserting their own rights. *PMOI v. DOJ*, 289 F.3d 17, 22 (D.C. Cir. 1999). Even when a person has challenged an injunction through a fairness hearing as a non-party, the Supreme Court has held that, despite having their objections heard by a court, that person is not barred by from renewing their challenges to the injunction through a legal action against the injunction in their own right. *Martin v. Wilks*, 490 U.S. 755, 758 (1989). In this case, the defendants have had no opportunity to challenge the designation whatsoever. The defendants never argued *Yakus* to the Ninth Circuit in *Afshari*, and the Ninth Circuit neither ruled upon this claim nor so much as cited *Yakus*.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

of liberty, without possibility of bail, until such time as the petitioner is able to secure his release by a writ of habeas corpus." *Ostereich v. Selective Serv. Sys.*, 393 U.S. 233, 237 (1968) (Harlan, J., concurring).  He added: "This would, at the very least, cut against the grain of much that is fundamental to our constitutional tradition." *Id.*

Justice Rutledge's dissenting opinion in *Yakus*, which argued that the statute was unconstitutional even as applied to those who were afforded a limited opportunity to challenge the regulation,[10] demonstrates just how illogical the government's contention is that judicial review could be foreclosed in this manner. He hypothesized a racially discriminatory regulation being promulgated and asked whether the government's construction would require the courts to ignore the obvious constitutional defect and punish those who violated the law.  Doing so, he explained, "hardly would be consistent with accepted ideas of due process or equal

---

[10]     This sort of bifurcated procedure where a regulation's validity was tested in one proceeding and enforced in another was upheld as an emergency wartime measure in *Yakus*, but the critical fact in that case was that the defendants failed to seek the review that was open to them.  *Yakus*, 321 U.S. at 433.  Some members of the Supreme Court have openly questioned whether *Yakus* is even a viable precedent outside the war powers context. *See, e.g.*, *Harrison v. PPG Indus.*, 446 U.S. 578, 594 (1980) (Powell, J., concurring); *Adamo Wrecking v. United States*, 434 U.S. 275, 289 (1978) (Powell, J., concurring); *see also* 13 Charles Alan Wright et al., Federal Practice and Procedure § 3526 n.2 (2d ed. Supp. 1999) (explaining that *Yakus* "relied greatly on the wartime emergency circumstances" and opining "[i]t is doubtful, in light of current doctrines of due process, that Congress could deny a criminal defendant the right to raise the invalidity of a statute or regulation in his defense, absent extreme exigencies").  In the non-wartime context, the First Circuit has questioned "[w]hether a legislative scheme similar . . . to that sustained in *Yakus* could today withstand a constitutional challenge by a criminal defendant is not settled by *Yakus.*" *United States v. Saade*, 652 F.2d 1126, 1133 n.9 (1st Cir. 1981); *see also United States v. Alexander*, 938 F.2d 942, 947 (9th Cir. 1991) ("Although the Supreme Court has held that Congress may prevent such challenges during time of war [citing *Yakus*], there is some doubt whether Congress could constitutionally do so during peacetime."); *Am. Coalition for Competitive Trade v. Clinton*, 128 F.3d 761, 765-66 (D.C. Cir. 1997) ("[T]here may well be limits as to how severely Congress can restrict judicial review of challenges when it keeps that route partially open."); *Chrysler Corp. v. EPA*, 600 F.2d 904, 913 (D.C. Cir. 1979) (explaining that post-*Yakus* the "nagging presence of a substantial due process question" remained in the non-war power context).  That even the scheme upheld in *Yakus* – which did permit the defendant an opportunity to seek judicial review – has been questioned in the non-emergency war powers context casts considerable doubt upon prosecutions under Section 2339B, which was not passed as a temporary wartime measure and which fails to even afford the judicial review that was available in *Yakus*. *Cf. Lane v. Wilson*, 307 U.S. 268, 275-77 (1939) (holding unconstitutional a narrow opportunity for asserting constitutional rights in the voting context unconstitutional).

protection for any court to impose penalty or restraint in such a case.  And I cannot imagine this Court as sustaining such a conviction or any other as imposing it." *Yakus*, 321 U.S. at 470 (Rutledge, J., dissenting).  Yet the government apparently imagines this Court should allow such a conviction to occur.

As with Justice Rutledge's hypotheticals, there are many others under Section 1189(a)(8) that are equally troubling.  If, for example, the Secretary of State were to designate either the Republican Party or Democratic Party an FTO, notwithstanding the fact that neither would qualify as an FTO under the statutory criteria, would the failure of either Party to challenge the designation within 30 days really subject anyone who writes a check or volunteers for either Party to criminal liability?  Given that the FTO designation becomes effective immediately upon publication, could anyone who writes a check to a Party before such a judicial challenge is brought by the Party or decided by the court really be prosecuted?  While defendants cannot speak for the government, such a conviction would appear to be a constitutional abomination but – absent an allowance for judicial review – conviction would seem to be required.

Whatever authority the government may cite for the proposition that Congress can limit federal jurisdiction by both the time and place in which a person can challenge an administrative determination, defendants are not aware of any authority for the extraordinary proposition that a person can be prosecuted for violating an administrative determination that the person *never* was entitled to challenge.  Because the Ninth Circuit has not addressed the *Yakus* line of cases in the context of Section 1189(a)(8), nothing in *Afshari* prevents this Court from finding Section 1189(a)(8) unconstitutional on its face on this ground.  Should the Court reach this issue, it should have no difficulty finding Section 1189(a)(8) unconstitutional on its face.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-26-

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

# CONCLUSION

Whether it is through a narrow construction of Section 1189(a)(8) or by finding Section 1189(a)(8) unconstitutional, either as applied or on its face, this Court should permit the defendants to challenge the validity of the MEK's designation as a FTO as a defense at trial and, if not, the charges based on this unconstitutional deprivation must be dismissed..

Dated:  July 15, 2008                              Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

_____/s/_____
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**MICHAEL S. MEZA LAW OFFICES**

_____/s/_____
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

_____/s/_____
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**THOMAS NISHI LAW OFFICES**

_____/s/_____
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

**JAY L. LICHTMAN LAW OFFICES**

_____/s/_____
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**SAINT MARTIN & FAN**

_____/s/_____
Amy Fan
Attorney for Defendant
NAVID TAJ

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

_____/s/_____
Peter J. Eliasberg
Ahilan T. Arulanantham

**NASATIR HIRSCH PODBERESKY & GENEGO**

_____/s/_____
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS AN FTO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON