**McDERMOTT WILL & EMERY LLP**
Abbe David Lowell (Admitted *Pro Hac Vice*)
adlowell@mwe.com
Roy L. Austin, Jr. (State Bar No. 211491)
raustin@mwe.com
Hoyt Y. Sze (State Bar No. 180716)
hsze@mwe.com
Christopher D. Man
cman@mwe.com
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
Telephone:  202.756.8000
Facsimile:  202.756.8087

Attorneys for Defendant
ROYA RAHMANI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
A Limited Liability Partnership
Including Professional Corporations
Richard M. Steingard (State Bar No. 106374)
RSteingard@sheppardmullin.com
333 South Hope Street, 48th Floor
Los Angeles, CA  90071-1448
Telephone:  213.617.5416
Facsimile:  213.443.2908

Attorney for Defendant
MUSTAFA AHMADY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>      v.<br><br>ROYA RAHMANI, ALIREZA MOHAMMADMORADI, MOUSTAFA AHMADY, HOSSEIN KALANI AFSHARI, HASSAN REZAIE, NAVID TAJ, MOHAMMAD HOSSEIN OMIDVAR, et. al.,<br><br>               Defendants. | CASE NO.  CR-01-00209(A)-RMT<br><br>**DEFENDANTS' NOTICE OF MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT FOR GRAND JURY BIAS (MOTION TO DISMISS NO. 5)**<br><br>Hearing Date:       None Scheduled<br>Time:<br>Dept.:                  Courtroom 22 |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendants Roya Rahmani, Alireza Mohammadmoradi, Moustafa Ahmady, Hossein Kalani Afshari, Hassan Rezaie, Navid Taj and Mohammad Hossein Omidvar, ("the defendants") hereby move the Court to dismiss the Second Superseding Indictment for grand jury bias.[1]  This Motion is based on this Notice of Motion, supported by the attached Memorandum of Points and Authorities, and by all of the pleadings, records and files in this action, and such other documents and argument as may be presented to the Court.

Dated:  July 15, 2008                          Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

/s/
Abbe David Lowell                              **JAY L. LICHTMAN LAW OFFICES**
Roy L. Austin, Jr.
Hoyt Sze                                       /s/
Christopher D. Man                             Jay L. Lichtman
Attorneys for Defendant                        Attorney for Defendant
ROYA RAHMANI                                   HASSAN REZAIE

**MICHAEL S. MEZA LAW OFFICES**                **SAINT MARTIN & FAN**

/s/                                            /s/
Michael S. Meza                                Amy Fan
Attorney for Defendant                         Attorney for Defendant
ALIREZA MOHAMMADMORADI                         NAVID TAJ

**SHEPPARD MULLIN RICHTER &                    ACLU FOUNDATION OF
HAMPTON LLP**                                  SOUTHERN CALIFORNIA**

/s/                                            /s/
Richard M. Steingard                           Peter J. Eliasberg
Attorney for Defendant                         Ahilan T. Arulanantham
MUSTAFA AHMADY

                                               **NASATIR HIRSCH PODBERESKY &
THOMAS NISHI LAW OFFICES**                     GENEGO**

/s/                                            /s/
Thomas Nishi                                   William J. Genego
Attorney for Defendant                         Attorneys for Defendant
HOSSEIN KALANI AFSHARI                         MOHAMMAD HOSSEIN OMIDVAR

---

[1]     The defendants first filed a motion to Dismiss the Superseding Indictment for Grand Jury Bias on November 14, 2007, before the government filed the Second Superseding Indictment. This motion replaces that motion and any joinders filed therewith.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT..............................................................................................................3

I.     THE CONSTITUTION GUARANTEES THAT AN INDICTMENT WILL BE ISSUED BY AN UNBIASED GRAND JURY ...........................3

II.    BIAS AGAINST IRANIANS, MUSLIMS AND PERSONS OF MIDDLE EASTERN DESCENT HAS BEEN RAMPANT........................4

III.   COURTS HAVE RECOGNIZED THE IMPORTANCE OF SCREENING THE GRAND JURY FOR BIAS ...........................................6

CONCLUSION .......................................................................................................10

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

      DEFENDANTS' MOTION TO DISMISS FOR GRAND JURY BIAS

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ...................................6

*Costello v. United States*, 350 U.S. 359 (1956) ......................................................3

*Rosales-Lopez v. United States*, 451 U.S. 182, 191 (1981)......................................7

*Silverthorne v. United States*, 400 F.2d 627 (9th Cir. 1968) ..................................8

*State v. Attala*, 813 N.E. 2d 84 (Ohio Ct. App. 2004).............................................8

*Thabit v. U.S. Dept. of Agriculture*, No. C-02-2329 SC, 2003 WL
    1798302 (N.D. Cal. Apr. 3, 2003).....................................................................5

*United States v. Burke*, 700 F.2d 70 (2d Cir. 1983) .............................................3, 4

*United States v. Fuentes*, 432 F.2d 405 (5th Cir. 1970) ...........................................4

*United States v. Hickey*, No. 02-10197, 2004 U.S. App. LEXIS 28038
    (9th Cir. 2005) ..................................................................................................3

*United States v. Hubbard*, 474 F. Supp. 64 (D.D.C. 1979) .....................................9

*United States v. Koubriti*, 252 F. Supp. 2d 437 (E.D. Mich. 2003)........................8

*United States v. Maine Lobster Co.,* 160 F. Supp. 122 (D. Me. 1957)....................9

*United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999) .....................................7, 8, 9

*United States v. Salim*, 189 F. Supp. 2d 93 (S.D.N.Y. 2002)..................................5

*United States v. Sanabria*, 72 Fed. Appx. 669 (9th Cir. 2003)...............................7

*United States v. Trochelmann*, No. 98 CR 1276 (JFK), 1999 WL
    294992 (S.D.N.Y. May 11, 1999) ......................................................................6

*United States v. Waldbaum, Inc.,* 593 F. Supp. 967 (E.D.N.Y. 1984).....................9

*Vasquez v. Hillery*, 474 U.S. 254 (1986) ......................................................4, 6, 7, 9

**STATUTES**

28 U.S.C. § 1866 (2003) ......................................................................................4, 8

M CDERMOTT W ILL & E MERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO
DISMISS FOR GRAND JURY BIAS

**TABLE OF CONTENTS**
**(continued)**

**Page**

**OTHER AUTHORITIES**

http://www.aclu.org/racialjustice/relatedinformation_publications.html (Feb. 26, 2004)..................................................................................................5

Human Rights Watch, We Are Not the Enemy: Hate Crimes Against Muslims, Arabs, and Those Perceived to be Arab or Muslim After September 11, Vol. 14 No. 6, at http://www.hrw.org/reports/2002/usahate (Nov. 2002) ....................................6

*Post 9/11 Workplace Discrimination Continues*, USA Today, Jul. 5, 2005, at http://www.usatoday.com/money/workplace/2005-07-05-anti-arab-workplace_x.htm ................................................................................6

*Symbolism Under Siege:  Japanese Americans Redress And The "Racing" Of Arab Americans As "Terrorists"*, 8 Asian L.J. 1 (2001) .................................................................................................4, 5

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS FOR GRAND JURY BIAS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Although terrorism and allegations of terrorism come in no single color, race, ethnicity or religion, for decades Americans have experienced, seen and heard about terrorism by Middle Eastern and Islamic extremists.  But as President George W. Bush stated "[t]he face of terror is not the true faith of Islam.  That's not what Islam is all about."  September 17, 2001 speech by George W. Bush.  Despite the President's words, the repeated images, both real and from Hollywood, of terrorism by Middle Eastern extremists has resulted in a pervasive anti-Middle Eastern and anti-Islamic bias.  Prior to their indictment for providing material support to a terrorist organization, the defendants – Iranian Muslims – had a right to have the grand jurors who indicted them questioned in voir dire to eliminate those whose vote would be tainted by impermissible bias.

This motion moves to dismiss the Second Superseding Indictment because it appears that the government failed to *voir dire* the grand jury when for well over twenty years preceding the Original Indictment, the American people had been bombarded with reports about threat posed by Middle Eastern extremists.  For 444 days spanning from 1979 through 1981, the American people watched nightly newscasts as Iranian terrorists held more than sixty Americans hostage at the U.S. Embassy in Iran.  In 1983, the bombing of American barracks by Islamic extremists in Beirut resulted in the single greatest loss of American servicemen since the first day of the Tet Offensive and the greatest loss of Marines since the battle of Iwo Jima.  The public outcry led to U.S. military strikes in Syria, a threat of U.S. involvement in a broader military confrontation in the Middle East, and eventually the withdrawal of U.S. forces from Lebanon.  Americans also witnessed an attack on U.S. soil by Islamic extremists in the first bombing of the World Trade Center in 1993 and, that same year, watched the graphic images of the mutilation and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-1-

dragging of U.S. soldiers at the hands of extremist Islamic warlords in Somalia. The 1996 bombing of the Khobar Towers in Saudi Arabia left the haunting image of an eight-story building being cut in half, and the American people watched as the bodies of nearly 400 people, including nineteen American servicemen, were slowly excavated from the site. Similarly, in 1998, more than 200 people were killed when Islamic extremists attacked the U.S. Embassy in Tanzania and Kenya. Again in October 2000, the American people learned that Islamic suicide bombers had attacked the U.S.S. Cole at a port in Yemen, killing seventeen American service members and wounding nine others. Throughout this period from the 1950s through 2001, the American media constantly advised of suicide bombings, hijackings, assassinations and other acts of terrorism committed by Islamic extremists in the Middle East and elsewhere.

For far too many Americans, these stories and images comprised the bulk of their exposure to persons of Middle Eastern descent and of Islam. These news accounts were extremely powerful, and the fact that this very selective image of Middle Easterners and Islam was almost the only one shown understandably led to serious bias. By 1997, even the United Nations had expressed concern with the strong tendency of the American people and its media to associate Arabs and Muslims with terrorism. Gustavo Capedevila, *Human Rights: Alarm At Spread Of Racism Worldwide*, Inter Press Service (Mar. 18, 1997).

Then, on September 11, 2001, prior to the government seeking the First Superseding Indictment in this case in 2005, the United States suffered from multiple, coordinated terrorist attacks by Islamic extremists, which killed roughly 3,000 people, shut down air traffic across the country, and caused the American people to feel threatened and vulnerable on our own soil. While the American people rightly appreciate the very real threat posed by terrorists, far too many Americans have over-generalized this very serious concern with a small subset of

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO
DISMISS FOR GRAND JURY BIAS

the Middle Eastern community and have formed a bias against virtually all persons of Middle Eastern descent who practice the Muslim religion.

It was in this climate that a grand jury originally indicted the defendants in February 2001, returned the First Superseding Indictment in June 2005, and returned a Second Superseding Indictment in November 2007. This political and social atmosphere created a significant risk that members of a grand jury venire called to issue an indictment in a material support of terrorism case against a group of Iranian Muslims would have preconceived and hostile notions toward the subjects, even where there is no allegation of terrorism against Americans. When the government sought the Original Indictment, the First Superseding Indictment and the Second Superseding Indictment ("Indictment") against the defendants, it had a responsibility to screen the grand jury for ethnic and religious bias, to ensure the indictment was issued by an impartial jury. If the grand jury was not screened to eliminate jurors holding those biases, the Indictment must be dismissed.

On March 27, 2001 and again on June 14, 2007, the defendants requested that the government provide them with information concerning any steps taken to insure an unbiased grand jury. On April 30, 2001 and again on September 17, 2007, the government refused. The defendants view this refusal as a tacit acknowledgement that the grand jurors were not properly screened.

## **ARGUMENT**

### I.   **THE CONSTITUTION GUARANTEES THAT AN INDICTMENT WILL BE ISSUED BY AN UNBIASED GRAND JURY**

A fundamental guarantee of the Fifth Amendment is that an indictment must be returned by an unbiased grand jury. *Costello v. United States*, 350 U.S. 359, 363 (1956) (holding that the Fifth Amendment requires an unbiased grand jury); *United States v. Hickey*, No. 02-10197, 2004 U.S. App. LEXIS 28038 at \*15 (9th Cir. 2005) (quoting *Costello*); *United States v. Burke*, 700 F.2d 70, 82 (2d Cir. 1983) (holding that a right to an impartial grand jury is a "constitutional guarantee"). This

McDermott Will & Emery LLP
Attorneys At Law
Washington

-3-                                    DEFENDANTS' MOTION TO
                                        DISMISS FOR GRAND JURY BIAS

constitutional requirement is echoed in the Jury Selection and Service Act of 1968. *See* 28 U.S.C. § 1866 (2003) (jurors may be excluded where they may not be able to render impartial jury service).  An indictment should be dismissed where there is grand jury bias.  *See Burke*, 700 F.2d at 82 (if pre-indictment publicity is shown to result in actual prejudice to the defendant in the form of a biased grand jury, reversal of the conviction is warranted); *United States v. Fuentes*, 432 F.2d 405, 407 (5th Cir. 1970) (indictment to be invalidated upon a showing of actual bias). Dismissal is also warranted, however, if there is a constitutional violation that renders the grand jury proceedings so fundamentally unfair that prejudice must be presumed.  *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986).

While there can be no sure way of knowing whether a potential grand or petit juror is so biased as to disqualify them from service, an absolute starting point has to be to ask.  This is especially the case when the government knows it will be seeking charges against Iranians, who practice the Muslim faith, and are going to charge terrorism.  If the jury that indicted the defendants was not screened for bias against Muslims and people of Middle Eastern descent, then both theories may be satisfied.  If the government continues to refuse to explain how it attempted to screen for or otherwise alleviate potential anti-Middle Eastern and anti-Islamic bias, the Court should presume such prejudice remained and dismiss the indictment.

II.   **BIAS AGAINST IRANIANS, MUSLIMS AND PERSONS OF MIDDLE EASTERN DESCENT HAS BEEN RAMPANT**

Even before September 11, there was ample reason for the government to be concerned about potential juror bias against Iranian Muslims charged with terrorism.  Built upon stereotypes, one-sided media presentations, television shows and movies, that bias was real. Natsu Taylor Saito, *Symbolism Under Siege: Japanese Americans Redress And The "Racing" Of Arab Americans As "Terrorists"*, 8 Asian L.J. 1, 11 (2001).  Even prior to 9/11, whenever any suspected terrorist event occurred – such as the Oklahoma City bombing in 1995

DEFENDANTS' MOTION TO DISMISS FOR GRAND JURY BIAS

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

and the 1996 midair explosion of TWA Flight 800 off the coast of Long Island – the public immediately assumed that Arab or Muslim terrorists must be behind it and those populations witnessed a spike in harassment in the weeks that followed, even after it became clear that neither Arabs nor Muslims were responsible. *Id.* at 13. This powerful bias did not emerge solely on September 11, 2001. It is not as though people once thought our friends suddenly became the enemy.

Since the terrorist attacks of September 11, 2001, in particular, fear and hatred of Muslims and people of Arab descent have been widespread. *See Thabit v. U.S. Dept. of Agriculture*, No. C-02-2329 SC, 2003 WL 1798302, at *4 (N.D. Cal. Apr. 3, 2003) (recognizing that the years following the 9/11 attacks were a time of "heightened prejudice against people of Middle Eastern descent"); *United States v. Salim*, 189 F. Supp. 2d 93, 97 (S.D.N.Y. 2002) (citing a survey confirming that "the events of September 11, 2001 have had the unfortunate effect of increasing the prejudice and animosity towards Arab nationals nationwide"); *see also* Civil Rights Division, Department of Justice, Enforcement and Outreach Following the September 11 Terrorist Attacks, at http://www.usdoj.gov/crt/legalinfo/discrimupdate.htm (Mar. 22, 2007) (revealing that the Department of Justice has "investigated over 750 incidents since 9/11 involving violence, threats, vandalism and arson against Arab-Americans, Muslims, Sikhs, South-Asian Americans and other individuals perceived to be of Middle Eastern origin"). As a result of the 9/11 attacks, Muslims and other persons of Middle Eastern descent in the United States became the targets of increased prejudice and racial profiling, and were discriminated against in all aspects of their lives. *See* American Civil Liberties Union, Sanctioned Bias: Racial Profiling Since 9/11, at http://www.aclu.org/racialjustice/relatedinformation_publications.html (Feb. 26, 2004) ("[T]he trauma of 9/11 has made general anti-immigrant sentiment acceptable in the guise of law enforcement"); Stephanie Armour, *Post 9/11 Workplace Discrimination Continues*, USA Today, July 5, 2005, at

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS FOR GRAND JURY BIAS

http://www.usatoday.com/money/workplace/2005-07-05-anti-arab-workplace_x.htm (explaining that as of June 11, 2005, 980 "post-9/11 backlash discrimination" charges and 2,168 claims of discrimination based on the plaintiff's Muslim religion had been filed with the EEOC); Human Rights Watch, We Are Not the Enemy: Hate Crimes Against Muslims, Arabs, and Those Perceived to be Arab or Muslim After September 11, Vol. 14, No. 6, at http://www.hrw.org/reports/2002/usahate (Nov. 2002) ("A poll of Arab-Americans conducted in May 2002 found that that 20 percent had personally experienced discrimination since September 11").  During a time when the U.S. Government has declared war and a people of a shared race, religion or ethnicity has been over-broadly identified as the enemy, the Constitution requires that the innocents within that group be protected from unlawful criminal prosecution.

### III. COURTS HAVE RECOGNIZED THE IMPORTANCE OF SCREENING THE GRAND JURY FOR BIAS

It is crucial to determine whether the government thoroughly screened the grand jury for bias because an improperly constituted grand jury would be grounds for reversal.  *See Vasquez*, 474 U.S. at 263 (reversing the conviction because the government racially discriminated in selecting the grand jury).  There is usually a presumption of regularity in grand jury proceedings, *United States v. Trochelmann*, No. 98 CR 1276 (JFK), 1999 WL 294992, at *3 (S.D.N.Y. May 11, 1999).  But "a reviewing court can neither indulge a presumption of regularity [of the grand jury] nor evaluate the resulting harm" when "constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment."  *Vasquez*, 474 U.S. at 263; *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57 (1988) (finding that prejudice can be presumed and no harmless error analysis is necessary when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair").  If the government failed to screen the grand jury that indicted the defendants for prejudice against persons of Middle

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-6-

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

Eastern descent, this was a constitutional error requiring dismissal of the Indictment. *See Vasquez*, 474 U.S. at 263-64 ("[D]iscrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.").

In *Vasquez* the appellant sought to dismiss his indictment because the government purposely excluded qualified African-Americans from the grand jury that indicted him. 474 U.S. at 262. The Court found that once the defendant demonstrated racial discrimination in selection of the grand jury that indicted him, his conviction had to be reversed. *Id.* at 264. The Court compared racial bias in grand jury selection to cases where the judge has a "financial interest in [a] conviction" or where the petit jury has been exposed to prejudicial publicity. *Id.* at 263. Although *Vasquez* refers to the racial composition of the grand jury itself, a similarly strict approach is required when a grand jury has not been screened for ethnic and religious bias. *See United States v. Sanabria*, 72 Fed. Appx. 669 (9th Cir. 2003) (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 191 (1981)) (finding that it is necessary to voir dire the jury for bias when there is a "'reasonable probability that racial or ethnic prejudice' influenced the jury").

This specific issue arose in *United States v. Rahman*, 189 F.3d 88, 121 (2d Cir. 1999), the trial of the World Trade Center bombers. The Muslim defendants challenged the petit jury that convicted them on the basis that the jurors had not been adequately screened for ethnic and religious bias or for the negative effects of the bombing's publicity. *Id.* at 121. The defendants argued that the judge erred by not using their proposed voir dire questions. *Id.* The Second Circuit acknowledged the importance of screening for ethnic and religious bias because of the "sensitive issues that might arise in the case." *Id.* at 122. The court denied the defendants' claim, however, because it was "clear that the District Court *thoroughly screened* the prospective jurors" for ethnic or religious bias against the Arab Muslim defendants. *Id.* at 121 (emphasis added). The judge had conducted a thorough voir

dire, not only directly asking potential jurors about their attitude toward Arabs and Muslims, but also whether they had had loved ones killed in the World Trade Center bombing, and whether they had witnessed that event themselves. *Id.* Additionally, jurors were asked what they knew about the teachings of Islam, whether they associated or worked with people of Arab descent, and whether they had any negative or positive feelings about Arabs or Muslims. *Id.* These questions were designed to draw out any conscious or unconscious prejudices that the prospective jurors may have had toward the defendants. *See also Silverthorne v. United States*, 400 F.2d 627, 638 (9th Cir. 1968) (internal quotations omitted) (stating that there is an obligation to elicit answers that allow an evaluation of impartiality, because "merely going through the form of obtaining jurors' assurances of impartiality is insufficient [to test that impartiality]."); *United States v. Koubriti*, 252 F. Supp. 2d 437, 441 (E.D. Mich. 2003) (rejecting defendants' request to adjourn their trial for conspiracy to provide material assistance to terrorists, on the grounds that each juror had completed a "lengthy questionnaire" exploring any possible bias against persons of Middle-Eastern origin, and that any jurors who exhibited "potential bias" were excluded for cause); *State v. Attala*, 813 N.E. 2d 84, 90-91 (Ohio Ct. App. 2004) (finding both the prosecutor's and the defense counsel's questioning of a potentially biased juror in front of the entire venire improper, because "when inquiring of particularly sensitive and inflammatory issues relating to ethnicity, religion, cultural bias, and terrorism, once a juror has expressed even the potential for bias, an in-camera voir dire . . . will prevent the poisoning of the entire jury pool.").

The law regarding petit jury bias is applicable to grand jurors because the statutory standards governing the exclusion of biased jurors is the same for grand jurors as for petit jurors. *See* 28 U.S.C. § 1866(c)(2) (court may exclude a juror from a grand *or* petit jury "on the ground that such person may be unable to render impartial jury service"); *see also United States v. Waldbaum, Inc.,* 593 F. Supp.

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO DISMISS FOR GRAND JURY BIAS

967, 971 (E.D.N.Y. 1984) (citing petit jury bias cases in its discussion of possible grand jury bias); *United States v. Maine Lobster Co.,* 160 F. Supp. 122, 125 (D. Me. 1957) (dismissing grand juror for cause when grand juror "might have been one of the aggrieved parties against whom the alleged conspiracy was directed, a position from which [his] prejudice might well be presumed").

To eliminate those grand jurors who would indict the defendants based on their prejudices, it was essential to voir dire all potential grand jurors. Given the background of the targets and the nature of the charges being sought, specific questions should have been asked to elicit the conscious and unconscious prejudices of the grand jurors. *See Rahman*, 189 F.2d at 122 (describing a voir dire that the court considered adequate to screen jurors for ethnic and religious prejudice); *United States v. Hubbard*, 474 F. Supp. 64, 78 (D.D.C. 1979) ("Voir dire is the appropriate means for determining whether a fair and impartial jury can be selected."). If the government did not conduct a proper voir dire in seating the grand jury that indicted the defendants, the Constitution mandates that this Court dismiss the Indictment because "we simply cannot know that the need to indict would have been assessed in the same way by a grand jury properly constituted." *Vasquez*, 474 U.S. at 264.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO
DISMISS FOR GRAND JURY BIAS

## CONCLUSION

Because the government has refused to produce discovery as to whether the grand jurors were screened for ethnic and religious bias, the Court should presume that no screening was conducted and should dismiss the Second Superseding Indictment.

Dated:  July 15, 2008

McDERMOTT WILL & EMERY LLP

/s/
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

MICHAEL S. MEZA LAW OFFICES

/s/
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

SHEPPARD MULLIN RICHTER & HAMPTON LLP

/s/
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

THOMAS NISHI LAW OFFICES

/s/
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

Respectfully submitted,

JAY L. LICHTMAN LAW OFFICES

/s/
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

SAINT MARTIN & FAN

/s/
Amy Fan
Attorney for Defendant
NAVID TAJ

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

/s/
Peter J. Eliasberg
Ahilan T. Arulanantham

NASATIR HIRSCH PODBERESKY & GENEGO

/s/
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

DEFENDANTS' MOTION TO DISMISS FOR GRAND JURY BIAS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON