**McDERMOTT WILL & EMERY LLP**
Abbe David Lowell (Admitted *Pro Hac Vice*)
adlowell@mwe.com
Roy L. Austin, Jr. (State Bar No. 211491)
raustin@mwe.com
Hoyt Y. Sze (State Bar No. 180716)
hsze@mwe.com
Christopher D. Man
cman@mwe.com
600 Thirteenth Street, N.W.
Washington, DC  20005-3096
Telephone:  202.756.8000
Facsimile:   202.756.8087

Attorneys for Defendant
ROYA RAHMANI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
A Limited Liability Partnership
Including Professional Corporations
Richard M. Steingard (State Bar No. 106374)
RSteingard@sheppardmullin.com
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448
Telephone: 213.617.5416
Facsimile: 213.443.2908

Attorney for Defendant
MUSTAFA AHMADY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>ROYA RAHMANI, ALIREZA MOHAMMADMORADI, MOUSTAFA AHMADY, HOSSEIN KALANI AFSHARI, HASSAN REZAIE, NAVID TAJ, MOHAMMAD HOSSEIN OMIDVAR, et. al.,<br><br>        Defendants. | CASE NO.  CR-01-209(A)-RMT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR SELECTIVE PROSECUTION (MOTION TO DISMISS NO. 6)**<br><br>Hearing Date:  None Scheduled<br>Time:<br>Dept:        Courtroom 22 |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendants Roya Rahmani, Alireza Mohammadmoradi, Moustafa Ahmady, Hossein Kalani Afshari, Hassan Rezaie, Navid Taj and Mohammad Hossein Omidvar ("the defendants") hereby move this Court for a dismissal of the Second Superseding Indictment or, in the alternative, for discovery because the government has selectively prosecuted the defendants on account of their exercise of constitutionally protected rights.

Dated: July 15, 2008

**McDERMOTT WILL & EMERY LLP**

_____/s/_____
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**MICHAEL S. MEZA LAW OFFICES**

_____/s/_____
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

_____/s/_____
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**THOMAS NISHI LAW OFFICES**

_____/s/_____
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

Respectfully submitted,

**JAY L. LICHTMAN LAW OFFICES**

_____/s/_____
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**SAINT MARTIN & FAN**

_____/s/_____
Amy Fan
Attorney for Defendant
NAVID TAJ

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

_____/s/_____
Peter J. Eliasberg
Ahilan T. Arulanantham

**NASATIR HIRSCH PODBERESKY & GENEGO**

_____/s/_____
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 1

ARGUMENT...................................................................................................... 4

I.      THE GOVERNMENT IS SELECTIVELY PROSECUTING THE DEFENDANTS ........................................................................................ 4

    A.      This Prosecution Has A Discriminatory Effect And Purpose............. 4

    B.      The Government Cannot Prosecute A Group For Exercising Its Constitutional Rights ........................................................................ 5

    C.      The Evidence Strongly Suggests The Existence Of A Discriminatory Effect Caused By The Prosecution Of The Defendants ......................................................................................... 7

        1.      The MEK Was The Only FTO List Organization For Which The Domestic Provision Of Material Support Was Prosecuted ...................................................................... 8

        2.      The MEK Was The Most Outspoken FTO In The U.S. Concerning Its Designation....................................................... 9

    D.      The Evidence Strongly Suggests The Existence Of A Discriminatory Purpose In Prosecuting These Defendants ............... 10

    E.      At A Minimum, The Government Should Be Ordered To Produce Discovery On The Issue Of Selective Prosecution.............. 12

CONCLUSION ................................................................................................ 13

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

# TABLE OF AUTHORITIES

**Page**

## CASES

*AmericanArab AntiDiscrimination Comm. ("ADC") v. Reno*, 70 F.3d 1045 (9th Cir. 1995) .................................................................................................................. 6

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001) ............................................................................................................ 2, 9

*Oyler v. Boles*, 368 U.S. 448 (1962)....................................................................... 8

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17 (D.C. Cir. 1999) ............................................................................................................. 2, 9

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 327 F.3d 1238 (D.C. Cir. 2003) ............................................................................................................. 2, 9

*Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 252 (1977) ................................... 5

*Reno v. AmericanArab AntiDiscrimination Comm.*, 525 U.S. 471 (1999) .............. 6

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989) ........................................ 8

*United States v. Balk*, 706 F.2d 1056 (9th Cir. 1983) ....................................... 5, 10

*United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974)...................................... 5, 12

*United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972) .................................. 7

*United States v. Falk*, 479 F.2d 616 (7th Cir. 1973) ............................................. 7

*United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972) .................................. 5, 6, 10

*United States. v Armstrong*, 517 U.S. 456 (1996)...............................................passim

*Wayte v. United States*, 470 U.S. 598 (1985) ...................................................... 5

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ........................................................... 8

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

# TABLE OF AUTHORITIES
(continued)

**Page**

## STATUTES

U.S. Const. art. II, § 3 ............................................................................................... 4

8 U.S.C. § 1182(a)(3)(B)(i)(IV)(V)............................................................................. 8

8 U.S.C. § 1252(g) ..................................................................................................... 6

18 U.S.C. § 1227(a)(1)(A) .......................................................................................... 8

18 U.S.C. § 2339B .................................................................................................... 8

28 U.S.C. § 516 .......................................................................................................... 4

28 U.S.C. § 547 .......................................................................................................... 4

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

All prosecutions are selective because there are insufficient resources to charge every person who allegedly commits an offense.  What courts have protected against, however, are prosecutorial decisions that are based on impermissible reasons.  The charges in this case have been brought against these defendants "for reasons forbidden by the Constitution." *United States v Armstrong*, 517 U.S. 456, 463 (1996).  If a group or individuals are singled out for prosecution for expressing their views or for embarrassing the government through educating the public or for seeking redress from the government, then those charges are subject to dismissal or, at a minimum, an order granting additional discovery. *Id.* at 468.

The government is selectively prosecuting the defendants for their alleged provision of material support to the Mujahedin e Khalq ("MEK"), a very outspoken opponent of the current totalitarian regime in Iran.  The defendants have been charged for their efforts to raise funds at airports, their expressions of opinion and their actions to educate the community.  At the time of the Original Indictment in March 2001 and for years afterward, no other individual had been prosecuted under similar circumstances and no other designated Foreign Terrorist Organization ("FTO") had been singled out in this fashion.

## BACKGROUND

The MEK was founded in the 1960's in opposition to the Shah of Iran, a non-elected dictator.  After the 1979 Islamic revolution overthrew the Shah, the Ayatollah Khomeini and his ruling regime executed members of the MEK's leadership, and drove the organization's members out of the Middle East.  Since its expulsion, the MEK has sought to bring about a regime change in Iran.

Due to the fact that the MEK has been the largest and most active opposition group to the Iranian government, the Islamist regime has consistently sought to

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

disband the MEK and undermine its efforts.  Iran eventually succeeded in convincing the United States government to designate the MEK as a Foreign Terrorist Organization ("FTO") in 1997.  Then President Bill Clinton designated the MEK primarily as a goodwill gesture to Iran in order to try and improve international relations between the two countries.  *See* Andrew Higgins and Jay Solomon, *Odd Bedfellows: Iranian Imbroglio Gives New Boost to Odd Exile Group*, Wall Street Journal, Nov. 29, 2006.  The MEK currently remains on the United States' FTO List.

Since 1997, the MEK has engaged in a number of efforts challenging its designation as an FTO.  First, the MEK has sought redress in both the United States courts and before the European Court of Justice to remove their designation as a terrorist organization.  Each time it has been designated an FTO, the MEK has challenged the appropriateness and constitutionality of the government's designation.  *See People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 327 F.3d 1238 (D.C. Cir. 2003); *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001); *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17 (D.C. Cir. 1999).  At the time the government filed its Original Indictment in this case in 2001, no other organization on the FTO List had publicly challenged in the United States' court system its designation as an FTO.

In addition to seeking assistance from the courts, the MEK also has actively sought and received support from Members of the United States Congress.  In 2000, 228 Members or the U.S. House of Representatives, a majority of the House, signed a statement endorsing the MEK's cause.  *House Members Support Goals of Iranian Resistance*, Associated Press, October 11, 2000.  Later, in 2002, 150 members of Congress, Republicans and Democrats, issued a statement calling for the MEK to be removed from the FTO List.  *Removal of Iran Group From Terror List Sought*,

McDermott Will & Emery LLP
Attorneys At Law
Washington

- 2 -                                  DEFENDANTS' MOTION TO DISMISS
                                            FOR SELECTIVE PROSECUTION

Washington Post, at A11 (Nov. 23, 2002).[1]  No other designated group has made this effort or been this successful obtaining legislative support.

Finally, the MEK has actively exercised its First Amendment freedom of speech privileges to engage in the perfectly legal acts of promoting, and educating the public about, its cause and goals.  In September 1998, in a protest sponsored by the NCRI (according to the government, an alias of the MEK), approximately 2,000 Iranian expatriates protested near the United Nations in New York City during the visit of Iranian President Mohammad Khatami.  Richard Pyle, *Thousands Demand End to 'Repressive' Regime*, The Associated Press State & Local Wire (Sept. 21, 1998).  In July 1999, in another NCRI-planned demonstration which included Members of the U.S. Congress, thousands protested in commemoration of the anniversary of the birth of the Iranian resistance movement in front of the U.S. Capitol in Washington, D.C.  David Briscoe, *Members of Congress Join Rally Against Iran, Clinton Policies*, The Associated Press (July 19, 1999).  In September 2000, thousands again protested another visit by President Khatami to the United Nations in New York. *Thousands of US-based Iranians Rally Against Khatami*, Agence France Presse—English (Sept. 5, 2000).  In a startling admission in the Second Superseding Indictment ("Indictment"), the government acknowledges various free speech activities of the MEK:  the MEK regularly publishes a newspaper espousing its political views; the MEK has expanded its reach to the internet by producing television programs that are available for public viewing

---

[1]     There has been a consistent message from Members of Congress encouraging the Executive Branch to remove the MEK from the FTO List.  As recently as May 2008, Congressman Bob Filner said:  "We know from our terrible experiences with the Iraqi invasion that we cannot invade Iran nor should we try to appease these oppressors of human rights in Iran with such steps as listing the MEK on a terrorist list."  Jodi Breisler, *Congressman Filner Critiques Bush Policy on Iran*, KPBS News, May 14, 2008 available at http://www.kpbs.org/news/local;id=11693.

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION

online, and by maintaining a publicly accessible website.  (Indict. ¶¶ 4 and 5; *see also* MEK website, *available at* http://www.mojahedin.org/pages/index.htm.)

On June 23, 2008, the United Kingdom removed the MEK (PMOI) from its list of alleged terrorist groups.  "Iranian Group in U.K. Terror Win," B.B.C. News, 6.24.08 available at http://news.bbc.co.uk/2/hi/uk_news/7471999.stm.  The U.K. placed the MEK on the List in 2001 largely as a result of the U.S.'s decision to designate the MEK in 1997, and to renew the designations in 1999 and 2001.

It seems clear that what distinguished the MEK, and those who were alleged to support it, from any other FTO, or individuals who supported a group on the FTO List, was that the MEK and its alleged supporters openly exercised their rights to petition Congress and free speech.  They made things harder for the U.S. government by creating controversy about the designation, protesting visits by the totalitarian leaders of Iran to the United Nations, and by educating the public about the mistakes of U.S. foreign policy.  The defendants contend that it is the MEK's and their constitutionally protected actions that originally caused the prosecutors to single them out.  These are precisely the types of prosecutorial decisions that require heightened scrutiny.

**ARGUMENT**

**I.    THE GOVERNMENT IS SELECTIVELY PROSECUTING THE DEFENDANTS**

**A.    This Prosecution Has A Discriminatory Effect And Purpose**

According to the Constitution, prosecutors are charged with ensuring "that the Laws be faithfully executed."  U.S. Const. art. II, § 3; 28 U.S.C. §§ 516, 547. Nevertheless, the Supreme Court has held that a prosecutor's discretion in bringing cases against individuals is not absolute, but is "subject to constitutional constraints."  *Armstrong*, 517 U.S. at 464.  To combat a prosecutor's potentially unchecked discretion to bring charges against individuals, the Court has recognized a defendant's ability to raise a claim of selective prosecution against the prosecutor.

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

To bring a successful selective prosecution claim, a defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)); *see also United States v. Balk*, 706 F.2d 1056, 1060 (9th Cir. 1983) (listing the elements of a selective prosecution claim). A defendant satisfies the discriminatory effect prong by showing that others similarly situated to the defendant were not prosecuted. *Armstrong*, 517 U.S. at 465. A defendant seeking to show a discriminatory purpose must show that the prosecutor "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 252, 266 (1977)); *see also Balk*, 706 F.2d at 1060.

Courts apply differing standards to determine whether a defendant is entitled to an outright dismissal or an order of discovery on the basis of a selective prosecution claim. A defendant is entitled to an outright dismissal if he shows "clear evidence" that the prosecutorial policy had a discriminatory effect and a discriminatory intent. *Armstrong*, 517 U.S. at 465; *see also United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) (conviction reversed where unrefuted evidence "strongly suggests" prosecution based on defendant's exercise of constitutionally protected right). On the other hand, a court may order discovery if the defendant simply shows "some evidence tending to show the existence of the essential elements of the defense. . . ." *Armstrong*, 517 U.S. at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).

**B.      The Government Cannot Prosecute A Group For Exercising Its <u>Constitutional Rights</u>**

The Ninth Circuit has recognized that the Constitution forbids prosecutorial discrimination against individuals on the basis of the exercise of protected First Amendment activities. For instance, in *Steele*, the defendant claimed he was the

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

subject of selective prosecution because of his participation in a census resistance movement. *Steele*, 461 F.2d at 1151. The Ninth Circuit overturned his conviction, finding that sufficient evidence existed to show that he had been singled out for prosecution on the basis that he exercised his First Amendment rights. *Id.* at 1152. In reaching its decision, the Ninth Circuit held that the fact that the government focused solely on vocal offenders, by itself, "strongly suggests a questionable emphasis" by the prosecution in bringing the case. *Id.* The court of appeals also noted that the government's explanation of prosecutorial discretion, without more, was insufficient to refute a selective prosecution claim where the defendant had presented evidence that he was being prosecuted for the "expression of ideas, a constitutionally protected right." *Id.*

Similarly, in *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) ("*ADC*"), *vacated on other grounds*, 525 U.S. 471 (1999), the Ninth Circuit extended its reasoning in *Steele* to apply to a selective prosecution claim on the basis of the First Amendment freedom of association. In *ADC*, the district court dismissed the case after finding that the defendants were prosecuted on the basis of their association with terrorist organizations. The Ninth Circuit affirmed, finding that the First Amendment protects a citizen's right to associate with a political organization, even if that association includes ties with groups that advocate illegal conduct or engage in illegal acts. *Id.* at 1063. Accordingly, the court of appeals found that a defendant may not be selectively prosecuted on the basis of their right of association. *See id.*[2]

---

[2] Although the Supreme Court later vacated the district court's decision, it bears mentioning that the Court's decision to vacate was based solely on jurisdictional grounds, namely that 8 U.S.C. § 1252(g) deprives federal courts of jurisdiction over selective prosecution claims brought by aliens. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 492 (1999). The Court did not pass on the merits of the decision. *See generally id.* Accordingly, though the Ninth Circuit's affirmance of the district court's selective prosecution finding is not binding on this Court, its reasoning that a selective prosecution claim may be brought to protect a defendant's First Amendment right to freely associate is nevertheless persuasive here.

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

Other federal courts of appeals have adopted reasoning similar to the Ninth Circuit to protect defendants from selective prosecution on the basis of the exercise of their First Amendment rights.  For example, in *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), the Seventh Circuit held that the government selectively prosecuted the defendant for being an outspoken critic of the Vietnam War.  At trial, the defendant offered to prove that the prosecutor was aware of the defendant's outward criticism of the government's stance on the war and his active involvement in advising others on methods of legally avoiding military service and in protesting American actions in Vietnam.  The defendant further offered to prove that the prosecutor indicated that the defendant's draft counseling activities was one of the main reasons the government brought the case.  The Seventh Circuit found that this offer of proof established evidence that the defendant had been singled out by the prosecution on the basis of his First Amendment activities.

Similarly, in *United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972), the Fourth Circuit found that the government was selectively applying its disorderly conduct regulations to inhibit public meetings held by groups who were opposed to the government's policies on the Vietnam War.  According to the court of appeals, the arbitrary application of these regulations violated the defendant's right to assembly under the First Amendment of the Constitution, and was therefore unconstitutional.  *Id.* at 1079.

**C.    The Evidence Strongly Suggests The Existence Of A Discriminatory Effect Caused By The Prosecution Of The <u>Defendants</u>**

By bringing a selective prosecution claim, a defendant "may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 517 U.S. at 46465 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE PROSECUTION

(1886)).  As such, under the Equal Protection component of the Due Process Clause of the Fifth Amendment, "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

Accordingly, to establish the existence of a discriminatory effect, the defendant must identify a similarly situated class "to isolate the factor allegedly subject to impermissible discrimination." *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989), *superseded by statute on other grounds*.  This group – called the "control group" – is a group that is similarly situated in all respects to those who claim selective enforcement, except for the attribute on which the selective enforcement claim rests.  *Id.* at 706-07.

Here, the "control group" consists of all thirty-one entities that were designated as FTOs at the time of the Original Indictment. (*See* Exhibits A & B (State Department's List of Foreign Terrorist Organizations 1997 and 1999).)  The State Department so designated the MEK during the first year of the List in 1997. Each of the groups on the FTO List is subject to the significant legal restrictions associated with a designation on this list.  *See* 18 U.S.C. § 2339B; 8 U.S.C. §§ 1182(a)(3)(B)(i)(IV)(V), 1227(a)(1)(A).  Although the MEK was similarly situated to the other FTO List members, it was notably distinct from the other FTO List members in two significant regards.

**1.**     **The MEK Was The Only FTO List Organization For Which The Domestic Provision Of Material Support Was <u>Prosecuted</u>**

At the time, this Indictment was the only one of its kind alleging criminal penalties for providing material support to an entity designated as an FTO based solely on a defendant's otherwise legal conduct occurring domestically.  Although soon thereafter a small number of *private civil actions for damages* were brought in relation to a particular entity's providing material support to an organization on the

McDermott Will & Emery LLP
Attorneys At Law
Washington

FTO List, as of March 2001 and for years afterward, the U.S. government had not criminally prosecuted anyone else associated with the other thirty-one groups listed for conduct similar to the defendants.

### 2. The MEK Was The Most Outspoken FTO In The U.S. <u>Concerning Its Designation</u>

The MEK always has been particularly outspoken about its designation as an FTO. The MEK repeatedly challenged its designation. *See People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 327 F.3d 1238; *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192; *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17. In fact, at the time the government filed its indictment in 2001, no other organization on the FTO List had publicly challenged its designation as a FTO in the United States court system.

Additionally, members of the MEK sought – and received – support from Members of Congress to lobby for the MEK's removal from the FTO List. In 2000, the MEK secured signatures of over 200 congressmen to a statement endorsing the MEK's goals. *House Members Support Goals of Iranian Resistance*, Associated Press (Oct. 11, 2000). Later, in 2002, the MEK received signatures from 150 congressmen requesting that the State Department remove the MEK from the FTO List. Michael Isikoff & Mark Hosenball, *Shades of Gray*, Newsweek, 2004, *available at* http://www.msnbc.msn.com/id/6242223/site/newsweek/ShadesofGray. To this day, the type and amount of support from U.S. government officials the MEK has been able to achieve is unprecedented.

Finally, the MEK actively exercised its First Amendment freedom of speech privileges to engage in the perfectly legal acts of promoting, and educating the public about, its cause and goals. As the government has conceded in its Indictment, the MEK regularly publishes a newspaper espousing its political views and has expanded its reach to the internet, by producing television programs that are available for public viewing online, and by maintaining a publicly accessible

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

website.  (Indict. ¶¶ Count One, A.4 and 5; *see also* MEK website, *available at* http://www.mojahedin.org/pages/index.htm.)  In addition, supporters of the MEK protested and participated in rallies against the visits of Iranian leaders to the U.S. for meetings at the U.N. (and the evidence the prosecutors have supplied would indicate that this includes some of the defendants).

In all, the challenge to the designation, the education of the public about the errors of American foreign policy, the organization of Members of Congress to oppose the designation, and the protests and rallies set the MEK apart from other FTOs and served to embarrass the U.S. government.  Accordingly, although the MEK was similarly situated to the other groups on the FTO List, it was singular in the respects that it was especially vocal in its opposition to its designation on the List, and that its alleged members were the only individuals within the FTO List organization "control group" charged with providing material support to such organizations.

### D.     The Evidence Strongly Suggests The Existence Of A Discriminatory Purpose In Prosecuting These Defendants

To establish evidence of a prosecutor's discriminatory purpose, the defendant must show evidence that the prosecution was based on an impermissible motive. *Balk*, 706 F.2d at 1060.  According to the Ninth Circuit, however, the very fact that evidence exists that the prosecution focuses solely on dissidents who are vocal "strongly suggests a questionable emphasis" by the prosecutor in bringing the case. *Steele*, 461 F.2d at 1152.  "An enforcement procedure that focuses upon the vocal offender *is inherently suspect. . . .*"  *Id.* (emphasis added).

Here, the evidence suggests that the government focused solely on bringing a prosecution against alleged supporters of the most vocal and outspoken group on the FTO List, failing to bring actions against supporters of other similarly situated, but less outspoken, groups on the FTO List.  Under *Balk*, this fact alone strongly is

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

"inherently suspect" and provides clear evidence of the existence of an impermissible motive in bringing the claim.

And yet, perhaps the most compelling evidence of selective prosecution can be found in the Indictment itself. Specifically, a fundamental basis for the government's Indictment hinges on – and directly implicates – the defendants' First Amendment right to freely associate because it is based on the theory that the defendants were associated with the MEK. Moreover, the government casts the MEK's otherwise legal (and constitutionally guaranteed) First Amendment activities of political advocacy via their production of television shows and distribution of a newspaper as criminal in nature. (*See* Indict. ¶¶ Count One A.4 and 5.) The labeling of this free speech activity as part of the alleged crime establishes sufficient evidence that the defendants' First Amendment rights were the basis for their prosecution in this matter.

This investigation and prosecution preceded the attacks on September 11, 2001. Why these defendants and the organization they are alleged to have supported would have been targeted and singled out then is difficult to understand. The organization was not anti-American; indeed, its goals to create a democratic Iran were the same goals the U.S. government repeatedly announced. The actions of those in this case – raising small funds in airports and the like – certainly were not those of individuals alleged to commit real terrorist acts against this country. So, why were these people selected? The better than circumstantial evidence is that the organization they are alleged to have assisted and those who support it were thorns in the side of the government. They challenged the designation, protested the relations with Iran, enlisted the help of Congress, and exercised their rights to free speech. This was what made them different and this is an impermissible basis to single them out for prosecution.

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION

### E.	At A Minimum, The Government Should Be Ordered To Produce Discovery On The Issue Of Selective Prosecution

Because the defendants have certainly shown that there is, at the very least, "some evidence" indicating a selective prosecution here, they have satisfied the requirement to shift the burden to the government to explain its selective prosecution.  After requiring the government to produce evidence on the question of whether the defendants' selective prosecution is in violation of the defendants' constitutional rights, an evidentiary hearing should be held.  Naturally, this will include discovery of evidence relating to, *inter alia*:  Why these defendants and this group was originally targeted; what information caused this investigation to begin and this entity and its supporters to be selected; and what proper justifications may have existed.  *See Berrios*, 501 F.2d at 1212, 1213 (trial court properly exercised its discretion when it ordered the government to provide it with the government's memorandum authorizing prosecution and trial court was permitted to release relevant portions to the defendants).

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

- 12 -

## CONCLUSION

For the foregoing reasons, the defendants are entitled to a dismissal of the Second Superseding Indictment because the facts cited herein "strongly suggest[]" that the prosecutorial decision to charge the defendants was discriminatory in its effect and intent. Alternatively, and at a minimum, the defendants are entitled to discovery and an evidentiary hearing on the issue of whether selective prosecution occurred and whether this prosecution violates Due Process because the defendants have more than ably satisfied the requisite showing by producing "some evidence" of the existence of both a discriminatory effect and intent.

Dated:  July 15, 2008                                      Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

/s/
Abbe David Lowell                                          **JAY L. LICHTMAN LAW OFFICES**
Roy L. Austin, Jr.
Hoyt Sze                                                              /s/
Christopher D. Man                                        Jay L. Lichtman
Attorneys for Defendant                             Attorney for Defendant
ROYA RAHMANI                                         HASSAN REZAIE

**MICHAEL S. MEZA LAW OFFICES**       **SAINT MARTIN & FAN**

/s/                                                                          /s/
Michael S. Meza                                           Amy Fan
Attorney for Defendant                              Attorney for Defendant
ALIREZA MOHAMMADMORADI          NAVID TAJ

**SHEPPARD MULLIN RICHTER &**          **ACLU FOUNDATION OF**
**HAMPTON LLP**                                       **SOUTHERN CALIFORNIA**

/s/                                                                          /s/
Richard M. Steingard                                 Peter J. Eliasberg
Attorney for Defendant                              Ahilan T. Arulanantham
MUSTAFA AHMADY

                                                                         **NASATIR HIRSCH PODBERESKY &**
**THOMAS NISHI LAW OFFICES**              **GENEGO**

/s/                                                                          /s/
Thomas Nishi                                               William J. Genego
Attorney for Defendant                              Attorneys for Defendant
HOSSEIN KALANI AFSHARI               MOHAMMAD HOSSEIN OMIDVAR

DEFENDANTS' MOTION TO DISMISS
FOR SELECTIVE PROSECUTION