**McDERMOTT WILL & EMERY LLP**
Abbe David Lowell (Admitted *Pro Hac Vice*)
adlowell@mwe.com
Roy L. Austin, Jr. (State Bar No. 211491)
raustin@mwe.com
Hoyt Y. Sze (State Bar No. 180716)
hsze@mwe.com
Christopher D. Man
cman@mwe.com
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
Telephone:  202.756.8000
Facsimile:   202.756.8087

Attorneys for Defendant
ROYA RAHMANI

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
Peter J. Eliasberg (State Bar No. 189110)
peliasberg@aclu-sc.org
Ahilan T. Arulanantham (State Bar No. 237841)
aarulanantham@aclu-sc.org
1313 West Eighth Street
Los Angeles, CA  90017
Telephone:  213.977-9500 x211
Facsimile:  213.977.5297

Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROYA RAHMANI, ALIREZA MOHAMMADMORADI, MOUSTAFA AHMADY, HOSSEIN KALANI AFSHARI, HASSAN REZAIE, NAVID TAJ, MOHAMMAD HOSSEIN OMIDVAR, et. al.,<br><br>Defendants. | CASE NO.  CR-01-00209(A)-RMT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO INVALIDATE THE GOVERNMENT'S 18 U.S.C. § 3292 APPLICATIONS (MOTION TO DISMISS NO. 7)**<br><br>Hearing Date:    None Scheduled<br>Time:<br>Dept.:             Courtroom 22 |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendants Roya Rahmani, Alireza Mohammadmoradi, Moustafa Ahmady, Hossein Kalani Afshari, Hassan Rezaie, Navid Taj and Mohammad Hossein Omidvar ("the defendants") hereby move the Court to invalidate the government's 18 U.S.C. § 3292 applications.[1]  This Motion is based on this Notice of Motion, supported by the attached Memorandum of Points and Authorities, and by all of the pleadings, records and files in this action, and such other documents and argument as may be presented to the Court.

Dated:  July 15, 2008

**McDERMOTT WILL & EMERY LLP**

/s/
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**MICHAEL S. MEZA LAW OFFICES**

/s/
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

/s/
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**THOMAS NISHI LAW OFFICES**

/s/
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

Respectfully submitted,

**JAY L. LICHTMAN LAW OFFICES**

/s/
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**SAINT MARTIN & FAN**

/s/
Amy Fan
Attorney for Defendant
NAVID TAJ

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

/s/
Peter J. Eliasberg
Ahilan T. Arulanantham

**NASATIR HIRSCH PODBERESKY & GENEGO**

/s/
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

---

[1]    Absent the suspension of the limitations period ostensibly accomplished by the Section 3292 Orders nearly all of the counts added by the Second Superseding Indictment would be time barred  (specifically, counts 1-23 and 32-58),as would all of the additional counts added by the First Superseding Indictment (counts 27-30 of the Second Superseding Indictment) as they were brought more than five years after the  alleged act or acts constituting the offense dismissal of these counts on this ground is sought by the defendants concurrently filed Motion to Dismiss New Counts in First and Second Superseding Indictments Pursuant to the Statute of Limitations (Motion To Dismiss No. 8)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

PROCEDURAL HISTORY ...................................................................................2

ARGUMENT .........................................................................................................5

I.    THE GOVERNMENT ABUSED THE PRE-INDICTMENT
      TOLLING PROVISION OF SECTION 3292 TO INVESTIGATE AN
      OFFENSE POST-INDICTMENT.................................................................5

      A.    Section 3292 Only Provides Pre-Indictment Tolling ........................5

      B.    The Government's Tolling Applications Were  Defective And
            The Resulting Orders Improper Because The Applications Were
            Filed After An Indictment Had  Already Been Returned As To
            The Offense That  Was The Subject Of The Request For
            Evidence ............................................................................................7

            1.    The First Application Covers No New Offense........................12

            2.    The Second Application Covers No New Offense ..................14

II.   THE GOVERNMENT'S FIRST AND SECOND TOLLING ORDER
      APPLICATIONS WERE NOT MADE IN GOOD FAITH........................15

III.  THE DISTRICT COURT'S TOLLING ORDERS DO NOT SAVE
      THE FIRST SUPERSEDING INDICTMENT ............................................19

      A.    The Government's First Tolling Application Cannot Render
            The First Superseding Indictment Timely ........................................19

      B.    The Second Tolling Order Cannot Apply To The First
            Superseding Indictment ...................................................................21

      C.    The Second Tolling Order Is Unconstitutional As Applied To
            The Charges Added By The First Superseding Indictment................22

IV.   THE FIRST AND SECOND TOLLING ORDERS VIOLATE DUE
      PROCESS.................................................................................................23

V.    THE GOVERNMENT'S FIRST APPLICATION DID NOT APPLY
      TO MR. TAJ AND ANY SUBSEQUENT ORDERS GRANTING
      THE APPLICATIONS WERE INVALID AS TO MR. TAJ ......................26

CONCLUSION ....................................................................................................29

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

- i -

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashe v. Swenson*, 397 U.S. 436 (1970) ...............................................................................11, 12

*Berger v. United States*, 295 U.S. 78 (1935) .......................................................................16

*Campbell v. Holt*, 115 U.S. 620 (1885) ...............................................................................24

*Falter v. United States*, 23 F.2d 420 (2d Cir. 1928)...........................................................25

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ..............................................................................6

*In re Grand Jury Investigation*, 3 F. Supp. 2d 82 (D. Mass. 1998).......................................25

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1993) .............................................................25

*Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007) .....................................24

*Randeros v. Ryan*, 469 F.3d 788 (9th Cir. 2006) ..................................................................22

*Rogers v. Tennessee*, 532 U.S. 451 (2001 ............................................................................23

*Stirone v. United States*, 361 U.S. 212 (1960) .....................................................................7

*Stogner v. California*, 539 U.S. 607 (2003)................................................................22, 23, 25

*Toussie v. United States*, 397 U.S. 112 (1970) ....................................................................6

*United States v. Afshari*, 426 F.3d 1150 (9th Cir. 2005), *r'hrng. denied*, 446 F.3d 915 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 930 (2007) ................................................................................................2, 4

*United States v. Bischel*, 61 F.3d 1429 (9th Cir. 1995)..............................16, 23, 26

*United States v. Bros. Constuc. Co.*, 219 F.3d 300 (4th Cir. 2000)........................8

*United States v. Castillo-Basa*, 483 F.2d 890 (9th Cir. 2007)........................11, 12

*United States v. Eric B.*, 86 F.3d 869 (9th Cir. 1996) ...........................................8

*United States v. Lentz*, 524 F.3d 501 (4th Cir. May 12, 2008)...............................7

*United States v. Marion*, 404 U.S. 307 (1971).............................................1, 6, 24

*United States v. Meador*, 138 F.3d 986 (5th Cir. 1998) ............................16, 18, 21

*United States v. Miller*, 830 F.2d 1073 (9th Cir. 1987)..........................................5

*United States v. Moss*, 756 F.2d 290 (4th Cir. 1985) .............................................8

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

# TABLE OF AUTHORITIES

## (continued)

**Page**

*United States v. Neil*, 952 F. Supp. 2d 831 (D.D.C. 1996)......................................21

*United States v. Star*, 470 F.2d 1214 (9th Cir. 1972) ...............................................8

*United States v. Titterington*, 354 F. Supp. 2d 778 (W.D. Tenn. 2005) ..................5

*United States v. Trainor*, 376 F.3d 1325 (11th Cir. 2004) ........................2, 3, 5, 22

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) ................................................24

*Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787 (1987) .............................15

## STATUTES

18 U.S.C. § 371 ........................................................................................................27

18 U.S.C. § 1342, 2.................................................................................................27

18 U.S.C. § 1343, 2.................................................................................................27

18 U.S.C. § 1425......................................................................................................27

18 U.S.C. § 1956 et seq...........................................................................................27

18 U.S.C. § 2339B(a)(1) .....................................................................................2, 26

18 U.S.C. § 3282......................................................................................................27

18 U.S.C. § 3292.................................................................................................passim

## RULES

Fed. R. Cr. P. 7(c)(1) .................................................................................................7

U.S. Code Rule 7 ........................................................................................................7

## OTHER AUTHORITIES

Black's Law Dictionary at 1081 (6th ed. 1990).........................................................7

-iii-

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Congress built an important safeguard into 18 U.S.C. § 3292 to prevent it from being abused and used improperly – requiring that the government's application for tolling be filed "before return of an indictment." While Section 3292 provides a mechanism for the government to obtain an order suspending the period of limitations for which it may charge an offense, the text of the statute and decisions interpreting it make clear that Section 3292 is narrowly drawn to limit the circumstances in which it may be used. Since this provision requires that the application be filed "before return of an indictment" as to an "offense," the government's applications and the resulting tolling orders in this case were improper.

The government not only violated the letter of Section 3292 by filing untimely applications, but it misused the provisions of the statute to: (1) mask its improper use of the grand jury to gather evidence for trial on the Original Indictment after it was returned; (2) improperly gain a strategic advantage by adding 54 time-barred charges that are based on the very same conduct that was and is alleged to constitute the offenses charged in the Original Indictment; and (3) deny the defendants their right to a speedy trial on the offenses charged in the Original Indictment.

Once the government publicly accuses someone of a crime through an indictment, the Speedy Trial Clause requires that the government be prepared to try the case expeditiously. *See, e.g.*, *United States v. Marion*, 404 U.S. 307, 320 (1971). The government's delays and the addition of new charges accomplished through it misapplication of Section 3292, keeps the defendants under a cloud, chills their free speech in opposing the Iranian regime, and causes greater hardships in preparing for trial. Such tactical delays in bringing charges based on events the

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

government was fully aware of years and years ago cannot justify the Section 3292 tolling orders the government seeks to use to shield their delays.

Because the government's tolling applications are not authorized by Section 3292, the tolling orders it received must be invalidated. *See, e.g.*, *United States v. Trainor*, 376 F.3d 1325, 1334 (11th Cir. 2004) ("It is true that, as with search warrants, a defect in the tolling application may be subject to post-indictment review upon a motion to dismiss.").

### PROCEDURAL HISTORY

On March 13, 2001, the government filed an Original Indictment alleging that five of the now-seven defendants laundered money and then provided it to the Mujahedin-e Khalq ("MEK") in violation of 18 U.S.C. Section 2339B(a)(1), which prohibits providing material support to a designated terrorist organization. *See* Exhibit A (Chart: "The Government Attempts To Use Section 3292 to Toll the Statute of Limitations *Post*-Indictment"). That Original Indictment was dismissed by this Court on June 21, 2002, and the government appealed. That appeal would not be resolved until January 2007, four-and-a-half years later, and the Ninth Circuit ultimately reinstated the Original Indictment. *United States v. Afshari*, 426 F.3d 1150 (9th Cir. Oct. 20, 2005), *r'hrng. denied*, 446 F.3d 915 (9th Cir. Apr. 17, 2006), *cert. denied*, 127 S. Ct. 930 (U.S. Jan. 8, 2007).

On July 28, 2003, while the appeal was still pending, but more than two years *after* the Original Indictment had been brought, the government filed a sealed *ex parte* 18 U.S.C. § 3292 application ("First Application") for an order suspending the running of the statute of limitations pursuant to the government's requests for foreign evidence from seven countries. In the application, the government claimed that "the charges currently under investigation by the grand jury are *distinct* from the indictment which was dismissed." (First App. at 7 (emphasis added).) Judge Dean D. Pregerson signed the government's proposed order without modification,

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

suspending the limitations period for "all federal offenses relating to" the defendants[2] and others.[3] (Order Suspending the Running Of the Statute of Limitations Based on Request for Foreign Evidence (C.D. Cal. Aug. 22, 2003) at 3 ("First Tolling Order").) Suspension of the limitations period was to commence as of May 31, 2002, the date of the government's earliest foreign evidence request which still remained pending at the time of the district court's order. (*Id.*)[4]

On June 14, 2005, the grand jury returned a First Superseding Indictment repeating the charges of the Original Indictment, and adding five charges related to fraudulent use of visas – the facts of which are alleged to have occurred by December 2000 and were previously known to the prosecution years before the filing date.[5] The First Superseding Indictment was not known to the defendants until it was unsealed on February 5, 2007, twenty months later. Counts 60-63 of the First Superseding Indictment (Counts 27-30 of the Second) have a five-year statute of limitations.

McDermott Will & Emery LLP
Attorneys At Law
Washington

---

[2] Five of the seven original defendants are named. Defendants Navid Taj and Mohammad Omidvar are not named. *See* Section V *infra*. In addition, Defendant Omidvar intends to file a separate motion to dismiss regarding the government's decision not to include him in its First Application.

[3] The governments' Section 3292 applications were reviewed *ex parte* by judges who had no familiarity with the facts of the case. There is no evidence these courts did anything but rely on the government's one sided assertions. Because a defendant is left vulnerable due to the *ex parte* nature of these proceedings, "the district court is responsible for ensuring that his interests are protected." *United States v. Trainor*, 376 F.3d 1325 (11th Cir. 2004) (invalidating Section 3292 application). As there is little distinction between the charges in the Original Indictment and the evidence sought in the two Section 3292 applications, defendants rights were not protected sufficiently. But, this is where the district court system works to give this Court the full picture with the benefit of two sides participating to now review the Section 3292 orders.

[4] Pursuant to 18 U.S.C. § 3292(c)(1), the "[t]otal for all periods of suspension under this section with respect to an offense shall not exceed three years" from the date of the first foreign evidence request.

[5] The government clearly knew the facts underlying these charges because they described them and attached purportedly supporting exhibits in the Government's Opposition to Defendant Roya Rahmani's Motion to Modify Conditions of Pretrial Release and to Exonerate Pretrial Bond and Cross-Motion for Detention filed August 28, 2002.

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

On October 20, 2005, the Ninth Circuit Court of Appeals reversed this Court's dismissal of the Original Indictment. *United States v. Afshari*, 426 F.3d 1150 (9th Cir. 2005).

Then, November 16, 2007, more than two years after the expiration of the First Order and after the return of the First Superseding Indictment, the government filed a second Section 3292 application ("Second Application"). In the Second Application, the government explained that it was seeking to add new charges based on the same conduct alleged in the Original Indictment and First Superseding Indictment and said that it needed to complete thirty-one additional foreign evidence requests. The government also added the names of two new defendants. Otherwise, the Second Application repeated everything that was requested in the First Application, including the operative date of May 31, 2002.

Again, relying entirely on the government's one-sided written application, this time Judge Gary A. Feess signed the government's second proposed tolling order ("Second Tolling Order") without modification. The Second Order also claimed to apply to "any and all federal offenses involving" the defendants and "others." (Second Tolling Order at 5.) Less than two weeks later,[6] on November 29, 2007, the grand jury returned a Second Superseding Indictment, which renewed all of the prior charges but recharacterized the previously alleged wrongful conduct as different crimes: conspiracy (Count 1), mail fraud (Counts 2-7), wire fraud (Counts 8-23), fraudulent statements to a financial institution (Counts 24-26), and money laundering (Counts 32-58).

On January 23, 2008, counsel for defendant Ahmady sent a letter to the prosecutors requesting additional discovery regarding the government's foreign

---

[6] That the prosecutors brought the Second Superseding Indictment just weeks after the 3292 request, and certainly before it received any of the records it supposedly needed, further demonstrates that the government did not actually need the foreign records and that it was misusing the Section 3292 process.

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

evidence requests.  On February 25, 2008, the government refused, stating that it "will not be producing the materials requested."

## ARGUMENT

### I.   THE GOVERNMENT ABUSED THE PRE-INDICTMENT TOLLING PROVISION OF SECTION 3292 TO INVESTIGATE AN OFFENSE POST-INDICTMENT

#### A.   Section 3292 Only Provides *Pre*-Indictment Tolling

Section 3292's provision for *pre*-indictment tolling does not confer upon the government that authority to obtain *post*-indictment tolling.  That is plain from the face of the statute:

> Upon application of the United States, *filed before return of an indictment*, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1) (2007) (emphasis added); *see United States v. Miller*, 830 F.2d 1073, 1076 (9th Cir. 1987) ("The statute itself specifies the only relevant time the application must be made: 'before return of an indictment.'"); *Trainor*, 376 F.3d at 1335 n.7 ("We agree with the district court that § 3292 requires the tolling application, including the evidence considered, be submitted prior to the return of an indictment."); *United States v. Titterington*, 354 F. Supp. 2d 778, 785 (W.D. Tenn. 2005) ("An application to toll the statute of limitations under § 3292 is a preindictment proceeding.").  While the government would ask the Court to ignore the limiting phrase of the statute that the Section 3292 application must be "filed before return of an indictment," that would run counter to the cardinal rule of statutory interpretation that each word be given meaning.  *See, e.g.*, *Hibbs v. Winn*,

McDermott Will & Emery LLP
Attorneys at Law
Washington

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .") (internal citations omitted). Moreover, because statutes of limitations should be broadly construed in favor of repose, tolling statutes like Section 3292 must be construed narrowly. *See, e.g.*, *United States v. Marion*, 404 U.S. 307, 322 n.14 (1971) ("[C]riminal statutes of limitation are to be liberally interpreted in favor of repose."); *Toussie v. United States*, 397 U.S. 112, 115 (1970) (tolling provisions are narrowly construed). Based upon the plain language of the statute and these canons of statutory interpretation, it is not surprising that there does not appear to be even a single published opinion upholding the government's ability to obtain *post*-indictment tolling through Section 3292.

Although the government fails to appreciate the significance of an indictment, the framers of our Constitution did not. An indictment is a serious public accusation that a person has engaged in criminal behavior, and it has serious consequences for the accused in terms of their liberty, employment, social standing and generates considerable anxiety about the future for the accused and her family and friends. *Marion*, 404 U.S. at 320. Consequently, the Sixth Amendment's Speedy Trial Clause guarantees that persons indicted be tried promptly once they are charged and there is every expectation that the government will be ready to proceed to trial at that time. *Id.* This does not mean that the government is crippled in any way from investigating suspected criminal conduct, it simply means that once the government makes a public accusation in the form of an indictment about an individual committing an offense the government must be ready to prove its case at trial.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

**B.      The Government's Tolling Applications Were Defective And The Resulting Orders Improper Because The Applications Were Filed After An Indictment Had Already Been Returned As To The Offense That <u>Was The Subject Of The Request For Evidence</u>**

Section 3292 requires the government's application be filed "before return of an indictment" as to the "offense" which it seeks foreign evidence and that is the subject of its tolling application.  In order to determine whether the government's application were timely and its use of Section 3292 proper, it is first necessary to discern the meaning of "offense" as that word is used in Section 3292.

The word "offense" is used "in various senses."  Black's Law Dictionary at 1081 (6th ed. 1990).  The Federal Rules of Criminal Procedure describe an "offense" as the course of conduct that is offensive, rather than simply the name of the crime listed in the U.S. Code.  Rule 7, for example, requires an indictment to describe "the essential facts constituting the offense charged" and refers to the specific crimes that follow from that offense as "counts."  Fed. R. Cr. P. 7(c)(1).  Where the course of conduct alleged in the indictment deviates from the prosecution's case at trial, an unconstitutional variance results because the offense the defendant was convicted upon differs from the offense he was indicted upon – even though both offenses may constitute a crime under the exact same statute.  *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 216 (1960) (finding a different offense alleged under the Hobbs Act where the indictment charged the defendant with improper sand shipments, but at trial the government argued it was steel shipments that violated the Hobbs Act); *see also United States v. Lentz*, 524 F.3d 501 (4th Cir. May 12, 2008) (describing the flaw in variances as being that they "change the elements of the offense charged" and state "a distinct, unindicted offense") (citations omitted).

The determinative consideration in discerning the meaning of "offense" for purposes of Section 3292 is the underlying purpose of the requirement that the

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

government file its application "before return of an indictment" as to "the offense." The most, if not only, plausible purpose of this requirement is to insure the government does not use Section 3292 to mask its otherwise improper use of the grand jury to gather evidence in preparation for trial.

It has long been recognized that the filing of an indictment brings the grand jury's investigation to an end. Indeed, there is a "universal rule that prosecutors cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation." *United States v. Moss*, 756 F.2d 290, 332 (4th Cir. 1985); *see United States v. Eric B.*, 86 F.3d 869, 877 (9th Cir. 1996) ("Powers of the grand jury are limited to returning or not returning indictments in federal criminal matters . . . . [U]sing the grand jury as a tool for investigation . . . is clearly improper."); *United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972) (same). "[O]nce a criminal defendant has been indicted, the Government is barred from employing the grand jury for the 'sole or dominant purpose' of developing additional evidence against the defendant." *United States v. Bros. Constuc. Co.*, 219 F.3d 300, 314 (4th Cir. 2000).

If the timely filing requirement of Section 3292 is to serve its purpose of preventing such improper use of the grand jury, "offense" for purposes of section 3292 must be understood and defined as conduct, rather than discrete statutory charges. Otherwise, Section 3292's safeguards would be rendered meaningless and Section 3292's tolling provision would easily be abused. Given that a multitude of statutory crimes may be charged based on the same conduct, after the return of an indictment, the government could apply for and receive a tolling order as to charges that are based on the exact conduct as the existing indictment. This would enable the government to have more time to add otherwise time barred charges even though they are based on the same conduct that it already indicted, continue to use the grand jury to prepare and gather evidence for trial on the indicted charges, and circumvent and deny the defendant his or her right to a speedy trial on the original

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDermott Will & Emery LLP
Attorneys at Law
Washington

charges by return of a superseding indictment adding the time-barred charges. Indeed, the government did just that in this case by asserting that it was seeking evidence of "distinct" "charges" which were based on the same conduct as the offenses in the Original Indictment.

Interpreting "offense" to mean the same conduct for purposes of Section 3292 is also consistent with and supported by the requirement of the statute that the court find "by a preponderance" that an official request has been made for "such evidence." This provision at first might seem to suggest the court must find that an official request has been made. But, that reading would be inconsistent with the command that the court use a preponderance of evidence standard, as the question of whether an official request had been made is one that should be able to be made with certainty. Instead, read in the overall context the statute, the provision is best understood as requiring that the court find by a preponderance that "the offense" as to which "such evidence" is requested is one for which an indictment has not already been returned. Interpreting "offense" to mean conduct is consistent with and gives meaning to the preponderance standard. Conversely, the preponderance requirement is inconsistent with interpreting "offense" to mean statutory charge since that question, like the question of whether a request has been made, is one that can be made with certainty.

The Section 3292 tolling orders the government sought here are were made for the purpose of investigating the very same offense the government had already charged the defendants with in the Original Indictment. Prior to bringing any charges, the government defined this case a material support conspiracy with overt acts involving wire fraud:

> The subjects in this investigations [sic] each took part in one or more aspects of the overt act of providing material support to the MEK a designated foreign terrorist organization. These overt acts include, but were not limited to the following:

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

1) Soliciting donations for the MEK under the front organization CHR at LAX.

2) Handling and transferring money obtained through LAX solicitations and other sources to include direct payments from MEK members, supporters, and sympathizers.

3) Maintaining accounts and wire transferring money overseas in furtherance of this conspiracy, to provide material support to the MEK in the form of financial support and other means.

(Search Warrant Affidavit of FBI Special Agent Christopher Castillo signed February 26, 2001 ("Castillo Affidavit") at pp. 4-5.)  Despite not being prepared to prove item number 3, as they now claim they were still seeking evidence abroad, the government went ahead and indicted this case.

The March 2001 Original Indictment alleged that from October 8, 1997 through February 27, 2001, the defendants conspired to provide material support to the MEK.  (Original Indict. Count 1.)  It charged that the defendants would "solicit donations to the Committee for Human Rights" at LAX "knowing and intending that these donated funds were going to the MEK." (*Id.*)  It also alleged that the money would be sent to the MEK through wire transfers from a Bank of America account in Los Angeles to Turkey. (*Id.* Counts 28-59.)  Although the Original Indictment only charged the defendants with violating the material support statute based on this offense, the Second Superseding Indictment merely divided that offense into its constituent parts and charged them as separate crimes.  The false solicitation alleged in the Original Indictment is now charged as separate counts of fraud (2d Supp. Indict. Counts 1-23), but it is the same allegation and relies on the same underlying facts.  Likewise, the Original Indictment's wire transfers of money from the United States abroad are now charged as money laundering.  (2d Supp. Indict. Counts 32-58.)[7]  Whether the government chooses to prosecute this

---

[7]    The First Superseding Indictment added immigration-related offenses which remain in the Second Superseding Indictment. (2d Supp. Indict. Counts 27-31.)  The government alleges these immigration violations were part of the material support conspiracy alleged in the Original Indictment. (*Id..* Count 1.)  Likewise, the Second Superseding Indictment added counts of financial fraud (*id.* Counts 24-26), which it also claims were part of the same conspiracy. (*Id.*)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

allegedly offensive conduct focusing only on where the money ends up, as it did with the Original Indictment, or as separate crimes for each step in the course of this offense, as it did with the Second Superseding Indictment, there is no question that the government sought tolling to put off proceedings so it could continue to investigate an "offense" that already was indicted.

The offenses charged in the Original Indictment and the newly added fraud and money laundering counts turn on the same central disputed factual issue – whether defendants provided material support to the MEK. If the jury finds this fact in defendants' favor, "the collateral estoppel aspect of double jeopardy" would bar a subsequent trial of the defendants on the fraud and money laundering counts, which allege that defendants solicited money representing it was for humanitarian aid when it fact it was for material support. *United States v. Castillo-Basa*, 483 F.2d 890, 896, n.3 (9th Cir. 2007) (jury's acquittal on charge of being a previously deported alien found in the U.S., which necessarily required jury to find defendant did not have a deportation hearing, precluded subsequent perjury prosecution based on allegation that defendant did in fact have a deportation hearing).

In *Ashe v. Swenson*, 397 U.S. 436 (1970), the Supreme Court interpreted the Double Jeopardy Clause of the Fifth Amendment, which prohibits persons from being twice tried for "the same offence." The Court explained that at common law, this clause was relatively simple to apply because there were few criminal causes of action and double jeopardy could be evaluated simply by looking at whether a defendant was being tried a second time for causes of action that went by the same name. *Id.* at 476 n.10. But in more recent times, there has been an extraordinary proliferation of new statutory crimes, which can result in a single criminal offense giving rise to potentially numerous distinct criminal charges. *Id.* To prevent the government from circumventing the Double Jeopardy Clause by prosecuting a single offense under one set of criminal charges and then prosecuting the same defendant for the same offense under a different set of criminal charges, the

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

Supreme Court held that it would interpret the "same offense" language of the Double Jeopardy Clause in accordance with principles of collateral estoppel. Thus, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443. As a result, the Ninth Circuit recently explained: "The Double Jeopardy Clause requires the government to put on its strongest case the first time; it forbids it to conduct a series of prosecutions, involving the same fundamental issues, in which it presents additional arguments and evidence at each iteration." *Castillo-Basa*, 483 F.3d at 893.

### 1.    The First Application Covers No New Offense

It is clear from the First Application that the government's *post*-indictment tolling application was made to buttress the offense it charged in the Original Indictment, but did not then want to take to trial. Indeed, the government does not make much of an effort to disguise this fact. The government's actual requests demonstrate that it simply was trying to bolster the charges that already had been filed. In its official request to Turkey, the government expressly stated:

> The CHR is believed to be raising funds in the United States for the MEK, a violation of American criminal law. As such, it is imperative to gather information about the two bank accounts in Turkey, and to determine, if possible the disposition of the funds wire transferred from the Bank of America account to the bank accounts in Turkey.

(Ltr. from Mary Ellen Warlow, Director, Office of International Affairs, to Bay Abdul Kadir Kaya, General Director of Int'l Law and Foreign Relations, Ministry of Justice (Sept. 25, 2002).) What the government was asking for – information about the use of funds it alleges were for a terrorist organization – was precisely what the government *had already charged*, presumably with sufficient evidence to establish probable cause.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

The government's official request to Belgium also exemplifies how the government was misusing Section 3292 post-indictment to clean up its Original Indictment.  In its official request of May 31, 2002, the government informed Belgian authorities that it was "investigating whether [the defendants], and others violated and *continue to violate* US criminal laws by conspiring to:  (1) provide material support and resources to the MEK, an organization designated by the U.S. Secretary of State as a foreign terrorist organization . . . ." (Ltr. from Mary Ellen Warlow, Director, Office of Int'l Affairs to Erik Verbert, Legal Advisor, Directorate General of Criminal Law and Human Rights, Ministry of Justice (May 31, 2002) (emphasis added).)  In the same request, the government also explained: "The prosecutors need Belgian bank records held in the names of co-conspirators *to prove* that the funds were used to support the MEK." (*Id.* (emphasis added).)  The government made similar statements in its official requests to France,[8] Jordan,[9] Germany,[10] Norway,[11] and the United Arab Emirates.[12]

---

[8]   The government's request to France alleges defendants "violated and continue to violate United States criminal laws by conspiring to . . . provide material support and resources to the MEK . . . ." (Ltr. from M. Warlow to Jean-Hugues Gay, Chef du Bureau de l'Entraide Repressive Internationale et des Conventions Penales, Ministere de la Justice (June 24, 2002).) The government then states:  "The prosecutors need French bank records held in the name of co-conspirators to prove that the funds were used to support the MEK." (*Id.*)

[9]   The government's request to Jordan alleges that "[MEK] representatives solicited money from individuals in the United States by falsely representing that the money would be donated to the Council to Monitor Human Rights in Iran (CHRI) and the Committee for Human Rights (CHR) . . . ." (Ltr. from M. Warlow to Betty Kirincich, Division Chief, Office of Citizens Consular Services (Aug. 20, 2002).)  The government then states: "The prosecutors need records of these bank accounts to prove the funds were not ultimately used for refugee relief and to prove the ultimate disposition of the funds." (*Id.*)

[10]   The government's request to Germany alleges that MEK supporters' "violated and continue to violate United States criminal laws by conspiring to . . . provide material support and resources to the MEK . . . ."   (Ltr. from M. Warlow to Herrn Christian Johnson, Bundesministerium der Justiz, Internationales Strafrecht, Section II B 5 (June 4, 2002).)

[11]   The government's request to Norway alleges that the defendants "violated and continue to violate United States criminal laws by conspiring to . . . provide material support and resources to the MEK . . . ." (Ltr. from M. Warlow to Odd Einar Dorum, Minister, Ministry of Justice (Aug. 27, 2002).)

[12]   The government's request to the U.A.E. alleges that defendants "violated and continue to violate United States criminal laws by conspiring to . . . provide material support and resources to the MEK . . . ." (Ltr. from M. Warlow to The Competent Authority of the United Arab Emirates (July 25, 2002).)  The government then asserts: "The prosecutors need records of these bank

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

These foreign requests often explicitly stated that the government was seeking evidence "to prove" already-charged counts, which is an improper use of Section 3292. The government's investigation was indistinguishable from charges already brought in the Original Indictment. This fact leads to the inescapable conclusion that the government has separated a single course of allegedly offensive conduct into its constituent parts, and then charged each part separately through new indictments that inject new charges into this case on a piecemeal basis. The government's efforts to manipulate Section 3292 to gain a tactical advantage in the prosecution of this case runs counter to the requirements of Section 3292 which can be invoked only *pre*-indictment and cannot be used to toll charges similar to an offense that has already been filed.

### 2.     The Second Application Covers No New Offense

The government's need to file a Second Application on November 13, 2007, further reveals how far from being able to prove its case the government was when it filed the Original Indictment on May 15, 2001 and how the foreign requests and Section 3292 applications were not a proper means to save charges that otherwise would be time-barred. While the name of some of the charges being investigated have changed, at bottom, all the government really was investigating were the allegations made in the Original Indictment.

The government's request to Belgium describes this case succinctly as "a case in which seven defendants *were charged* with providing material support to a terrorist organization." (See, supra, Ltr. from M. Warlow to E. Verbert) (emphasis added.)[13] The request also explains: "The prosecutors need Belgian bank records held in the names of co-conspirators *to prove* that the funds were used to support the MEK." (*Id.* (emphasis added).) This same language, merely substituting the

accounts to prove the funds were not ultimately used for refugee relief and to prove the ultimate disposition of the funds." (*Id.*)

[13]     This same summary is in the government's description of the case to Luxemborg, the Netherlands, Sweden and Switzerland.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO INVALIDATE
                GOVERNMENT'S 3292 APPLICATIONS

McDermott Will & Emery LLP
Attorneys at Law
Washington

name of the receiving country, is in the government's request to France[14] and Turkey.[15]

Even in late 2007, the government was seeking evidence from foreign countries to support the allegations charged in the Original Indictment in 2001. The government explained in its request to Germany dated October 11, 2007, that it needed evidence from Germany *to prove* that funds allegedly raised by the defendants in California were used to support the MEK:

> U.S. investigators wish to obtain information from Germany about all of the payments described above to determine whether they were also made for the purpose of supporting these terrorist organizations. Even the smallest payments reference above, will be extremely useful to U.S. investigators and prosecutors in establishing that the payments were part of a larger scheme to fund MEK activities, that it was part of an overall pattern of activity, and that the money was obtained from victims under false pretenses. Records of these payments could establish that the fraudulently obtained funds were laundered and subsequently used towards MEK terrorist activity.

(In re Ltr. Rogatory to Germany in the Matter of Roya Rahmani, et al., 07-CR-00211, at 14-15.) Although this request was sent in October 2007, all it sought was evidence to buttress allegations made in the March 2001 Original Indictment.

## II.   THE GOVERNMENT'S FIRST AND SECOND TOLLING ORDER APPLICATIONS WERE NOT MADE IN GOOD FAITH

Implicit in Section 3292, as with every federal criminal prosecution, is the requirement that the government carry out its prosecutorial duties in good faith. *See, e.g.*, *Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 826 (1987) (stating that the prosecutor must carry out his unique role in the criminal system in a fair and impartial manner). This good faith obligation stems from the fact that

---

[14]   "The prosecutors need French bank records held in the names of co-conspirators to prove that the funds were used to support the MEK." (Ltr. from M. Warlow to Jean-Hugues Gay, Chef du Bureau de l'Entraide Répressive Internationale et des Conventiones Pénales, Ministére de la Justice (June 24, 2002).)

[15]   "The prosecutors seek Turkish bank records held in the names of co-conspirators or nominees to prove that the funds were used to support the MEK." (Ltr. from M. Warlow to Bay Abdul Kadir Kaya, General Director of Int'l Law and Foreign Relations (Sept. 25, 2002).)

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

"the United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935).  With respect to Section 3292, the Ninth Circuit acknowledged that the government has a good faith obligation when it stated, "[Section 3292] should not be an affirmative benefit to prosecutors, suspending the limitations period, pending completion of an investigation, whenever evidence is located in a foreign land." *DeGeorge*, 380 F.3d at 1215 (9th Cir. 2004) (citing *United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998) (holding that "final action" under Section 3292 occurs when a foreign government communicates its belief that it has completed its obligation to the U.S. government)).[16]

It is true that the Ninth Circuit declined to "read a diligence requirement into § 3292." *United States v. Bischel*, 61 F.3d 1429, 1435 (9th Cir. 1995) ("The concern . . . that the time a sealed indictment could toll the statute of limitations is constrained by the government's legitimate need for delay . . . is inapposite to § 3292, which has a built-in limit.").  But, the good faith requirement for all prosecutorial action imposes a distinct obligation on the government to perform its prosecutorial function in a fair and impartial manner.  While due diligence relates only to the government's efforts to collect foreign evidence (*see Bischel*, 61 F.3d at 1435), the good faith obligation addresses the government's motives in filing tolling applications and its statements to judges to whom it made its applications. In the absence of the good faith obligation, the government would have *carte blanche* to use the tolling statute as a stalling mechanism.  The government could routinely extend the limitations period whenever its investigation happened to involve foreign evidence, even where the evidence is irrelevant or tangential.  It is

---

[16]  The dissenting opinion in *Meador* aptly described this as "concern[] about the apparent injustice surrounding this prosecution and the government's possible attempt to 'manufacture' post-hoc evidence in its favor." *Meador*, 138 F.3d at 994.

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

the good faith obligation that prevents the government from engaging in this type of manipulation.

The obvious first good faith obligation on the government is that if it is going to file a tolling application post-indictment, that it does so only in search of evidence to prove truly "distinct" charges. That is what the government claimed to Judge Pregerson in its First Application, but that turns out not to be true. The charges brought subsequently were dependent on the same evidence as the charges already filed. Here, the government applied for more time simply to bolster its Original Indictment.

In the context of Section 3292, the good faith obligation also requires the government to file its official requests for foreign evidence when it becomes reasonably apparent that such evidence exists. Here, the government failed to file its requests when it was readily apparent that foreign evidence existed. For example, in September 1999, the government received documents from Turkey showing a wire transfer in January 1999 from an account in Turkey to an account in Belgium. The government did not request any documents from Belgium until May 31, 2002, more than *two-and-a-half years* after the government knew of that wire transfer. Also the government claimed that in September 1999 it had documents showing a $400,000 wire transfer to the U.A.E. (Castillo Complaint at p. 44 para. 54.e.) and yet the government did not send a foreign request to the U.A.E. until December 30, 2002. These are just two examples of the government waiting years after learning of the evidence to actually request the evidence from a foreign country. Delays like these violate the government's good faith obligation in the context of Section 3292.

Third, the good faith obligation requires the government to file its tolling application within a reasonable period after it has submitted an official request for foreign evidence. The government waited over *four years* after it filed its first request for foreign evidence to file the First Application. It filed its first request for

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

foreign evidence on March 24, 1999, and the First Application on July 28, 2003. The government made ten requests to foreign countries during a four-year period before filing a request for a tolling order with the Court. The government continued to issue requests to foreign countries in 2003 and through 2007 before filing its second request for a tolling order on November 13, 2007, even though the tolling period expired on June 1, 2005. Thus, the government failed to satisfy its good faith obligation to file a tolling application within a reasonable period after it submitted official requests for foreign evidence.

Lastly, the obligation of good faith should prevent the government from requesting a tolling order where the foreign evidence sought is incidental, superfluous or redundant. The government issued two superseding indictments without much of the evidence it requested from foreign countries. The government made an initial request for documents from Italy as late as November 2007, the very month that the government filed the Second Superseding Indictment. Based on the fact that the government filed the Second Superseding Indictment approximately three weeks after this request was made, and the Second Superseding Indictment does not reference Italy at all, the government cannot claim that the documents requested from Italy are necessary to its case. In fact, the government requested documents from five countries that are not even mentioned in the Second Superseding Indictment.[17] Section 3292 was not enacted to allow the government to engage in this kind of protracted fishing expedition for evidence of marginal, if any, relevance to the case, particularly *after* a defendant has been indicted.

It is well-established that "[Section 3292] is not a statutory grant of authority to extend the limitations period by three years at the prosecutors' option." *DeGeorge*, 380 F.3d at 1215 (citing *Meador,* 138 F.3d at 994). In this case, the government has used Section 3292 for precisely that reason. The government's

---

[17] The government requested documents from Korea in 2005, Luxembourg in 2005 and 2007, Australia in 2005 and 2007, Canada in 2005 and 2007, and Italy in 2007.

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

case always has centered around the defendants' alleged provision of material support to the MEK. Each of the new offenses in the Second Superseding Indictment relate to sub-parts of that alleged scheme. The government has used these subordinate allegations to substantiate its contention that foreign evidence necessitates suspension of the limitations period. This dilatory tactic is evidenced both by the similarity between the offenses alleged in each of the government's indictments and by the statements contained in the government's official requests for foreign evidence. The government's use of Section 3292 to secure an affirmative benefit should have compelled the district court to deny each of the government's tolling order applications.

### III. THE DISTRICT COURT'S TOLLING ORDERS DO NOT SAVE THE FIRST SUPERSEDING INDICTMENT

Even a valid application for tolling would not toll the statute of limitations long enough to prevent the charges added by the First Superseding Indictment from being barred by the statute of limitations. These charges would have expired by December 2005 at the latest and, if the First Tolling Order were deemed valid, that would extend the limitations period by only six months to June 2006. At that point, well before the February 5, 2007 unsealing date, the claims expired.

#### A. The Government's First Tolling Application Cannot Render The First Superseding Indictment Timely

The First Superseding Indictment alleges that Ms. Rahmani violated Section 1546 between June 2000 through December 2000 and, in accordance with the five-year statute of limitations, those charges would be time-barred if not filed by December 2005. (*See* Mot. to Dismiss Counts 27-30 Pursuant to the Statute of Limitations at 4.) While the government filed the First Superseding Indictment on June 15, 2005, it did so under seal and without affording the defendants notice of the new charges. Consequently, it is the unsealing of the indictment which would stop the running of the statute of limitations and that did not occur until February 5,

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

2007 and, by then, the statute of limitations had expired by *fourteen months*. (*Id.* at 5-7.)

The problem for the government then is that it needs to toll the statute of limitations for *fourteen months*, but Section 3292 only affords *six months* of tolling in this context. The "period of suspension" is defined in the statute to begin "on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request." 18 U.S.C. § 3292(b). This restriction is subject to two caveats, however. First, the tolling cannot exceed three years under any circumstances. 18 U.S.C. § 3292(c)(1). Second, and most importantly for this case, when the foreign authorities take final action *before* the statute of limitation would otherwise expire, this period of suspension shall not be "more than six months." 18 U.S.C. § 3292(c)(2). Here, that final action occurred *before* the statute of limitations expired, so the government at best would receive only six-months' worth of tolling, rather than the fourteen months it needs.

Although the First Tolling Application sought the suspension of various sections of the U.S. Code based on various requests to foreign governments, the only request relevant to the immigration offenses charged against Ms. Rahmani in the First Superseding Indictment was the one sent to Norway on August 27, 2002. (*See* First App. at 6.) The remaining requests to foreign governments only sought evidence concerning the material support charges. As the government acknowledges, Norway took final action on this request on July 25, 2003 – *before* the statute of limitations had expired. (First App. at 6 n.3; Second App. at 2, 9.) While a valid Section 3292 application would keep these charges on life support until June 2006, six months after the statute of limitations would otherwise expire, these charges would have long expired before the government unsealed the indictment *eight months* later, on February 5, 2007.

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

### B. The Second Tolling Order Cannot Apply To The First Superseding Indictment

The Second Tolling Order cannot save the charges added by the First Superseding Indictment because the government failed to justify tolling as to these charges and, even more importantly, the Order was not issued until November 16, 2007 – *seventeen months after these charges already had expired.* Thus, the Second Tolling order is invalid as to the charges in the First Superseding Indictment and would provide insufficient tolling to save those charges, even if it were valid.

While the Second Tolling Order specifies that it provides tolling for Section 1546 (Second Tolling Order at 6), the government failed to offer any basis for doing so. "[T]he statute does not grant the government *carte blanche* to toll statutes of limitations." *United States v. Neil*, 952 F. Supp. 2d 831, 832 (D.D.C. 1996). The government's ability to seek tolling through Section 3292 is constrained by the requirements that the government actually be investigating the charges for which it seeks tolling and the foreign evidence request must seek evidence relevant to *those* charges. *Id.* at 832-33. As the Ninth Circuit emphasized, in each application, "the government will be required to prove to the court that the evidence actually is or was in the foreign country, has been officially requested and is related to an offense." *DeGeorge*, 380 F.3d at 1215. Courts must not "simply rubber-stamp the government's request, but [must] hold the government to its burden." *Id.* That did not occur here.

Indeed, while the government made numerous requests in support of its efforts to justify the tolling of the statutes of limitations for other offenses, the Second Application does not rely upon even a *single* request seeking discovery as to the Section 1546 counts of the First Superseding Indictment. That is because the government already received all the foreign evidence it wanted regarding visa fraud

McDermott Will & Emery LLP
Attorneys at Law
Washington

- 21 -

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

through Norway's response on July 25, 2003.[18] Certainly, by not even trying to justify an evidentiary basis for believing such evidence existed abroad, the government could not have carried its evidentiary burden. *Trainor*, 376 F.3d at 1332 (invalidating Section 3292 application made without a reliable foundation that evidence would exist abroad).

### C. The Second Tolling Order Is Unconstitutional As Applied To The Charges Added By The First Superseding Indictment

Section 3292 allows a subsequently-issued tolling order to back-date the tolling as to the date the foreign evidence request was made. 18 U.S.C. § 3292(b). When such orders are issued *before* the statute of limitations have expired, the extension of an *unexpired* statute of limitations is valid. *Stogner v. California*, 539 U.S. 607, 618 (2003) ("Even when courts have upheld extensions of *unexpired* statutes of limitations . . . they have consistently distinguished situations where limitations periods have *expired*."). But the Supreme Court has held that an attempt to revive a statute of limitations that already has expired violates the *Ex Post Facto* Clause. *Stogner*, 539 U.S. at 616 ("to resurrect a prosecution after the relevant statute of limitations has expired" violates the *Ex Post Facto* Clause); 616 (it is "well settled that the *Ex Post Facto* Clause forbids resurrection of a time-barred prosecution"); 618 ("revival of time-barred criminal cases is *not* allowed"); 619 (such a law violates "the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution"). That is because "[i]t retroactively withdraws a complete defense to prosecution after it has already attached." *Stogner*, 539 U.S. at 632; *Randeros v. Ryan*, 469 F.3d 788, 795 (9th Cir. 2006) (explaining that *Stogner* held that a statute that "revives prosecution is a classic ex post facto law and is no different from a statute that authorizes punishment for an act that was not

---

[18] The linchpin of the government's alleged immigration violation is that the government claims Ms. Rahmani was granted asylum by the United States because she claimed to have never applied for asylum elsewhere when, the government alleges, she actually had applied for asylum in Norway. (2d Supp. Indict. at 37.) Once Norway sent the United States its immigration paperwork for Ms. Rahmani, there was no outstanding foreign evidence relevant to these counts.

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

illegal as the time it was committed"). Such laws also violate the Due Process Clause. *See, e.g.*, *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) ("limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process").[19]

While the First Tolling Order, if valid, would allow the statute of limitations to be tolled for six months, so that it would not expire in December 2005 and could be extended through to June 2006, upon the conclusion of that tolling, the statute of limitations would have expired and the defendants would have a complete defense. It was not until *seventeen months later* that the government sought to revive these long-expired counts by filing the Second Application in November 2007. Whatever validity Section 3292 may have in the context of tolling an *unexpired* statute of limitations, *Stogner* makes clear that Section 3292 is invalid in a context like ours where it acts as a revival statute. Accordingly, even if the government could have justified applying the Second Tolling Order with the terms of Section 3292, the construction of that statute would produce an unconstitutional result in this context.

## IV.   THE FIRST AND SECOND TOLLING ORDERS VIOLATE DUE PROCESS

The defendants do not quarrel with the proposition that the government can seek to toll the statute of limitations pursuant to Section 3292 in the proper case, where it does so before the statute of limitations has expired and when notice is provided to the defendant that the statute of limitation has been tolled at some point before the statute would otherwise expire. Moreover, nothing prevents the government from seeking a Section 3292 order *ex parte* or through sealed

---

[19]   The Ninth Circuit's decision in *United States v. Bischel*, 61 F.3d 1429, rejecting an *ex post facto* challenge to Section 3292 under these circumstances was overruled by *Stogner. Id.* at 1434-37. Like the dissent in *Stogner*, the panel decision in *Bischel* erroneously concluded that the *Ex Post Facto* Clause related only to "statutes withdrawing defenses relating to the definition of the crime" and that the deprivation of a statute of limitations defense did not "deprive [the defendant] of a defense within the meaning of the ex post facto clause." *Id.* at 1436. Eight years later, *Stogner* ruled otherwise, explaining that the revival of an expired statute of limitations "retroactively withdraws a complete defense to prosecution after it has already attached." *Stogner*, 539 U.S. at 632. Plainly, *Bischel*'s *Ex Post Facto* Clause holding is no longer good law.

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

proceedings when necessary to maintain the secrecy of its investigation. But the government has no right to keep such proceedings secret forever – it must disclose to the defendant that a Section 3292 order is in effect *before* the defendant is misled into believing the statute of limitations has expired.

The Supreme Court has explained,

> statutes of limitation serve a policy of repose. They "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time' and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them."

*Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2170 (2007) (internal citations omitted). These statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber . . . ." *Marion*, 404 U.S. at 323 (internal citation omitted). In addition, statutes of limitation confer a valuable right upon defendants:

> The immunity from suit which arises by operation of the statute of limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses.

*Campbell v. Holt*, 115 U.S. 620, 631 (1885). They "establish[] a deadline after which the defendant may legitimately have peace of mind." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980).

The government's conduct gave the defendants the "peace of mind" that the statutes of limitation had expired, only to later disclose that the statutes of limitation had been secretly tolled. This threatens to undermine the very purpose of statutes of limitation because who could truly have repose when they must wonder whether a secret tolling order sits in the prosecutor's drawer waiting to surprise them long after the statute of limitations has expired?

By leading a defendant to believe that the statute of limitations has expired, that she can have peace of mind and that she does not need to preserve evidence to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

defend herself, only to initiate a prosecution *after* the statute of limitations would have expired with the aid of a secret tolling order strikes at the heart of notice and fair play that is embodied in the Due Process Clause. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1993) (The Due Process Clause protects a defendant's interests in "fair notice and repose."). As Learned Hand explained: "For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest." *Falter v. United States*, 23 F.2d 420, 426 (2d Cir. 1928).

Indeed, in *Stogner*, the Supreme Court invalidated legislation that sought to revive an expired statute of limitations precisely because it disturbed the expectations that were conferred upon a defendant by the statute of limitations. *Stogner*, 539 U.S. at 611. From the defendants' perspective in this case, what the government seeks to do here is no less offensive. While the government may have secured the First Order before some, but not all, of the statutes of limitations expired, because the government never disclosed this secret order to the defendants, they too were left to assume that the repose promised by the statute of limitations had been conferred upon them.

To be sure, there is nothing in Section 3292 that requires the government to proceed as it has or that would prevent the Court from requiring that notice of a Section 3292 order be conveyed to a defendant before the statute of limitations has otherwise run. Indeed, there is nothing in Section 3292 that requires applications under that statute be *ex parte* or sealed, and some courts have refused to even hold Section 3292 hearings unless those subject to the proposed tolling order have been afforded notice and an opportunity to be heard. *In re Grand Jury Investigation*, 3 F. Supp. 2d 82, 83 (D. Mass. 1998) ("Nothing in section 3292, however, expressly contemplates secretly extending certain statutes of limitation as to certain individuals.") The government chose to proceed as it did here, obtaining Section 3292 Orders *ex parte* and through sealed proceedings where it gave the judges less

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

than the full picture, and then failing to notify the defendants that it had obtained tolling until after the statute of limitations had, by all appearances, seemingly conferred repose. The prosecution set its own course, one not required by the statute or the facts of the case, in setting this trap where it would spring its secret tolling orders on the defendants only after they had been led to believe the statute of limitations had run. Such conduct violates the Due Process Clause, and the Court should invalidate both the First and Second Tolling Orders as a result.[20]

## V. THE GOVERNMENT'S FIRST APPLICATION DID NOT APPLY TO MR. TAJ AND ANY SUBSEQUENT ORDERS GRANTING THE APPLICATIONS WERE INVALID AS TO MR. TAJ

In addition to the reasons set forth previously in this motion, particular attention is requested with respect to the government's Section 3292 applications as they pertain to Mr. Taj. The government specifically failed to name Mr. Taj in its First Application and by the time the government applied for its Second Application, the statute of limitations had already run – requiring this Court to find the tolling orders invalid as against Mr. Taj and dismissing the relevant counts against him.[21]

---

[20] A very different due process argument was rejected by the Ninth Circuit in *Bischel*. There, the defendant complained that because tolling under Section 3292 does not stop until there is final action by a foreign government, "it takes away his right to a fixed statute of limitations and removes the predictability of a specific time limit beyond which he could not be prosecuted." *Bischel*, 61 F.3d at 1434-35. The defendants do not quarrel with the Ninth Circuit's holding that there is no "right to a fixed period of limitation." *Id.* at 1435. But what the defendants insist the government cannot do – and what they have done here – is to create a statute of limitation that on its face applies to them, and then failed to disclose to them until long after the limitation period had seemingly expired that it has not attached to them because of some secret order. Had the defendants been placed on notice (in other words, had the tolling order not been kept secret) that a Section 3292 order had been issued *before* the statute of limitations had run, the repose ordinarily conferred by the statute of limitations would not have vested.

[21] The defendants filed a Motion to Dismiss New Counts in the First and Second Superseding Indictments Pursuant to the Statute of Limitations (Motion to Dismiss No. 8) concurrently with this motion. Mr. Taj has joined in that motion and his position with respect to the Section 3292 applications and the running of the statute of limitations apply to the SOL motions as well.

DEFENDANTS' MOTION TO INVALIDATE GOVERNMENT'S 3292 APPLICATIONS

The Original Indictment filed on March 13, 2001, charged Mr. Taj with providing material support to the MEK in violation of 18 U.S.C. 2339B(a)(1). (Original Counts 1 and 27).  The alleged conduct occurred between October 8, 1997 and February 27, 2001.

The government then filed its First Superseding Indictment *under seal* on June 14, 2005, adding count 64 against Mr. Taj – procurement of citizenship or naturalization unlawfully in violation of 18 U.S.C. § 1425.  Again, this First Superseding Indictment was *not revealed to the defendants* until February 5, 2007.

On November 29, 2007, the government filed the current Second Superseding Indictment against the defendants.  With respect to Mr. Taj, the government added charges of conspiracy (18 U.S.C. § 371) (Count 1), mail fraud (18 U.S.C. § 1342, 2) (Counts 2 -7), wire fraud (18 U.S.C. § 1343, 2) (Counts 8-23), and money laundering (18 U.S.C. § 1956 et seq.) (Counts 32, 33-52, 53-58). The government alleges the unlawful conduct in these counts to have occurred during the same period as in the Original Indictment, with the last of the alleged acts occurring on or about February 26, 2001.  These counts have a five year statute of limitations and thus the statute ran at the latest, on February 26, 2006.[22]  18 U.S.C. § 3282.  The filing of the Second Superseding Indictment on November 29, 2007 - well past the five year statute - requires that these counts be dismissed against Mr. Taj.

The government's First Application, filed on July 21, 2003, cannot save the government's case on these counts as Mr. Taj was *specifically omitted from the First Application.*  The government clearly did not intend to toll the statute against Mr. Taj, as Mr. Taj was named in the Original Indictment and none of the specific alleged financial and/or banking transactions or overt acts in the Second Superseding Indictment are attributed to Mr. Taj.[23]   Thus, the government's

[22]   As indicated in the defense's SOL motion, the statute of limitations ran earlier, in December 2004, with respect to some counts. (*See* Motion to Dismiss No. 8, at p. 4, n. 5.)

[23]   The only "financial crime" charge alleged against Mr. Taj is the giving of credit cards to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

deliberate omission of Mr. Taj from its First Application could not have tolled the running of the statute against him.

Moreover, the government's Second Application, filed on November 13, 2007 - 21 months beyond the five year statute of limitation - then named Mr. Taj. However, as the statute had already expired as to Mr. Taj, any subsequent order tolling the statute against Mr. Taj was invalid.

Thus, not only are the government's Section 3292 applications and subsequent orders invalid for the reasons provided previously, but with respect to Mr. Taj, they are invalid because: 1) The government never sought to toll the statute with respect to him in its First Application; and 2) the government filed the Second Application specifically naming him beyond the statute of limitations and, thus, too late.

Ms. Rahmani in support of the MEK.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

- 28 -

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

## CONCLUSION

The government has carried out the prosecution of this case in a manner that improperly manipulates the tolling provisions of Section 3292. The government has systematically separated related charges concerning the same "offense" into multiple indictments to garner more time to conduct its investigation after charges were already brought. The government's applications contradict the plain language of Section 3292. Absent what turns out to be two district judges' unsupported suspension of the limitations period, the statute of limitations for Counts 1-23, 27-30 and 32-58 would have expired prior to the return of the Second Superseding Indictment. Because each of the suspensions was improper, each of these counts should be dismissed.

Dated: July 15, 2008                          Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

_____/s/_____
Abbe David Lowell                             **JAY L. LICHTMAN LAW OFFICES**
Roy L. Austin, Jr.
Hoyt Sze                                      _____/s/_____
Christopher D. Man                            Jay L. Lichtman
Attorneys for Defendant                       Attorney for Defendant
ROYA RAHMANI                                  HASSAN REZAIE

**MICHAEL S. MEZA LAW OFFICES**              **SAINT MARTIN & FAN**

_____/s/_____                            _____/s/_____
Michael S. Meza                               Amy Fan
Attorney for Defendant                        Attorney for Defendant
ALIREZA MOHAMMADMORADI                        NAVID TAJ

**SHEPPARD MULLIN RICHTER &**                **ACLU FOUNDATION OF**
**HAMPTON LLP**                               **SOUTHERN CALIFORNIA**

_____/s/_____                            _____/s/_____
Richard M. Steingard                          Peter J. Eliasberg
Attorney for Defendant                        Ahilan T. Arulanantham
MUSTAFA AHMADY

**THOMAS NISHI LAW OFFICES**                 **NASATIR HIRSCH PODBERESKY &**
                                              **GENEGO**
_____/s/_____
Thomas Nishi                                  _____/s/_____
Attorney for Defendant                        William J. Genego
HOSSEIN KALANI AFSHARI                        Attorneys for Defendant
                                              MOHAMMAD HOSSEIN OMIDVAR

DEFENDANTS' MOTION TO INVALIDATE
GOVERNMENT'S 3292 APPLICATIONS