**McDERMOTT WILL & EMERY LLP**
Abbe David Lowell (Admitted *Pro Hac Vice*)
adlowell@mwe.com
Roy L. Austin, Jr. (State Bar No. 211491)
raustin@mwe.com
Hoyt Y. Sze (State Bar No. 180716)
hsze@mwe.com
Christopher D. Man
cman@mwe.com
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Telephone: 202.756.8000
Facsimile: 202.756.8087

Attorneys for Defendant
ROYA RAHMANI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
Limited Liability Partnership
Including Professional Corporations
Richard M. Steingard (State Bar No. 106374)
RSteingard@sheppardmullin.com
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448
Telephone: 213.617.5416
Facsimile: 213.443.2908

Attorney for Defendant
MUSTAFA AHMADY

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-01-209(A)-RMT |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS NEW COUNTS IN FIRST AND SECOND SUPERSEDING INDICTMENTS PURSUANT TO SIXTH AMENDMENT SPEEDY TRIAL REQUIREMENT AND RULE 48(B) (MOTION TO DISMISS NO. 9)** |
| v. | |
| ROYA RAHMANI, ALIREZA MOHAMMADMORADI, MOUSTAFA AHMADY, HOSSEIN KALANI AFSHARI, HASSAN REZAIE, NAVID TAJ, MOHAMMAD HOSSEIN OMIDVAR, et. al., | |
| Defendants. | Hearing Date: None Scheduled<br>Time:<br>Dept: Courtroom 22 |

DEFENDANTS' MOTION TO DISMISS PURSUANT TO
SPEEDY TRIAL AND RULE 48(B)

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendants Roya Rahmani, Alireza Mohammadmoradi, Moustafa Ahmady, Hossein Kalani Afshari, Hassan Rezaie, Navid Taj and Mohammad Hossein Omidvar ("the defendants") hereby move the Court to dismiss the charges added by the First and Second Superseding Indictment (cumulatively Counts 1-30 and 32-58 of the Second Superseding Indictment) pursuant to the speedy trial requirement of the Sixth Amendment and Rule 48(b) of criminal procedure.  This Motion is based on this Notice of Motion, supported by the attached Memorandum of Points and Authorities, and by all of the pleadings, records and files in this action, and such other documents and argument as may be presented to the Court.

Dated:  July 15, 2008

**McDERMOTT WILL & EMERY LLP**

/s/
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**MICHAEL S. MEZA LAW OFFICES**

/s/
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

/s/
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**THOMAS NISHI LAW OFFICES**

/s/
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

Respectfully submitted,

**JAY L. LICHTMAN LAW OFFICES**

/s/
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**SAINT MARTIN & FAN**

/s/
Amy Fan
Attorney for Defendant
NAVID TAJ

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

/s/
Peter J. Eliasberg
Ahilan T. Arulanantham

**NASATIR HIRSCH PODBERESKY & GENEGO**

/s/
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

# TABLE OF CONTENTS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

**Page**

INTRODUCTION .................................................................................................1

PROCEDURAL HISTORY ..................................................................................3

ARGUMENT..........................................................................................................4

I.   THE GOVERNMENT'S DELAY IN PROSECUTING COUNTS 60-63 VIOLATES THE SIXTH AMENDMENT ...................................4

    A.   The Government's Delay Is Uncommonly Long................................5

        1.   The Speedy Trial Clock Began To Run Upon The Filing Of The Criminal Complaint And Arrest in February 2001 .......6

        2.   Delay Between Filing The Sealed First Superseding Indictment And Trial Is Relevant To Speedy Trial Analysis ...................................................................................8

    B.   The Government Is Responsible For The Delay.................................9

        1.   There Is No Justification For The Government's Delay In Bringing The First Superseding Indictment...........................11

        2.   There Is No Justification For The Government's Delay In Bringing The Second Superseding Indictment .......................13

            a.   Mail and Wire Fraud (Counts 2-23) ............................13

            b.   Money Laundering (Counts 32-58) ..............................15

            c.   False Statements To Financial Institutions (Counts 24-26) ...........................................................................17

        3.   The Government's Conduct Constitutes Bad Faith .................17

    C.   The Defendants Have Not Delayed In Asserting Their Right To A Speedy Trial...........................................................................20

    D.   Ms. Rahmani Has been Prejudiced By The Delay............................22

II.  DISMISSAL OF COUNTS 60-63 IS WARRANTED UNDER RULE 48....................................................................................................24

CONCLUSION .....................................................................................................25

DEFENDANTS' MOTION TO DISMISS PURSUANT TO
SPEEDY TRIAL AND RULE 48(B)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir. 1978)......................................................6

*Benson v. United States*, 402 F.2d 576 (9th Cir. 1968)...............................................6

*Dickey v. Florida*, 398 U.S. 30 (1970) .......................................................................13

*Dillingham v. United States*, 423 U.S. 64 (1975) .........................................................2

*Doggett v. United States*, 505 U.S. 647 (1992)......................................4, 5, 22, 23

*Favors v. Eyeman*, 466 F.2d 1325 (9th Cir. 1972)....................................................6

*Flanagan v. United States*, 465 U.S. 259 (1984) .......................................................7

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)...............................................22

*Mezo v. Booher*, 2007 U.S. Dist. LEXIS 64079 (W.D. Ky. Aug. 29, 2007) .............................................................................................................6

*Northern v. United States*, 455 F.2d 427 (9th Cir. 1972) ..........................................6

*Saiz v. Eyeman*, 446 F.2d 884 (9th Cir. 1971) ...........................................................6

*United States v. Afshari*, 426 F.3d 1150 (9th Cir. 2005) ...........................................1

*United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993) ...............................................8

*United States v. Balochi*, 527 F.2d 562 (4th Cir. 1976) ..........................................24

*United States v. Bass*, 460 F.3d 830 (6th Cir. 2006) .................................................6

*United States v. Bergfeld*, 280 F.3d 486 (5th Cir. 2002)........................5, 9, 12, 21

*United States v. Cardona*, 302 F.3d 494 (5th Cir. 2002) ........................................21

*United States v. Casas*, 356 F.3d 104 (1st Cir. 2004) ...............................................8

*United States v. Garcia*, 995 F.2d 556  (5th Cir. 1993) ..........................................25

*United States v. Gonzalez-Avina*, 2006 U.S. Dist. LEXIS 10810 (N.D. Cal. Mar. 10, 2006).............................................................................................6

*United States v. Gregory*, 160 F. Supp. 2d 1166 (D. Haw. 2001) ............................8

*United States v. Hays*, 40 F.3d 362 (11th Cir. 1994)…………………………….9

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

-ii-

*United States v. Hoslett*, 998 F.2d 648 (9th Cir. 1993) .............................................7

*United States v. King*, 483 U.S. 969 (9th Cir. 2007) ...............................................7

*United States v. Knox*, 2006 U.S. Dist. LEXIS 16913 (E.D. Va. Apr. 5, 2006) ................................................................................................5, 9, 22

*United States v. Leaver*, 358 F. Supp. 2d 255 (S.D.N.Y. 2004) ...................9, 12, 22

*United States v. Loud Hawk*, 474 U.S. 302 (1986) ..........................................1, 2, 7

*United States v. MacDonald*, 456 U.S. 1 (1982) ......................................................6

*United States v. Marion*, 404 U.S. 307 (1971) ......................................................3, 7

*United States v. McClain*, 1999 U.S. App. LEXIS 2173 (9th Cir. Feb. 11, 1999) ................................................................................................8

*United States v. Mellado*, 2006 U.S. Dist. LEXIS 52097 (S.D. Miss. July 27, 2006) ......................................................................................24, 25

*United States v. Mendoza*, 2008 U.S. App. LEXIS 9817 (9th Cir. May 8, 2008) ............................................................................................5, 13, 14

*United States v. Novelli*, 544 F.2d 800 (5th Cir. 1977) ..........................................24

*United States v. Reynolds*, 2007 U.S. App. LEXIS 10965 (9th Cir. May 3, 2007) ............................................................................................3, 5, 21

*United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992) ...........................................23

*United States v. Simmons*, 536 F.2d 827 (9th Cir. 1976) .......................................24

*United States v. Solomon*, 753 F.2d 1522 (9th Cir. 1985) ......................................8

*United States v. Tanh Huu Lam*, 2001 U.S. App. LEXIS 18826 (9th Cir. June 4, 2001) ......................................................................................5

*United States v. Terrack*, 515 F.2d 558 (9th Cir. 1975) ..........................................6

*United States v. Vispi*, 545 F.2d 328 (2d Cir. 1976) ..............................................12

*United States v. Wall*, 2008 U.S. Dist. LEXIS 1413 (W.D. Mo. Jan. 8, 2008) ................................................................................................19

*United States v. Watson*, 599 F.2d 1149 (2d Cir. 1979) ........................................12

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-iii-

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

*United States v. Williams*, 2007 U.S. App. LEXIS 19528 (6th Cir. Aug. 10, 2007) ..................................................................................................9

## STATUTES

18 U.S.C. § 3292..............................................................................................11, 22

U.S. Const. amend. VI ...........................................................................................4

## REGULATIONS

Fed. R. Cr. P. 48(b) ..............................................................................................24

McDermott Will & Emery LLP
Attorneys At Law
Washington

-iv-

DEFENDANTS' MOTION TO DISMISS PURSUANT TO
SPEEDY TRIAL AND RULE 48(B)

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The government's decision to prosecute the defendants on the charges added by the First and Superseding Indictments in this case, rather than through separate cases, has a profound effect upon the operation of the Speedy Trial Clause.  Courts apply only a single speedy trial clock to a case which runs from the triggering date, the arrest in this case, through trial – regardless of when new charges are added by superseding indictments.  *See*, *e.g.*, *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986) (measuring the speedy trial delay in a case with a superseding indictment that added new charges from the date of the initial indictment).  Because the strength of the government's justifications for the delay may vary between charges, it is possible that some charges would withstand speedy trial analysis while others may fall even though all charges are subject to the same speedy trial clock.  Here, the charges in the Original Indictment withstand speedy trial analysis, but the charges added by the First and Second Superseding Indictments do not because they were based on conduct or charges known at the time of the arrest.

As the defendants' numerous motions to dismiss the charges of the Original Indictment demonstrate, those charges are subject to numerous defects, both constitutional and otherwise, but a violation of the Speedy Trial Clause is not among them.  The *eight-year* delay between the defendants' February 2001 arrest and the April 2009 trial is certainly long, but it is justified as to these charges for two principal reasons:  The defendants promptly waived their speedy trial rights following their indictment on these charges and the bulk of this delay involved litigation of these charges in this Court, before the Ninth Circuit and in seeking review from the Supreme Court.[1]

_____

[1]    After this Court dismissed the government's novel material support of a designated terrorist organization charges in the First Indictment on June 21, 2002, there was a *four-and-one-half year* appeal.  *United States v. Afshari*, 426 F.3d 1150 (9th Cir. 2005), *r'hrng. denied*, 446 F.3d 915 (9th Cir. Apr. 17, 2006), *cert. denied*, 127 S. Ct. 930 (U.S. Jan. 8, 2007).  While the

-1-                    DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

By contrast, there is no justification for the extensive delay with respect to the charges added by the First and Second Superseding Indictments. While the novel issues surrounding the "material support" charges of the Original Indictment were being litigated on appeal, nothing prevented the government from bringing separate cases charging the defendants with the immigration offenses alleged in the First Superseding Indictment or the financial crime charges added by the Second Superseding Indictment. Indeed, had the government done so, there is little doubt those cases would have been tried and concluded years ago. But by choosing to bring those charges as part of this case, the government chose to be governed by the one speedy trial clock applicable to this case, which started running upon defendants' arrest in 2001. *See, e.g.*, *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (arrest is triggering event).

As with the charges of the Original Indictment, not all of this eight-year delay between arrest and trial on the charges added by the First and Second Superseding Indictments can be attributed to the government alone. The defendants also agreed to waive their speedy trial rights following their arraignments on the First and Second Superseding Indictments, but that has no bearing upon the years of delay between arrest and these waivers. That is significant because there is a *six year* delay between the arrest and the unsealing of the new charges in the First Superseding Indictment in February 2007[2] and a *six-and-one-half year* delay

defendants do not challenge this delay with respect to the Original Indictment, they do note that this delay does raise speedy trial concerns of its own. The Speedy Trial Clause imposes an obligation upon the government as a whole, including the courts, so a speedy trial claim can rest upon delay by the courts as well as the prosecution. *See, e.g.*, *Loud Hawk*, 474 U.S. at 324-25 ("Courts as well as prosecutors must necessarily work to promote those interests if they are to have any vitality. Because it is the Government as a whole – including the courts – that bears the responsibility to provide a speedy trial, the prosecutor's good faith cannot suffice to discharge that responsibility.").

[2]      This 20-month gap between the filing of the First Superseding Indictment in June 2005 and its unsealing in February 2007 is particularly meaningful to the speedy trial analysis because none of the time that elapsed during this interim can be attributed to the defendants. Moreover, the filing, rather than the unsealing, of the First Superseding Indictment would independently trigger the Speedy Trial Clause, and that 20-month period of delay is more than sufficient to warrant dismissal of these charges. (*See supra* at Part I.A.1.).

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS PURSUANT TO
SPEEDY TRIAL AND RULE 48(B)

between the arrest and the filing of the new charges in the Second Superseding Indictment. The defendants did not and could not have waived their rights as to charges they were not yet even aware had been or would be filed. *See, e.g.*, *United States v. Reynolds*, 2007 U.S. App. LEXIS 10965, at \*7 (9th Cir. May 3, 2007) ("Without knowledge of the indictment, Reynolds could not have acquiesced in the delay."). Even holding the defendants fully responsible for the time that has passed following the waivers, the *six years* of delay that existed prior to the waivers lies squarely on the government's shoulders and is more than sufficient to warrant the dismissal of the charges added by the First and Second Superseding Indictment (collectively Counts 1-30 and 32-58 of the Second Superseding Indictment). Prosecution on these charges is barred by the Speedy Trial Clause of the Sixth Amendment and Rule 48(b); therefore they must be dismissed. *See, e.g.*, *United States v. Marion*, 404 U.S. 307, 320 (1971).

## **PROCEDURAL HISTORY**

On February 26, 2001, the government accused the defendants of extensive criminal activity in a Criminal Complaint, which included a 123-page sworn affidavit from an FBI agent. (*See* Exhibit A (Chart: "The Government's Delay in Prosecuting Counts 1-30 and 32-58 Deprives Defendants of Their Right to a Speedy Trial").) The government arrested them the next day, on February 27, 2001, and filed the Original Indictment against them on March 13, 2001. During the interval between the arrest and the Original Indictment, the defendants were detained. Following the March 15, 2001 arraignment on the Original Indictment, the Court released the defendants on bail, but their liberty was significantly curtailed by stringent conditions of release. The defendants waived their rights to a speedy trial as to the counts in the Original Indictment following their arraignment on those charges, but obviously did not and could not have waived their right to be afforded a speedy trial on charges that were yet to be filed.

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

On June 15, 2005, unbeknownst to the defendants, the government secretly filed a First Superseding Indictment under seal which added immigration counts (now Counts 27-31 in the Second Superseding Indictment) against Ms. Rahmani and Mr. Taj.  This indictment was not unsealed until 20 months later, on February 5, 2007.  This was roughly *six years* after the defendants were arrested.  As the defendants had not been arraigned on these charges, and did not even know about them until the First Superseding Indictment was unsealed, they had not waived any right to a speedy trial prior to their arraignment on these charges.  Then, on November 29, 2007, roughly *six-and-a-half years* after their arrest, the government filed the Second Superseding Indictment, which charged various financial crime counts the defendants based on the accusation made against them in the Criminal Complaint that had been filed *six-and-a-half years earlier*.  Again, they did not waive their speedy trial right with respect to these newly added charges until following the arraignment.  The defendants now move to dismiss the charges added by the First and Second Superseding Indictments as untimely pursuant to the Sixth Amendment and Rule 48(b).[3]

## ARGUMENT

## I. THE GOVERNMENT'S DELAY IN PROSECUTING COUNTS 60-63 VIOLATES THE SIXTH AMENDMENT

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Although the Supreme Court has recognized that, "[o]n its face, the Speedy trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all," the Court has recognized that some delay must be tolerated. *Doggett v. United States*, 505 U.S.

---

[3] This delay also violates the statute of limitations, which defendants address in their Motion to Dismiss New Counts in First and Second Superseding Indictments Pursuant to the Statute of Limitations (Motion to Dismiss No. 7).

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

647, 651 (1992).  Whether the delay violates the Sixth Amendment depends on the balancing of four factors:  "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for the delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result."  *United States v. Reynold*, 2007 U.S. App. LEXIS 10965, at \*2 (9th Cir. May 3, 2007) (quoting *Doggett*, 505 U.S. at 651); *see United States v. Mendoza*, 2008 U.S. App. LEXIS 9817, at \*5 (9th Cir. May 8, 2008) (applying this test to dismiss an indictment).

### A.    The Government's Delay Is Uncommonly Long

Before courts undertake an effort to determine who is at fault for delay, courts first must decide the threshold issue of whether the delay itself has been so uncommonly long as to warrant a full consideration of all four factors in the speedy trial analysis.  As the Supreme Court recognized in *Doggett*, "the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year."  505 U.S. at 652 n.1; *see United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002) ("Generally, it is accepted that a post-accusation delay approaching one year is sufficient.").  The Ninth Circuit has explained that, "within this circuit, we have found that a six-month delay constitutes a 'borderline' case." *United States v. Tanh Huu Lam*, 2001 U.S. App. LEXIS 18826, at \*10 (9th Cir. June 4, 2001).  Because the government arrested the defendants on February 27, 2001 and trial is not scheduled until April 2009, the projected delay between accusation and trial is more than *eight years*.  (*See* Exhibit A.)  That is more than *16 times* the delay the Ninth Circuit has held to create a "borderline" speedy trial problem.[4]  Plainly, that is more than sufficient to warrant the Court proceeding to the next step of analyzing whether this delay is justified.

---

[4]    In determining whether speedy trial analysis is triggered, the Court merely looks to the length of time between the accusation and trial without considering the reasons behind the delay. Issues of reasonableness, waiver and other factors are relevant in the next stage of analysis in

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

McDermott Will & Emery LLP
Attorneys At Law
Washington

### 1. The Speedy Trial Clock Began To Run Upon The Filing Of The Criminal Complaint And Arrest in February 2001

The Sixth Amendment's speedy trial clock is "triggered by arrest, indictment or other official accusation." *Doggett*, 505 U.S. at 655; *United States v. MacDonald*, 456 U.S. 1, 7 (1982) ("In addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim."); *Dillingham*, 423 U.S. at 65 ("[T]he Government constituted petitioner an 'accused' when it arrested him and thereby commenced its prosecution of him."). Although an indictment may precede an arrest, where a criminal complaint or an arrest precedes an indictment (as is the case here), the criminal complaint[5] or arrest is the relevant speedy trial trigger. *See, e.g.*, *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006) ("The length of delay is measured from the earlier date of indictment or arrest to the defendant's trial."). That is because:

> To legally arrest and detain, the government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and

determining whether the delay was justifiable. *See, e.g.*, *United States v. Knox*, 2006 U.S. Dist. LEXIS 16913, at *30 (E.D. Va. Apr. 5, 2006).

[5] Whether the speedy trial trigger is viewed as the filing of the Criminal Complaint or the arrest makes little difference in this case because the arrest followed the Criminal Complaint by just one day. Nevertheless, the Ninth Circuit has held that the filing of a criminal complaint that precedes an arrest is the relevant speedy trial trigger. *See United States v. Terrack*, 515 F.2d 558, 559 (9th Cir. 1975); *Northern v. United States*, 455 F.2d 427, 429 (9th Cir. 1972); *Saiz v. Eyeman*, 446 F.2d 884, 885 (9th Cir. 1971); *Benson v. United States*, 402 F.2d 576, 579 (9th Cir. 1968). The Ninth Circuit's case law is somewhat confused, however, because some Ninth Circuit cases, without citing prior circuit precedent, conclude that arrest, rather than a criminal complaint, is the relevant trigger. *See Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978); *Favors v. Eyeman*, 466 F.2d 1325, 1328 (9th Cir. 1972). Applying the principle that an earlier panel decision cannot be overruled except by the Ninth Circuit *en banc*, Judge Patel recently held that the earlier cases holding the filing of a criminal complaint is the speedy trial trigger remains the law in this circuit. *United States v. Gonzalez-Avina*, 2006 U.S. Dist. LEXIS 10810, at *14 (N.D. Cal. Mar. 10, 2006). Moreover, other courts have concluded that this result is compelled by the Supreme Court's more recent clarification in *Doggett* that the Speedy Trial Clause is "triggered by arrest, indictment or other official accusation." *Mezo v. Booher*, 2007 U.S. Dist. LEXIS 64079, at *4 (W.D. Ky. Aug. 29, 2007).

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

> create anxiety in him, his family and his friends. . . . So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

*United States v. Marion*, 404 U.S. 307, 320 (1971); *see also Flanagan v. United States*, 465 U.S. 259, 264-65 (1984) ("Delay between arrest and punishment prolongs public anxiety over community safety if a person accused of a serious crime is free on bail. It may also adversely affect the prospect of rehabilitation. Finally, when a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice."). Those concerns are very much alive in this case because the defendants have lived under a cloud of terrorism-related accusations for more than *seven years*, and they have been subject to both detention and rigorous conditions of release, including tight curfews, limits on their right to travel and, in Ms. Rahmani's case, having an electronic monitoring device shackled to her ankle.

The fact that the government has accused the defendants of additional crimes through the filing of the First and Second Superseding Indictments does not restart the constitutional speedy trial clock. That is because "while a superseding indictment requires a rearraignment, it does not create a new case with its own, independent identity." *United States v. Hoslett*, 998 F.2d 648, 658 (9th Cir. 1993). In other words, regardless of the number of superseding indictments, this remains one case with one speedy trial clock, which runs from the only date these defendants were arrested – February 27, 2001. Accordingly, in cases with superseding indictments, courts routinely measure speedy trial delay from the speedy trial trigger related to the original indictment through to the date of trial, rather than from the date of the superseding indictment to trial. *See, e.g.*, *Loud Hawk*, 474 U.S. at 314; *United States v. King*, 483 U.S. 969, 977 (9th Cir. 2007) (same); *United States v. Gregory*, 160 F. Supp. 2d 1166, 1173 (D. Haw. 2001)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-7-

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

(dismissing indictment on speedy trial claim based on delay from earliest indictment), *rev'd on other grounds*, 322 F.3d 1157, 1162 (9th Cir. 2003) (assuming district court properly measured delay from initial indictment, but finding the 22-month delay in that case justified); *United States v. McClain*, 1999 U.S. App. LEXIS 2173, at * 4 (9th Cir. Feb. 11, 1999) (measuring Speedy Trial Act claim from date last co-defendant was added by a superseding indictment, but measuring Speedy Trial Clause claim from date of arrest); *United States v. Baker*, 10 F.3d 1374, 1400-01 (9th Cir. 1993) (same); *United States v. Solomon*, 753 F.2d 1522, 1527 (9th Cir. 1985) (measuring delay from initial indictment rather than superseding indictment).

### 2. Delay Between Filing The Sealed First Superseding Indictment And Trial Is Relevant To Speedy Trial Analysis

The government's decision to file a sealed First Superseding Indictment is peculiar in this case, as the defendants not only had been charged publicly through the never-sealed Original Indictment but also had been arrested and brought into federal custody. Having arrested the defendants on the serious charge of aiding terrorists, it is hard to imagine any legitimate justification for keeping secret the government's intention to also prosecute two of the defendants on less serious immigration violations.

Nevertheless, the government cannot excuse its delay in prosecuting the immigration charges of the First Superseding Indictment because it was under seal for the 20 months between when it was filed on June 15, 2005 and when it was unsealed on February 5, 2007. Even if the prior arrest had not triggered the speedy trial clock, it would be the filing of the sealed indictment – rather than the unsealing of the indictment – that would constitute the "accusation" triggering speedy trial review. *See, e.g.*, *United States v. Casas*, 356 F.3d 104, 113 (1st Cir. 2004) ("We see no reason why a defendant should not be able to make a speedy

trial claim when the government has delayed the trial by sealing the indictment, regardless of the government's reasons. . . .  Prosecutors bear the primary responsibility of bringing a case to trial; they may not hide behind the sealing of an indictment to avoid examination of the delay that they cause."); *United States v. Bergfeld*, 280 F.3d 486, 489 (5th Cir. 2002) (holding that the time between the filing of the indictment and its unsealing "weighed heavily" in defendant's favor); *United States v. Hays*, 40 F.3d 362, 365 (11th Cir. 1994) (filing of sealed indictment triggers speedy trial analysis); *United States v. Leaver*, 358 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) ("[T]he Sixth Amendment speedy trial guarantee attaches when an indictment is filed, regardless of whether it was sealed."); *see also United States v. Williams*, 2007 U.S. App. LEXIS 19528, at *14 n.6 (6th Cir. Aug. 10, 2007) (assuming that speedy trial analysis was triggered by the filing of a sealed indictment because the government abandoned the argument to the contrary; "this Court has implied the speedy trial right is triggered by the filing of *any* indictment, whether sealed or not sealed;" and "the First, Fifth and Eleventh Circuits . . . have held that delay while an indictment is sealed may be considered").

### B.    The Government Is Responsible For The Delay

"The Government bears the burden for explaining the reasons for the delay since the Government bears the ultimate burden of bringing the accused to trial," and it cannot justify the delay here.  *Knox*, 2006 U.S. Dist. LEXIS 16913, at *33. There is no reason the charges added by the First and Second Superseding Indictments could not have been brought at the same time as the Original Indictment.  As the government concedes, it was aware of the immigration concerns it raised in the First Superseding Indictment around the time it filed the Original Indictment.  Thus, there is no plausible justification for waiting roughly *six years*

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

after filing the original Indictment in March 2001 before unsealing the First Superseding Indictment in February 2007.[6]

Likewise, there is no plausible justification for the government waiting *six-and-one-half years* after filing the Original Indictment in March 2001 to file the Second Superseding Indictment in late November 2007.  The government began its investigation in June 1997 as a financial crimes investigation, and sought the defendants' arrest, as well as a search warrant, in February 2001, based on alleged evidence that the defendants had engaged in financial crimes.  But those charges were not actually brought until November 2007 in the Second Superseding Indictment.  Given that the government believed it had enough evidence to warrant accusing the defendants of these offenses to warrant their arrest and obtain a search warrant – and this Court agreed – there is no explanation for why it would take nearly an additional *seven years* to file those charges, much less provide a speedy trial on those charges.

The government's delay in bringing the First and Second Superseding Indictment raises concerns that the government acted in bad faith.  It appears that the government leveled the serious allegation of providing material support to a terrorist organization against the defendants in March 2001 without having all the evidence it needed to support such a damaging accusation.  Then, it spent the last seven years trying to uncover evidence which would support its original claims.  Yet the government has a responsibility not to level such accusations against persons in criminal proceedings when it cannot substantiate them, and the Speedy Trial Clause exists to hold the government's feet to the fire and prove their claims once an accusation is made.  Even viewing the government's conduct in its most charitable light, and assuming the government really did have all the evidence it

---

[6] The government similarly cannot claim that the appeal that was pending at the time caused any delay, as the prosecutors decided to bring the second set of charges while the appeal was pending.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

needed to prove its case when the Original Indictment was filed in March 2001, the government's delay would be even more problematic. The government's delay either in investigating or prosecuting the claims of the First and Second Superseding Indictment for years following the Original Indictment have prejudiced the defendants' ability to prepare for trial and have necessitated considerable additional delay in the trial itself. The unjustifiable delay by the government in bringing these new charges is inexcusable.

## 1.    There Is No Justification For The Government's Delay In Bringing The First Superseding Indictment

The government already has told the Court that its investigation of the immigration charges added by the First Superseding Indictment, which was unsealed in February 2007, dates back almost as far as its investigation of the charges in the Original Indictment, which was filed in March 2001. In an August 29, 2002 filing, the government extensively catalogued these alleged immigration offenses in challenging Ms. Rahmani's motion to modify her conditions of release and stated:

> The government first became aware that defendant Rahmani had another identity in approximately July 2001, well after initial detention proceedings, and the government is continuing to investigate defendant Rahmani's possible violations of U.S. law in connection with her asylum application fraud.

(Gov't Opp'n. at 3-4 n.1.)[7]

On June 28, 2003, the government advised this Court in an application for tolling pursuant to 18 U.S.C. § 3292 that:

---

[7]     The government undoubtedly began investigating immigration issues concerning the defendants much earlier. FBI Agent Castillo's February 26, 2001 Affidavit in support of the Criminal Complaint alleges the defendants used their Los Angeles base "to create false identification for MEK members traveling in and out of the U.S." (Castillo Aff. at 71.) Given that the government quickly would have realized that Ms. Rahmani was an alien that it believed was engaged in serious felonies, and had expressed a concern that the defendants were manufacturing international travel documents, the government should have and likely did begin its investigation of immigration violations much earlier.

Rahmani obtained legal immigration status in the United States through false pretenses by making material false statements on the asylum application she filed with the United States Immigration and naturalization Service, including failing to accurately describe when and how she entered the United States, and concealing the fact that she had previously been granted legal residency in Norway under the name Leila Rahimnejad.

(Govt's In Camera And Under Seal Application For Order Suspending The Statute Of Limitations at 4-5 (filed July 28, 2003).)

In considering the government's justification for the post-indictment delay, the Court should give great weight to the fact that the government nearly exhausted the five-year statute of limitations and had investigated the charges for roughly four years before filing the sealed First Superseding Indictment. *See, e.g.*, *Bergfeld*, 280 F.3d at 491 n.3 ("[W]e find it significant in this case that had the government waited to indict Bergfeld until the date it unsealed his indictment and finally notified him of its existence, it would have been limitations barred."); *United States v. Watson*, 599 F.2d 1149, (2d Cir. 1979) ("[P]reindictment delay may have some relevance to the analysis of the speedy trial right."); *United States v. Vispi*, 545 F.2d 328, 333 (2d Cir. 1976) ("It is relevant that the 20-month [post-indictment] period was immediately preceded by a period of approximately 4 to 5 years between the government's discovery of the alleged offense and its filing of the information."); *Leaver*, 358 F. Supp. 2d at 269 (The post-indictment "delay was uncommonly long in light of the five years that had already elapsed between the alleged crime and the indictment."). That is because, in a case like this, where the government used up almost the entire five-year statute of limitations period and, by its own admission, had actively been investigating these charges for four years before the sealed indictment was filed, the government's claim that it needed an additional 20 months to investigate the alleged offenses post-indictment ring hollow. *See, e.g.*, *Vispi*, 545 F.2d at 333 (explaining that 20 months of post-indictment delay was not justified

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

because the government had "ample time in which to investigate" in the four to five years between when the alleged offense occurred and the defendant was indicted).

## 2. There Is No Justification For The Government's Delay In Bringing The Second Superseding Indictment

The information the government relied upon in filing the new charges in the Second Superseding Indictment on November 29, 2007 was in its hands even before the Original Indictment was filed on March 15, 2001.  This is clear because the very alleged facts the government relies upon to substantiate the Second Superseding Indictment were made explicitly by the government in the Affidavit of FBI Agent Christopher Castillo, which was submitted to the Court with the Criminal Complaint on February 26, 2001.  In other words, the government asserted that it had *probable cause* based on evidence that was good enough to arrest the defendants and to execute a search warrant in February 2001 for offenses that it did not charge them with until the Second Superseding Indictment was filed *six-and-a-half years later* in November 2007.

The Speedy Trial Clause imposes a duty upon the government to "make a diligent and good-faith effort" to promptly bring a defendant to trial. *Dickey v. Florida*, 398 U.S. 30, 32 (1970).  Only recently, the Ninth Circuit emphasized in affirming the dismissal of an indictment that there is a "strong presumption" of prejudice when the government fails to pursue a case with diligence. *United States v. Mendoza*, 2008 U.S. App. LEXIS 2817, at *12 (9th Cir. May 8, 2008).  Such diligence simply did not occur in this case – not by a long shot.

### a. Mail and Wire Fraud (Counts 2-23)

The crux of the Second Superseding Indictment is the allegation that the defendants engaged in fraud when they solicited persons for charitable donations under the false pretenses that the money would go toward helping the victims of Iranian oppression when, the government alleges, the money really was going to the

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

MEK.  While the government likes to pretend that this *six-and-a-half year* delay was warranted by the need to engage in international discovery, that claim is belied by the fact that the government brought the charges that depended on international discovery first in the Original Indictment.  The March 2001 Original Indictment not only alleged that the defendants made false representations to obtain the money, the government actually charged – and must have been in a position to try to prove – that the money raised in the United States could be traced from Los Angeles across the world and into the MEK's hands.  The November 2007 charges make the far simpler case for fraud in the solicitation because such offenses allegedly occurred entirely upon American soil when the alleged solicitation on false pretenses occurred.

The government can hardly claim it needed nearly *seven years* from the date of the Original Indictment to learn what representations were made to the people being solicited at LAX airport because FBI Agent Castillo testified to having interviewed many of the people who were solicited and to monitoring those solicitations extensively in his February 26, 2001 Affidavit, which was attached to the Criminal Complaint.  Agent Castillo told the Court in February 2001 that defendants told persons at the LAX airport that the solicitations were on behalf of the Committee for Human Rights ("CHR"), "that the CHR provides the funds to refugees in Iran," (Castillo Aff. at 22), that "they are collecting money for the victims of human rights violations,"  (*id.* at 24) and that they are "showing picture books of starving children and Iranian government atrocities."  (*Id.* at 35, 73, 83-88, 114.)  He alleged that CHR was a front organization and that the money really went to the MEK.  (*Id.* at 4.)  "[I]n fact," Agent Castillo explained in his Affidavit, "they are soliciting money to be used for military/terrorist training."  (*Id.* at 24.)  Agent Castillo relied upon purported witnesses who allegedly told him "none of the money goes to starving children or refugees as the CHR solicitors at LAX claim."

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

(*Id.* at 74.) In addition, the Original Indictment alleged that defendants "would solicit donations to the Committee for Human Rights ("CHR"), a front organization for the MEK, at Los Angeles International Airport ("LAX"), knowing and intending that these donated funds were going to the MEK." (*Id.* at 2.)

This is the very basis for the mail and wire fraud conspiracy and substantive counts in the Second Superseding Indictment. (*See* 2d Supp. Indict. Counts 1-23.) Because the government had sufficient evidence in hand to constitute probable cause to arrest the defendants and execute a search warrant based upon these offenses, there is no plausible explanation for why it would take the government nearly *seven years* to actually bring, much less try, those charges.

### b. Money Laundering (Counts 32-58)

The government's delay in bringing money laundering charges against the defendants until the Second Superseding Indictment is equally inexplicable given that the government concedes that this entire case *began as a money laundering investigation* in June of 1997 – more than a *decade* earlier. Agent Castillo's 2001 affidavit explained that on June 12, 1997, German law enforcement was "conducting a money laundering investigation of MEK members involved in fund raising" and reached out to the FBI, believing that this money was originating from Los Angeles. (Castillo Aff. at 19-20.) As a result, he explains "the FBI initiated an investigation of the illegal fund raising activities of the MEK in the greater Los Angeles area." (*Id.* at 20.)

Moreover, Agent Castillo does not suggest in his February 2001 Affidavit that the government was facing any great hurdles in its financial crimes investigation. Instead, he specifically laid out the alleged "MEK fund raising money trail from Los Angeles to the MEK's" accounts. (*Id.* at 73.) He even alleged that "[b]etween December, 1997, and December, 1998, 30 international wire transfers totaling $475,097" were sent from one of the defendant's Bank of

America accounts to Turkey.  Agent Castillo confirmed that he received the bank records for the defendants' alleged Bank of America account in February 1998 (*id.* at 20) and received records for the Turkish accounts in September 1999.  (*Id.* at 39.) Based upon this information, the government filed the Original Indictment a month later, in March 2001 alleging that these very wire transfers had placed money directly in the hands of the MEK in violation of the material support statute. (Original Indict. Counts 28-59.) [8]

Because the government began this case as an investigation of money laundering in June 1997, provided a sworn FBI Affidavit to the Court in February 2001 attesting that money obtained through fraud was being sent abroad through wire transfers, and filed an Original Indictment in March 2001 specifically charging the defendants with making these improper wire transfers, there would not seem to be any plausible justification for bringing these charges, and delaying trial more than *ten years* after the investigation began and *seven years* after the government could justify an arrest and an indictment on such claims.  Nevertheless, the very same wire transfers alleged in Agent Castillo's February 2001 Affidavit and the Original Indictment became the subject of the substantive money laundering charges the government added in the Second Superseding indictment *six-and-a-half-years later*.  (*Compare* Original Indict. at 3 (noting wire transfers from the Bank of America account to Turkey from March 18, 1998 through January 26, 2001) *with* 2d Supp. Indict. Counts 86-117 (charging as money laundering wire

[8]   The Second Superseding Indictment makes other financial crimes charges that the government likewise could have brought sooner.  In February 2001, Agent Castillo's Affidavit explains the defendants were using a house at 12656 Marco Place to promote these alleged offenses, and ultimately executes a search warrant at that location.  (Castillo Aff. at 5-6.) Nevertheless, it is not until *six-and-a-half-years later* that the Second Superseding Indictment charges defendants with promotional money laundering in paying for rent, telephone service and insurance on this location.  (2d Supp. Indict. Counts 40, 42, 44, 45, 47, 49-51.)  Similarly, Agent Castillo reported in February 2001 that CHR was registered with the government as a charity, but it was not until November 2007 that the Second Superseding Indictment charged that this was fraudulent or resulted in money laundering.  (2d Supp. Indict. Counts 1 – 7 (fraud); 33, 36, 37, 38, 41 (payment of charitable registration fees as promotional money laundering).)

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

transfers from the Bank of America account to Turkey from March 18, 1998 through January 26, 2001); *see also id* Counts 32-58 (alleging money laundering).) [9]

### c. False Statements To Financial Institutions (Counts 24-26)

The same is true of the government's allegations from the Second Superseding Indictment concerning false statements to banks. The money laundering charges described in detail above all involved money passing through banks. Moreover, Agent Castillo's February 2001 Affidavit alleged that defendants were "[m]aintaining accounts and wire transferring money overseas in furtherance of this conspiracy." (*Id.* at 5.) Agent Castillo claimed there was probable cause to believe money was being sent to the MEK upon "[b]ank statements . . . records of wire transfers, deposit and withdrawal slips, and other notes and papers reflecting financial deposits or disbursements." (*Id.* at 7.) Once these materials were obtained, and the government had the pertinent bank account information, there is no reason for a delay of seven or more years between obtaining that information and bringing these charges. (*See* 2d Supp. Indict. Counts 24-30.)

### 3. The Government's Conduct Constitutes Bad Faith

The government's profound delay in bringing these charges tells us one of two things: either the government did not have sufficient evidence to justify its Original Indictment and needed more time to investigate than the statutes of limitations would permit or the government decided to pile on these late charges to obtain a tactical advantage by delaying the trial. Either course constitutes bad faith on the part of the government.

While the material support statute is fraught with constitutional issues that perplexed the Ninth Circuit, causing it to issue three separate opinions and leading

---

[9] Agent Castillo identified a substantial subset of the wire transfers identified in the Original Indictment in his affidavit. (*See* 2d Supp. Indict. Counts 86-103 (charging wire transfers from the Bank of America account to Turkey from March 1999 through December 1998 as money laundering).)

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

McDermott Will & Emery LLP
Attorneys At Law
Washington

to four-and-a-half years of appellate litigation, there was nothing to prevent the government from filing a separate indictment charging the immigration violations it alleged in the First Superseding Indictment or to separately charge the defendants with the various offenses alleged in the Second Superseding Indictment. But not only did the government choose not to bring a separate prosecution based upon these charges, the government did not even choose to unseal the First Superseding Indictment until after the Ninth Circuit ruled and, in the case of the Second Superseding Indictment, waited *ten months* after the Supreme Court denied *certiorari* before even filing the indictment. Had the government placed the defendants on notice that they would have to defend against such charges, much of this unnecessary delay could have been avoided.

The timing of the government's action suggests that the government's true motivation was to obtain a tactical advantage through delay and surprise. When a defendant already has been arrested on serious terrorism charges there is no lawful reason to file a sealed indictment alleging lesser immigration charges. The defendants already were in custody and whatever risk of flight they could possibly have posed was addressed by the Court's conditions of release, which of course could be modified if the Court deemed it necessary. And, surely, if the government really did view these charges as important, it would not have waited for the appeal of the dismissal of the Original Indictment to resolve itself, it would have filed a separate indictment charging the immigration offenses.

The obvious explanation for the delay is that the government planned that the case would not go forward until the Ninth Circuit ruled, and it did not want to give the defendants notice that they also would be facing immigration charges, so they could better prepare a defense. Instead, the defendants were led to believe (accurately we contend in the accompanying Motion to Dismiss the New Counts in the First and Second Superseding Indictments Pursuant to the Statute of

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

Limitations) that the statute of limitations on the immigration offenses had expired. Unsealing that First Superseding Indictment as the parties were headed to trial necessarily forced a delay, which so easily could have been avoided.

After unsealing the First Superseding Indictment in February 2007 and forcing a continuance, the government then waited until a pre-trial motion and trial date again approached *ten months* later before filing the Second Superseding Indictment. That Indictment added *53* new counts and two new defendants. Not surprisingly, that forced the defendants to accept an additional continuance to prepare a defense on those new charges. Even now, the government's failure to comply with its *Brady* and related discovery obligations (e.g. CIPA) would prevent the defendants from obtaining a trial that is both "speedy" and that would meet the constitutional standards of fairness. It would be inappropriate to allow the government to lie in the weeds with new charges on the eve of trial or fail to produce discovery in a timely manner, and then seek to benefit from its inequitable conduct by forcing the defense into a Catch-22 of invoking their speedy trial rights only upon pains of forfeiting their constitutional right to a well-prepared defense and a fair trial. *See, e.g.*, *United States v. Wall*, 2008 U.S. Dist. LEXIS 1413, at *9-11 (W.D. Mo. Jan. 8, 2008) (finding a Speedy Trial Clause violation based upon delay caused, in part, by the government's failure to meet its own obligations to the defense).

While these delays occur, the government obtains a great tactical advantage. The defendants' freedom is restricted; their ability to participate in First Amendment activities is chilled, and their ability to clear their names and move on with their lives is curtailed. In addition, the government is able to impose these restrictions without ever having to make its case on the merits. Moreover, whether intended or not, the government gets the benefit of defendants' fading memories,

DEFENDANTS' MOTION TO DISMISS PURSUANT TO
SPEEDY TRIAL AND RULE 48(B)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

the inevitable loss of evidence and the cost of litigation exhausting defendants' resources for trial.

The Supreme Court has emphasized that "bad faith in causing delay will be weighed heavily against the government," and that a defendant "would prevail if he could show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial." *Doggett*, 505 U.S. at 656. This Court has a duty to end this government caused delay. As the Supreme Court explained:

> Condoning prolonged and unjustified delays in the prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

*Doggett*, 505 U.S. at 657.

### C.   The Defendants  Have Not Delayed In Asserting Their Right To A Speedy Trial

Although the defendants agreed to continuing the trial of the immigration charges *after* the charges were unsealed, and on the Second Superseding Indictment *after* it was filed, this factor should not diminish their claims of delay prior to the charges being brought and their being arraigned. In addition, their need to waive after the new charges were brought was the result of the government's tactic of expanding the charges with each new indictment. The government was well aware, or should have been, that by holding back on these charges it would complicate the defendants' ability to defend against either the old or new charges, and would necessitate delay. And that is particularly the case when the government – both then and now – has rendered a trial impossible by not complying with its discovery

McDermott Will & Emery LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

obligations. The defendants should not be penalized for the government's delay tactic which was intended to result and has resulted in an improper tactical advantage. Nor should they be expected to waive their right to a fair trial on the newly added charges that could have been brought years earlier simply to obtain the speedy trial they equally deserve.

Most importantly, however, there was no waiver as to the new charges added by the First and Second Superseding Indictments during the *six or more years* pending between their arrest and the addition of these charges. That is more than enough, in and of itself, to warrant a finding that their speedy trial rights were violated.

In particular, the immigration charges should be dismissed simply based on the pre-indictment delay and the 20 months of post-indictment delay while the First Superseding Indictment was under seal. Under no circumstances can a defendant be penalized for not objecting sooner to charges the government took great steps to prevent the defendant from learning even existed.

In *Doggett*, the Supreme Court explained that, due to the defendant's "ignorance" that the charges had been filed, defendant "is not to be taxed for invoking his speedy trial right only after his arrest." *Doggett*, 505 U.S. at 654. The Ninth Circuit understandably agrees. *United States v. Reynolds*, 2007 U.S. App. LEXIS 10965, at *7 (9th Cir. May 3, 2007) ("Without knowledge of the indictment, Reynolds could not have acquiesced in the delay."); *see also United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002) ("There is no evidence that he knew of the charges against him until after his arrest, thus this factor weighs heavily in Cardona's favor."); *Bergfeld*, 280 F.3d at 489 ("[T]he Court correctly recognized that the 'diligence of the defendant' element weighed exclusively in Bergfeld's favor, as he had no idea the indictment existed until it was unsealed."); *Leaver*, 358 F. Supp. 2d at 272 ("Leaver was not aware – *could* not have been aware – of the

McDermott Will & Emery LLP
Attorneys At Law
Washington

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

indictment until his arrest. . . . This factor therefore also weighs against the government."). The fact that defendants object to that delay in this motion is a sufficient assertion of their speedy trial rights to satisfy this factor. *See, e.g.*, *Knox*, 2006 U.S. Dist. LEXIS 16913, at \*67 ("Although the Defendant relies primarily on the instant motion as evidence of asserting the right, the Court FINDS that it is sufficient evidence that Defendant has asserted his right to a speedy trial at this point in the case.") (emphasis in original).

This point is all the more clear with respect to the charges in the Second Superseding Indictment which the government began investigating in June 1997, but did not charge the defendants with until more than a decade later when these charges were added in November 2007. Not only does this delay warrant dismissal under the statute of limitations, but it warrants a finding that the Speedy Trial Clause was violated. Nearly *six-and-a-half years* went by between the defendants February 2001 arrest in this case and the indictment on these charges, and it could be another year or more before this case is tried. There is no justification for such a delay, particularly when the government had the necessary evidence to bring these charges around the same time it filed the March 2001 Original Indictment.[10]

### D.    Ms. Rahmani Has been Prejudiced By The Delay

When, as here, the government is responsible for a considerable delay between accusation and trial, the Supreme Court has held that prejudice is irrebutably presumed. In *Doggett*, the Supreme Court recognized that the erosion of evidence over time is inevitable, but that a presumption of prejudice is needed because whether this erosion is prejudicial is difficult to prove. 505 U.S. at 655.

---

[10] The government seems to believe that its filing for tolling of the statute of limitations pursuant to 18 U.S.C. Section 3292 may save this prosecution, but that is not the case. The government's Section 3292 applications were improper. (*See* Motion to Invalidate the Government's 18 U.S.C. § 3292 Applications.) Moreover, even a successful Section 3292 application would only toll the statute of limitations, it would not affect a constitutional claim based on the Speedy Trial Clause. Nor could it. It is axiomatic that Congress cannot craft a statute to strip away a constitutional protection conferred to the people by the Bill of Rights. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

By reversing and ordering the indictment dismissed where there was no specific evidence of actual prejudice beyond the irrebutable presumption of prejudice, *Doggett* significantly clarified that the presumption of prejudice alone can warrant the dismissal of an indictment where the other factors weigh in favor of the defendant. *Id.* at 655-56.

The significance of *Doggett* was not lost on the Ninth Circuit. In *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992), the Ninth Circuit withdrew a pre-*Doggett* decision rejecting a speedy trial claim where no actual prejudice was shown and, based on the intervening decision in *Doggett*, the court found the speedy trial claim meritorious based solely on the irrebuttable presumption of prejudice. More recently, in *Mendoza*, the Ninth Circuit reversed a district court and ordered the dismissal of an indictment explaining "'no showing of prejudice is required when the delay is great and attributable to the government.' Instead, we presume prejudice. Further, '[t]he presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Mendoza*, 2008 U.S. App. LEXIS 9817, at *11-12 (internal citations omitted); *see also Bergfeld*, 280 F.3d at 490-91 (reversing a district court's denial of a speedy trial claim because the district court required the defendant to introduce "specific evidence of prejudice" and that is inconsistent with *Doggett*'s requirement that the presumption of prejudice).

Of course, the defendant's memory of events that occurred more than seven years ago has understandably faded, just as the memories of other witnesses related to these offenses likely have, and they no longer have many of the documents relevant to these charges. Given the passage of seven years, the presumption of prejudice in these instances is strong. *See, e.g.*, *Leaver*, 358 F. Supp. 2d at 272.

Though unnecessary to show, Ms. Rahmani has suffered specific prejudice from the government's delay. During this passage of time, Ms. Rahmani lost a friend to leukemia who could have served as a witness on the issues associated with

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-23-

her visits to the Swiss consulate with respect to Counts 28-30, and another friend died in a car accident who could have served as a witness concerning Ms. Rahmani's opening of the bank account with respect to Counts 25 and 27. With respect to facts that would justify her claim for asylum, demonstrate her state of duress or, if need be, mitigate her punishment by addressing the torture and incarceration she faced at the hands of the Iranian regime, dozens of potential witnesses have been murdered by the Iranian regime, died of natural causes or have gone into hiding and can no longer be found.

## II.    DISMISSAL OF COUNTS 60-63 IS WARRANTED UNDER RULE 48

In addition to the Sixth Amendment's requirement of dismissal for violation of the speedy trial guarantee, Rule 48(b) of criminal procedure more broadly permits the Court to dismiss an indictment for "unnecessary delay" in "bringing a defendant to trial." Fed. R. Cr. P. 48(b)(3). As the Ninth Circuit has acknowledged, "this Rule grants the trial court inherent power, derived from common law, to dismiss a case for want of prosecution, whether or not there has been a Sixth Amendment violation." *United States v. Simmons*, 536 F.2d 827, 832 (9th Cir. 1976); *see also United States v. Novelli*, 544 F.2d 800, 803 (5th Cir. 1977) ("Rule 48(b) extends beyond constitutional violations. . . ."); *United States v. Balochi*, 527 F.2d 562, 563-64 (4th Cir. 1976) (explaining that Rule 48(b) "supplements the district court's obligation to dismiss indictments in order to protect a defendant's constitutional rights, and is broader in compass."); *United States v. Mellado*, 2006 U.S. Dist. LEXIS 52097, at *8 n.6 (S.D. Miss. July 27, 2006) (dismissing indictment for "unnecessary delay" of two months between arrest and indictment based solely on Rule 48(b) and even though the Speedy Trial Act was not violated). District courts are granted "extremely broad discretion regarding whether to dismiss under Rule 48(b)." *United States v. Garcia*, 995 F.2d 556, 561 n.8 (5th Cir. 1993). Thus, in balancing the same factors relevant under the speedy

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

-24-

DEFENDANTS' MOTION TO DISMISS PURSUANT TO
SPEEDY TRIAL AND RULE 48(B)

trial analysis, the Court can – and should – use its discretion to dismiss the charges added by the First and Second Superseding Indictments, even if it concludes that the delay does not rise to a constitutional level.  *Mellado*, 2006 U.S. Dist. LEXIS 52097, at \*4.

**CONCLUSION**

Based on the government's delay in prosecuting the new charges added by the First and Second Superseding Indictment (cumulatively Counts 1-30 and 32-58 of the Second Superseding Indictment), the charges added by those indictments should be dismissed.

Dated:  July 15, 2008

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

/s/
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**JAY L. LICHTMAN LAW OFFICES**

/s/
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**MICHAEL S. MEZA LAW OFFICES**

/s/
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SAINT MARTIN & FAN**

/s/
Amy Fan
Attorney for Defendant
NAVID TAJ

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

/s/
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

/s/
Peter J. Eliasberg
Ahilan T. Arulanantham

**THOMAS NISHI LAW OFFICES**

/s/
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

**NASATIR HIRSCH PODBERESKY & GENEGO**

/s/
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

DEFENDANTS' MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL AND RULE 48(B)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON