**McDERMOTT WILL & EMERY LLP**
Abbe David Lowell (Admitted *Pro Hac Vice*)
adlowell@mwe.com
Roy L. Austin, Jr. (State Bar No. 211491)
raustin@mwe.com
Hoyt Y. Sze (State Bar No. 180716)
hsze@mwe.com
Christopher D. Man
cman@mwe.com
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
Telephone:  202.756.8000
Facsimile:  202.756.8087

Attorneys for Defendant
ROYA RAHMANI

**SAINT MARTIN & FAN**
Amy Fan (State Bar No. 156211)
amyfan@sbaglobal.net
6603 W. Century Boulevard
Suite 1107
Los Angeles, CA 90045
Telephone:  310.645.9383
Facsimile:  310.641.2501

Attorney for Defendant
NAVID TAJ

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROYA RAHMANI, ALIREZA MOHAMMADMORADI, MOUSTAFA AHMADY, HOSSEIN KALANI AFSHARI, HASSAN REZAIE, NAVID TAJ, MOHAMMAD HOSSEIN OMIDVAR, et. al.,<br><br>Defendants. | CASE NO.  CR-01-00209(A)-RMT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MONEY LAUNDERING COUNTS 32-58 FOR FAILURE TO STATE AN OFFENSE (MOTION TO DISMISS NO. 10)**<br><br>Hearing Date:    None Scheduled<br>Time:<br>Dept.:    Courtroom 22 |

DEFENDANTS' MOTION TO DISMISS MONEY
LAUNDERING COUNTS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendants Roya Rahmani, Alireza Mohammadmoradi, Moustafa Ahmady, Hossein Kalani Afshari, Hassan Rezaie, Navid Taj and Mohammad Hossein Omidvar ("the defendants") hereby move the Court to dismiss all of the money laundering counts (Counts 32 through 58) for failure to state an offense under 18 U.S.C. § 1956(a)(1).  This motion is based on this Notice of Motion, supported by the attached Memorandum of Points and Authorities, and by all of the pleadings, records, and files in this action, and such other documents and arguments as may be presented to the Court.

Dated:  July 15, 2008

**McDERMOTT WILL & EMERY LLP**

_____/s/_____
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**MICHAEL S. MEZA LAW OFFICES**

_____/s/_____
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

_____/s/_____
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**THOMAS NISHI LAW OFFICES**

_____/s/_____
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

Respectfully submitted,

**JAY L. LICHTMAN LAW OFFICES**

_____/s/_____
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**SAINT MARTIN & FAN**

_____/s/_____
Amy Fan
Attorney for Defendant
NAVID TAJ

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

_____/s/_____
Peter J. Eliasberg
Ahilan T. Arulanantham

**NASATIR HIRSCH PODBERESKY & GENEGO**

_____/s/_____
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................1

ARGUMENT............................................................................................................1

I.    COUNTS 32-58 MUST BE DISMISSED BECAUSE SECTION 1956
      ONLY CRIMINALIZES TRANSACTIONS INVOLVING
      CRIMINAL PROFITS, NOT GROSS RECEIPTS .......................................1

      A.    The Payments Alleged In Counts 33-52 Did Not Involve
            Criminal "Proceeds" ........................................................................3

      B.    The Wire Transfers Charged In Counts 53-59 Did Not Involve
            "Proceeds" ........................................................................................4

II.   COUNTS 32-58 FAIL TO ALLEGE THAT DEFENDANTS KNEW
      THE MONEY AT ISSUE CONSTITUTED PROFITS................................5

III.  COUNTS 53-58 FAIL TO ALLEGE THAT PROCEEDS WERE
      TRANSPORTED FOR THE PURPOSE OF CONCEALMENT OR
      DISGUISE...............................................................................................5

CONCLUSION ........................................................................................................8

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS MONEY
LAUNDERING COUNTS

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Cuellar v. United States*, 128 S. Ct. 1994 (2008)..........................................1, 5, 6, 7

*United States v. Heaps*, 39 F.3d 479 (4th Cir. 1994) .................................................7

*United States v. Malone*, 484 F.3d 916 (7th Cir. 2007) .............................................4

*United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002).........................................2

*United States v. Wilson*, 39 F. Appx. 495 (9th Cir. 2002).........................................7

**STATUTES**

18 U.S.C. § 1956.................................................................................................passim

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS MONEY
LAUNDERING COUNTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

After two recent Supreme Court rulings, it is clear that the money laundering allegations in Counts 32 through 58 of the Second Superseding Indictment ("Indictment") do not meet the statutory requirements of 18 U.S.C. § 1956.  In *United States v. Santos*, 128 S. Ct. 2020 (2008) , the Court held that the term "proceeds" in Section 1956 is limited to "profits" and not more broadly to "receipts," a word that was permitting the government to add money laundering charges to virtually any financial crime.  And in *Cuellar v. United States*, 128 S. Ct. 1994 (2008) , the Court held that where concealment money laundering was charged, the government had to prove that the purpose of the transaction was "to conceal or disguise the nature, to location, the source, the ownership, or the control of the proceeds" and not just that illicit funds were handled "in a secretive manner." As the allegations in the Indictment do not satisfy the elements of the crimes alleged, these Counts should be dismissed for failure to state an offense.

**ARGUMENT**

**I.   COUNTS 32-58 MUST BE DISMISSED BECAUSE SECTION 1956 ONLY CRIMINALIZES TRANSACTIONS INVOLVING CRIMINAL PROFITS, NOT GROSS RECEIPTS**

Section 1956(a)(1) only prohibits financial transactions involving "proceeds" and that is true with respect to both promotional money laundering under Section 1956(a)(1)(A)(i), as alleged in Counts 33-52, and concealment money laundering under Section 1956(a)(1)(B)(i), as alleged in counts 53-58, and the conspiracy alleged to violate both provisions in Count 32.  The Supreme Court's very recent decision in *Santos* puts an end to the government's overreaching in prosecuting money-laundering offenses in cases like the one it has brought here.  The Supreme Court accomplished that result by holding "that 'proceeds' means 'profits.'" *Santos*, 128 S. Ct. at 2024.

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

The Supreme Court defined "proceeds" as "profits" pursuant to the rule of lenity. *Id.*; *see* Santos at 2025 ("Because the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted."). The Court also rejected the government's contention that "proceeds" should be defined as "receipts" to avoid the "merger problem." The Supreme Court explained the merger problem by noting:

> Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds – for example, the felon who uses stolen money to pay for the rented getaway car – would violate the money-laundering statute. And any wealth-acquiring crime with multiple participants would become money-laundering when the initial recipient of the wealth gives his confederates their share.

*Id.* Santos 2026-2027 .[1] In this way, the Court explained that the offense charged as money-laundering essentially would merge with any of the underlying 250 money-laundering predicate offenses whenever the payment of expenses related to the predicate offense occurred after commission of the predicate offense. *Id.* The Court found that there was "no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime." *Id.* at 2027.

The Supreme Court then explained that "[i]nterpretting 'proceeds' to mean 'profits' eliminates the merger problem." *Id.* The Court added, "[m]ore generally, a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid. Defraying an activity's costs with its receipts simply will not be covered." *Id.*

---

[1] Similarly, the Seventh Circuit found that if proceeds meant gross receipts "[a]n embezzler who spent part of the take on food and rent . . . would be a money launderer too." *United States v. Scialabba*, 282 F.3d 475, 476 (7th Cir. 2002).

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS

### A.     The Payments Alleged In Counts 33-52 Did Not Involve Criminal "Proceeds"

In this case, the government did not even allege that the defendants' alleged criminal conspiracy had "profits" or was profitable.  The Indictment alleges that the MEK made investments in Los Angeles to set up a fundraising network, which involved paying rent at various addresses, registration fees for charities, and numerous other operational expenses.  (Indict. ¶ 1.)  The government also claimed that the conspirators spent their money on protected First Amendment activities, including editing television programs, purchasing satellite service to broadcast these programs and distributing newspapers in Los Angeles.  (*Id.* Count 1 & 32.)  While the money allegedly spent on these First Amendment activities may have been seen as helpful in educating the public and garnering support for the defendants' political goals, there is no claim that these First Amendment activities were financially rewarding.  Finally, the government alleges that the defendants sent to the remaining money to the MEK through wire transfers to Turkey.  (Indict. Counts 53-58.)  The government does not allege that the money that was wired to Turkey could or did constitute profits as opposed to simply the fundraising receipts.  In addition, the Indictment alleges that "some of the funds were transferred back to the United States . . . to pay the *operating expenses of the MEK in the United States.*"  (Indict. Count 32 ¶ 62 (emphasis added).)  Because the MEK is alleged to have been involved in the defendants' alleged criminal fundraising enterprise, this would be exactly what *Santos* described as the "initial recipient of the wealth giv[ing] his confederates their share" – something that is not covered by the money-laundering statute.  *Santos*, 128 S. Ct. at 2026, 2027.

Each of the substantive counts of promotional money laundering, Counts 33-52, allege payments of operational expenses associated with the alleged conspiracy, including rent, utilities, insurance premiums and the costs of registering as a charity.  (Indict. Counts 33-52.)  As interpreted by *Santos*, these

McDermott Will & Emery LLP
Attorneys At Law
Washington

- 3 -

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS

*expenses* are not *profits* and, thus are not "proceeds" for purposes of the money laundering statute. *See Santos*, 128 S. Ct. at 2028; *see United States v. Malone*, 484 F.3d 916, 921 (7th Cir. 2007) ("the act of paying a criminal operation's expenses out of gross income is not punishable as a transaction in proceeds under § 1956(a)(1)(A)(i)").

Counts 33-52 highlight the very merger problem the Supreme Court sought to avoid in *Santos*. Having alleged that defendants were engaged in a conspiracy to commit fraud (Counts 1-23), the government essentially is charging the defendants a second time for the same offense by spending money to effectuate the alleged conspiracy. This is the sort of "merger" of the money-laundering offense with the underlying predicate that is foreclosed by *Santos*.

### B.     The Wire Transfers Charged In Counts 53-59 Did Not Involve "Proceeds"

Counts 53-58 allege that the defendants engaged in concealment money laundering by wiring money from the United States to MEK-controlled bank accounts in Turkey,[2] but they do not allege that the money transferred constituted profits from an illegal activity. As explained above, the Indictment alleges that the MEK made an investment in Los Angeles by putting the defendants up here and investing in an infrastructure that would allow it to raise money and publicize its message through First Amendment activity. The return of money raised through fundraising in Los Angeles through the wire transfers at issue may have helped off-set those operating expenses, but it is far from clear – and certainly not alleged – that they constitute "profits." Indeed, the Indictment alleges that "some of the

---

[2]     Since this is the only allegation in Counts 53-58, it is not clear why the government charged that the transaction involved money laundering, Section 1956(a)(**1**)(B)(i), instead of that it was the international transportation of the money that constituted the laundering, Section 1956(a)(2)(B)(i). Not that it matters because either charge is fatally flawed because the government has not alleged "profits" as opposed to "receipts," and the government cannot show that the wiring was designed to conceal the allegedly illegal source of the money.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS

funds were transferred back to the United States . . . to pay the *operating expenses of the MEK* in the United States." (Indict. Count 32 ¶ 62 (emphasis added).)

In addition, sending the money to the MEK is not a financial transaction involving "proceeds" in any event because the MEK is alleged to have been a co-conspirator of the defendants. (*See* Indict. Count 1.) Sending money to the MEK is simply the "initial recipient of the wealth giv[ing] his confederates their share," which is not actionable under the statute. *Santos*, 128 S. Ct. 2020, at 2026-2027.

## II. COUNTS 32-58 FAIL TO ALLEGE THAT DEFENDANTS KNEW THE MONEY AT ISSUE CONSTITUTED PROFITS

In addition to failing to allege that the money at issue in Counts 32-58 actually involved profits, there certainly is no allegation that the defendants *knew* the money at issue constituted profits. As the Supreme Court noted in *Santos*, the money-laundering offenses specifically require "knowledge that the transaction involves profits of unlawful activity." *Id.* at 26. Given the fragmented nature of the conspiracy alleged, it is doubtful that the government could show that any defendant was sufficiently aware of the amount of money being spent and the amount of money being raised to be able to determine whether the alleged conspiracy was profitable at all, much less be able to distinguish between money spent to offset operating expenses and money that constituted profits. In any event, no such knowledge is charged, so Counts 32-58 fail to state the requisite intent to constitute a crime.

## III. COUNTS 53-58 FAIL TO ALLEGE THAT PROCEEDS WERE TRANSPORTED FOR THE PURPOSE OF CONCEALMENT OR DISGUISE

In addition to failing to allege that Counts 53-58 involved profits or that the defendants knew wire transfers at issue involved profits, these charges fail to state an offense because they fail to allege that the purpose of transporting the money was concealment. In *Cuellar v. United States*, 128 S. Ct. 1994 (2008), the

McDermott Will & Emery LLP
Attorneys At Law
Washington

- 5 -

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS

Supreme Court held "that a conviction under this provision requires proof that the purpose – not merely effect – of the transportation was to conceal or disguise a listed attribute." *Id.* at 2005.  In *Cuellar*, defendants sought to drive across the border with Mexico in a car with money "bundled in plastic bags and hidden in a secret compartment." *Id.* at 2004.  The government's theory of the case was "that the purpose of the transportation was to compensate the leaders of the operation." *Id.* at 2005.  The Court found this inadequate to state an offense because "the secretive aspects of the transportation were employed to *facilitate* the transportation, but not necessarily that secrecy was the *purpose* of the transportation." *Id.* at 2005; *Id.* at 2001-2002 (Section 1956 "requires proof that the transportation was 'designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control' of the funds."). Indeed, in *Cuellar*, the government conceded that "the statute encompasses only *substantial* efforts at concealment." *Id.* at 2003.

This case is far simpler to decide than *Cuellar*.  The government alleges that the purpose of these wire transfers was "to fund the operation and activities of the MEK," which the Indictment tells us were principally based in Iraq and France. Indict. Count 1.  Counts 53-58 specifically allege that the wire transfers went to an account in Turkey that was "controlled and used by the MEK."  Count 32.  Thus, just as in *Cuellar*, here, according to the government, "the purpose of the transportation was to compensate the leaders of the operation." *Cuellar*, 128 S. Ct. 1994, at 2005.  What makes this case even easier is that there was nothing secretive about the way the money was transferred – there was no secret compartment covered with animal hair, as in *Cuellar*.  The transaction took place through wire transfers at one of the largest commercial banks in the United States.

Rather than disguise money that largely was received through cash donations made in person, the act of wiring money through a commercial bank created the

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

only meaningful paper trail. Rather than *disguise* or *conceal* what the defendants were doing, this paper trail only served to make it *easier* for the government to determine what the defendants were doing. Indeed, it is the record of these wire transfers and related bank records that the government plans to rely upon at trial to show where the money ended up. The act of transferring money by wire does nothing to conceal the nature or origin of the funds. *See United States v. Heaps*, 39 F.3d 479, 487 (4th Cir. 1994) (finding that wiring illegally obtained money could be done for the purpose of convenience rather than concealment and therefore the money transfer did not meet the requirements of Section 1956); *United States v. Wilson*, 39 Fed. App'x. 495, 498-99 (9th Cir. 2002) (memorandum disposition) (finding that evidence in addition to a wire transfer was necessary to find that the defendant attempted to conceal the funds).

The government seems to believe that the mere sending of money out of the country, and therefore outside the jurisdiction of the United States, provides a sufficient basis for the government to allege that money has been concealed, but *Cuellar* places that misconception to rest. Where money is sent outside the country merely for the *purpose* of paying the leaders of a criminal enterprise, as the government alleged in *Cuellar* and alleges here, no additional charges of concealment money laundering can be brought.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS

## CONCLUSION

Counts 32-58 of the Second Superseding Indictment fail to state an offense under Section 1956, as recently explained by the Supreme Court, and they should be dismissed.

Dated:  July 15, 2008

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

_____/s/_____
Abbe David Lowell
Roy L. Austin, Jr.
Hoyt Sze
Christopher D. Man
Attorneys for Defendant
ROYA RAHMANI

**MICHAEL S. MEZA LAW OFFICES**

_____/s/_____
Michael S. Meza
Attorney for Defendant
ALIREZA MOHAMMADMORADI

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

_____/s/_____
Richard M. Steingard
Attorney for Defendant
MUSTAFA AHMADY

**THOMAS NISHI LAW OFFICES**

_____/s/_____
Thomas Nishi
Attorney for Defendant
HOSSEIN KALANI AFSHARI

**JAY L. LICHTMAN LAW OFFICES**

_____/s/_____
Jay L. Lichtman
Attorney for Defendant
HASSAN REZAIE

**SAINT MARTIN & FAN**

_____/s/_____
Amy Fan
Attorney for Defendant
NAVID TAJ

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

_____/s/_____
Peter J. Eliasberg
Ahilan T. Arulanantham

**NASATIR HIRSCH PODBERESKY & GENEGO**

_____/s/_____
William J. Genego
Attorneys for Defendant
MOHAMMAD HOSSEIN OMIDVAR

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
WASHINGTON

DEFENDANTS' MOTION TO DISMISS MONEY LAUNDERING COUNTS