**H. DEAN STEWARD, P.C.**
H. Dean Steward (State Bar No. 85317)
dean@deansteward.com
107 Avenida Miramar, Suite C
San Clemente, CA  92672
Telephone:  949.481.4900
Facsimile:   949.496.6753

**McDERMOTT WILL & EMERY LLP**
Abbe David Lowell (Admitted *Pro Hac Vice*)
adlowell@mwe.com
Christopher D. Man(Admitted *Pro Hac Vice*)
cman@mwe.com
Roy L. Austin, Jr. (State Bar No. 211491)
raustin@mwe.com
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
Telephone:  202.756.8000
Facsimile:   202.756.8087

Attorneys for Defendant
ROYA RAHMANI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  CR-01-00209(DOC |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE NO. 3** |
| v. | |
| ROYA RAHMANI, ALIREZA MOHAMMADMORADI, MOUSTAFA AHMADY, HOSSEIN KALANI AFSHARI, HASSAN REZAIE, NAVID TAJ, MOHAMMAD HOSSEIN OMIDVAR, et. al., | Hearing Date:      None Scheduled<br>Time:<br>Dept.:                Courtroom 9-C |
| Defendants. | |

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
CHICAGO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
CHICAGO

## MEMORANDUM OF POINTS AND AUTHORITIES

It is not entirely clear what the government is seeking to exclude through this Motion, but the thrust of the Motion appears mistaken.  The government seeks to prevent Defendants from introducing "evidence to establish the basis and validity of their or the MEK's beliefs in an effort to either negate a finding of their criminal intent or justify their conduct by establishing their 'good motive.'"  (Gov't Br. at 2.)  Taken literally, this proposition is absurd.  If the Defendants have a subjective "belief" that their conduct is not a crime, plainly they would have no criminal intent.  For example, a defendant who believed that the MEK had not been designated and did not engage in terrorism would not violate the material support statute by giving to the MEK.  Nor would a defendant who solicited money for CHR to spend on Iranian refugees be committing fraud if he or she honestly believed the money raised would be spent on such purposes.  See, e.g., Cheek v. United States, 498 U.S. 192, 202 (1991) (explaining in a tax case that a defendant has the right to argue as a defense that he did not believe wages are treated as income for tax purposes and that any evidence relevant to such a good-faith belief was admissible to buttress or undermine that claim); United States v. Sine, 493 F.3d 1021, 1032-33 (9th Cir. 2007) (defendant charged with mail fraud entitled to show good faith belief as a defense); United States v. Moran, 493 F.3d 1002, 1013 (9th Cir. 2007) ("Because there is an intent element in fraud cases, good faith belief in legality also provides a defense to the fraud counts.")

The government seems to be arguing for a different proposition than the one it has articulated.  It seems to be suggesting that the Defendants cannot introduce evidence that they have a "[d]isagreement with the law" or that they broke the law with a "good motive."  The Defendants agree that they have no right to introduce evidence that they knowingly and intentionally broke the law but did so with good intentions, and they have no intention of introducing evidence for this purpose.

- 2 -

DEFENDANTS' OPPOSITION TO THE
GOVERNMENT'S MOTION IN LIMINE NO. 3

Nevertheless, Defendants do not believe this will result in the exclusion of any of the evidence the government envisions.  The government seems to believe this motion would exclude evidence of the Defendants' "beliefs in the tyrannical nature of the Iranian government" or "the legitimacy of the MEK's goals."  (Gov't Br. at 5.)  That is not true because, as shown below, it is relevant for other purposes.

<u>The Evidence Is Relevant To The Fraud Counts</u>

As to the fraud counts, the Defendants contend that they were raising money to help the victims of Iranian oppression, rather than to assist the MEK in conducting acts of terrorism.  That defense would not have any credibility if the jury believed that the Iranian government was a benevolent entity and that there were no victims of Iranian oppression.  The commitment that these Defendants made toward furthering their cause also would require a strong motive to exist.  Although the government will suggests that motive is terrorism, an allegation at least implicit in the material support charge, the Defendants have the right to counter by showing that they empathize with those suffering at the hands of the Iranian regime because they, their families and their friends have suffered as well.  In essence, this evidence bolsters the Defendants' claim that they had a good faith intent to help victims of Iranian oppression.  Likewise, the Defendants are entitled to prove the reasonableness of such a belief because the MEK does provide humanitarian assistance to victims of Iranian oppression and to counter the government's suggestion that the MEK is engaged in terrorism.

Indeed, many of the government's proposed trial exhibits, such as the audio recordings of conversations between the Defendants and CW-1, contain a multitude of references to the defendants' political beliefs about the current Iranian regime. (<u>See, e.g.</u>, Docket No. 992-8 at 8, *et seq*. (recording Defendants' attendance at political rally); Docket No. 992-9 at 3-4 (recording Defendant Rahmani's praise of Iranian resistance); Docket No. 992-9 at 13-14 (recording Defendant Rahmani discussing Italian parliament's condemnation of Iranian attack).  Further, the

McDermott Will & Emery LLP
Attorneys At Law
Chicago

- 3 -

DEFENDANTS' OPPOSITION TO THE
GOVERNMENT'S MOTION IN LIMINE NO. 3

informants, in order to explain their background and cooperation, will also have to relate their (and the MEK's) political beliefs. Thus, the government's motion would result in the exclusion of much of its own evidence.

### The Evidence Is Relevant To The Material Support Counts

The same is true of the material support counts. Although the Indictment is predicated only on the charge that the material support statute is violated because the Defendants' knew of the MEK's designation, the Indictment does not allege that all Defendants were aware of the designation. (See MTD No. 13 (noting the Indictment does not allege Ms. Rahmani was aware of the designation).) The government has attempted to constructively amend the Indictment by alleging that the Defendants all knew the MEK engaged in terrorism, as an alternative to them knowing of the designation. Such a constructive amendment is not allowed. See, e.g., Schmuck v. United States, 489 U.S. 705, 717 (1989); United States v. Stirone, 361 U.S. 212, 215-17 (1960). Should the Court not find this an improper constructive amendment, it will then be relevant whether the Defendants held a "belief" that the MEK was a terrorist organization or not. Evidence that the Defendants did not believe the MEK was a terrorist organization and that they believed the MEK was instead a humanitarian organization assisting Iranian refugees would bolster their claims of innocent intent. Again, to appreciate why the MEK would be acting as a humanitarian organization to help victims of Iranian oppression, it would be necessary to explain why there is a need for such an organization in the first place. The answer being that Iran is an oppressive regime with many victims.

Even if the Court does not permit the constructive amendment, the evidence will be relevant for First Amendment purposes. Defendants have asserted that the government must prove that their conduct incited imminent unlawful activity under Brandenburg. Even if the Court denies this Motion, Defendants intend to argue that they have a First Amendment right to present that evidence as an affirmative

DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE NO. 3

defense.  Whether evidence that Defendants conduct is not protected by the First Amendment has to be proved as an element or instead is relevant to an affirmative defense, it is relevant and must be admitted.

### The Evidence Is Relevant to Defendants' Motions To Dismiss

The Defendants have argued that  they have the right to challenge the designation of the MEK in these proceedings.  (See MTD Nos. 2 & 3.)  The Court has indicated that this type of evidence would be relevant even if the jury is not required to find the validity of the designation.  If those motions are granted (or even if they are relevant for the reasons the Court indicated), the Defendants would have to be afforded the opportunity to explain why the MEK is not a terrorist organization and its purpose in opposing the Iranian regime.

### The Evidence Is Admissible For Completeness

The government will seek to use the word "terrorist" in this case every chance it gets because it knows that term is highly prejudicial.[1]  People hear that word and they think of Al-Qaeda, planes crashing into the World Trade Center, the Pentagon burning, the thousands of Americans who died on 9/11, and American service members risking their lives in what President Bush described as a "War on Terror."  But the government cannot inject the term "terrorist" into this case, leaving the jury free to connect the Defendants with these sorts of events, and then close the discussion as to what the label "terrorist" means in this case.  Nor can that danger of prejudice be mitigated by any instruction from the Court to ignore such an inflammatory term any more than the government could be permitted to throw a skunk in the jury box and instruct the jury to ignore it.  To mitigate the danger of prejudice, that label needs to be placed into context both in terms of why the MEK opposes the Iranian regime, the activities the MEK engages in to oppose that regime and help Iranian refugees, and the Defendants' actions and beliefs.  It is

---

[1]    The Defendants anticipate moving *in limine* for an order precluding the use of prejudicial and inflammatory terms, such as "terrorism," "cells" and "safe houses."

- 5 -

DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE NO. 3

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
CHICAGO

particularly important to distance the jury from the deeply prejudicial notion that the MEK are enemies of the United States or would target Americans for terrorism. The answer lies in there being a level playing field in which both sides can try to put the MEK in the proper context, not in allowing the government to throw pejorative labels around and denying the defense a rebuttal.[2]

Given the nature of this case, it seems almost impossible to keep evidence concerning the Defendants' beliefs about the Iranian regime and its opposition out of this case. References to those beliefs permeate the transcripts of conversations the government has sought to introduce, as well as the testimony the government's witnesses appear prepared to give. The government cannot be allowed to insinuate or explicitly argue that the Defendants' beliefs embrace terrorism whenever it chooses, but then deny the Defendants an opportunity for discussion or rebuttal.

The Evidence Is Admissible For Impeachment

Evidence concerning abuses by the Iranian government will likely be admissible for impeachment purposes as well. Certainly, the witnesses' fears that they would be deported to Iran, and the consequences they faced there (in one informant's words, "certain execution") is relevant to show the witnesses' bias and motives for cooperating. The Defendants believe that some government's witnesses have been or still are agents of the Iranian government and/or are providing false testimony out of fear of what the Iranian government will do to them, their family or friends if they do not. Evidence that Iran has used similar witnesses to provide false testimony to discredit the MEK or falsely enhance Iran's image in the West may be relevant for impeachment and buttresses the claim they are doing so here. The same is true of evidence showing that Iran is capable of

---

[2]   The Court engaged in this very discussion during consideration of the pretrial motions. (See Tr. of Proceedings, March 18, 2009 (Doc. 975) at 79 (The Court: "Let me turn back to the government. Tell me what this case looks like in the real world. The jury comes in. You ask me to read the preamble to the indictment which sets out all of these alleged allegations. You want to put on an expert. You want to tell us about the MEK. How far do I let the defense go  Are their hands tied; and if so, what's the relevance other than they are a designated terrorist organization? End of discussion. Seems a little bizarre.").")

DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE NO. 3

carrying through on its threats by torturing and killing MEK members and dissidents in Iran, that Iran has harassed dissidents abroad, that Iran has made good on its threat and Iran has demonstrated its capacity to do so by engaging in extraterritorial acts of violence, assassination and terrorism.

CONCLUSION

The government's motion in limine improperly seeks to control the admissibility of evidence concerning the MEK and the defendants' political beliefs. Because it would exclude relevant evidence, it should be denied.

Dated: April 6, 2009                           Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

_____/s/_____
Abbe David Lowell
Christopher D. Man
Roy L. Austin, Jr.

Attorneys for Defendant
ROYA RAHMANI

On behalf of all Defendants.

DEFENDANTS' OPPOSITION TO THE
GOVERNMENT'S MOTION IN LIMINE NO. 3

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
CHICAGO